Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DR J.D. ISAACS | )<br>)<br>) |
| Plaintiff, *pro se*, | ) Case No. 12-CV-40-JL<br>) |
| -V- | )<br>) |
| DARTMOUTH HITCHCOCK MEDICAL CENTER;<br>MARY HITCHCOCK MEMORIAL HOSPITAL;<br>TRUSTEES OF DARTMOUTH COLLEGE;<br>and JOHN DOE, | ) **MOTION TO STRIKE**<br>) **DEFENDANTS "MOTION TO**<br>) **QUASH SERVICE"**<br>)<br>) |
| Defendants. | )<br>)<br>) |

**I. MOTION TO STRIKE DEFENDANTS' "MOTION TO QUASH SERVICE"**

The Plaintiff, pursuant to Federal Rules of Civil Procedure 11(b)(1), 11(b)(2), and 12(f)(2), hereby motions the Court to strike the Defendants' "Motion to Quash Service." The Plaintiff asserts that 1) Defendants' counsel, without ambiguity, acknowledged representing all the Defendants, and requested that "any further communication" be directed to counsel; 2) Defendants' counsel actually waived their right to object to purportedly insufficient service by executing two Waiver of Service forms (never requested by the Plaintiff); and 3) in light of a statement made by Defendants' counsel to the Plaintiff, the Motion to Quash appears to be a frivolous attempt to delay litigation.

Moreover, Defendants' own Motion to Quash (in MTQ Footnote 1) admits that the Defendants encouraged Plaintiff to file what they believed to be an invalid waiver form. The Motion to Quash is yet another example of the Defendants' attempt to obfuscate all due process and 'have things both ways' - they waived service rights, but later state they technically failed to waive service; they retain legal representation, then later state the legal representative never had been officially authorized. The Defendants' real intent in seeking a "Motion to Quash" is to obtain a continuance for their Answer, so that they would be able to coordinate and bolster whatever semblance of a defense they intend to pursue. Meanwhile, Plaintiff is awaiting return to work[1].

Background

1) Both parties agree that no later than January 15th, the Plaintiff informed Defendants' in-house General Counsel of a pending lawsuit in the United States District Court. On January 23rd, outside counsel for the Defendants transmitted a letter to Plaintiff, stating

---

[1] Although Plaintiff alleges that the Defendants attempted to blackmail him to resign, no written due process ever occurred. Plaintiff is a full employee at Dartmouth, with current benefits and salary intact. However, his employer has ceased communication with him for nearly two months, and his DHMC computer accounts remain frozen or cancelled. Furthermore, Plaintiff intends to transfer immediately into the DHMC Preventative Medicine program, no longer desiring to spend more of his career in a Psychiatry Department that maintains a "*One Flew Over the Cuckoo's Nest*" vintage movie poster in their "patient rubber lock-down room."

that "any further communication" regarding the lawsuit shall be directed to the outside counsel hired to represent the Defendants ("Motion to Quash [MTQ] Exhibit D.")

2) The Plaintiff followed these instructions, and employed Mr. Seldon Nason to serve the summons on outside counsel. Mr Nason was surprised ("MTQ Exhibit C") that outside counsel for Defendants initially refused the summons. Upon showing them their own letter ("MTQ Exhibit D"), the counsel accepted the summons *in hand*, despite Defendants' efforts to now imply a *drop-serve*. ("MTQ Affidavit A," Paragraph 6).

3) On February 9th, the Defendants apparently retained additional outside counsel, Attorney Peahl. Attorneys Peahl & Kaplan mailed Plaintiff two executed waivers ("Exhibit A"). Attorney Peahl wrote to Plaintiff that "you are required to file the signed waiver with the court," even though Plaintiff was not required to agree to extend their Answer period from twenty-one days to sixty days. Moreover, the Defendants' counsel was of the belief that the waiver was invalid! (MTQ Footnote 1)

4) The executed waivers falsely assert: "I have received your request to waive service." Plaintiff never sought a sixty-day waiver, as he intends to move for a preliminary injunction as soon as possible.

5) The waivers are executed documents, and although the sixty day answer window Defendants hoped for is invalid, the executed instruments do state "they waive any objections to service," which is precisely what is the "Motion to Quash."

6) In response to Defendants' letters claiming service of process never occurred, Plaintiff initially requested that Mr Seldon Nason once again serve the summons to all of Dartmouth's outside counsel. Mr Nason declined the extra business, stating that "in [his] professional opinion," the service he already effected "should stand up in Court."(Exhibit B) Plaintiff agreed with Mr. Nason's advice that he should not attempt to modify his correct service of the summons.

7) During a telephone conversation that occurred on the week of the disputed service, Defendants' counsel told Plaintiff "this case will go the way they usually go." Inferring

   this meant aggressive delays and obstruction of due process, the Plaintiff looked up other recent lawsuits involving Dartmouth to better understand what their counsel suggested.

8) During his search, Plaintiff found "*Connors v DHMC et al,*" a case underway for the last two years in the United States District Court for Vermont. The case presents similar allegations of psychological abuse of a disabled resident by Dartmouth College Professors of Psychiatry. Outside counsel Kaplan represents all Defendants in *Connors v. DHMC et al*.

9) In Plaintiff's Complaint it is alleged that, for months, Defendants ignored his requests for medical leave. He believes that as a reasonably foreseeable result (see Affidavit of Plaintiff), and in multiple instances, DHMC patients were either negligently or criminally endangered. For example, Plaintiff witnessed what he believes to be illegal restraint of a discharged patient who was on her way home for her daughter's birthday.  Patient had been improperly threatened with an involuntary commitment to the New Hampshire Hospital psychiatric unit, and ultimately was placed in 4-point metal chains. Plaintiff asserts that this unfortunate event occurred because certain Professors ignored his medical opinion, in situations like this where, in fact, Plaintiff was the only doctor present with a patient. He believes patient EMR records and patient testimony will support his belief.

10) While Plaintiff had been baffled as to why the Dartmouth Department of Psychiatry would turn a deaf ear on Plaintiff's disability requests, by discovering *Connors v. DHMC,* he shed light on a plausible explanation: they wanted to coerce his resignation, rather than be faced with allegations of insufficient and egregious disability accommodation (e.g. "Fitness to work challenge"), as had happened in *Connors*. These due process violations shall not now be allowed to continue in United States Federal Court, with regards to service of a summons which was rendered correctly by a trained process server.

11) Plaintiff asserts that, in light of six months of contested events that encroached upon patient care, Defendants are in need of a continuance, rather than a quashed summons. The Plaintiff does not dispute that this is a complex case for Dartmouth to defend, requiring coordination of numerous entities located in different States. For example, on

February 10th, the Plaintiff's LinkedIn profile was visited by persons obviously investigating his Complaint. (See Exhibit C, LinkedIn visits by both Epic Human Resources, the company that manages DHMC's Electronic Medical Record, as well as Dartmouth's insurance carrier.) The state-of-the-art Epic computer system at DHMC possesses critical evidence Plaintiff requested fifty days ago under the *American Recovery and Reinvestment HITECH* Act. Despite these complexities, Defendants have yet not shown good cause as to warrant a continuance.

Supporting Law

1) Defendants' Motion to Quash argues that counsel had failed to obtain "case-by-case" authorization to accept service of the summons. It seems implausible, at best, that Dartmouth College referred a United States District Court matter to outside counsel, but didn't intend that counsel be able to accept service. Moreover, counsel even represents Dartmouth College in a very similar proceeding in the Vermont USDC. Counsel informed Plaintiff to direct "any further communication" to him, including the summons.

2) Defendants incorrectly cite *Obot v. Citibank South Dakota* and related *United States v. Bonsurgi*. These cases revolve around a completely different set of circumstances than presently at issue before this Court. It was not the intent of these cases to allow every attorney, once their client allows them to assume control of litigation, to object to the initial service of a summons until said attorney 'double-checks' that they can, indeed, accept service. Likewise, it was not intended to create a loophole, whereby Defendants could simply retain additional counsel, to give the impression that counsel had never been retained.

3) In fact, *Obot v. Citibank South Dakota* accurately points out that authorization to accept service may be either "expressly or impliedly" authorized. Counsel's letter dated January 23rd certainly sheds light on his implied, if not expressly granted,

JDIsaacs v. DHMC
Case No. 12-CV-40-JL

authorization to accept service on behalf of Dartmouth College and Dartmouth-Hitchcock.

4) Defendant's own Motion To Quash, Footnote 1, demonstrates how their counsel attempted to have Plaintiff submit an invalid waiver-of-service form. As they accurately point out, Plaintiff never requested a waiver, so the signed form does not toll the 21-day Answer window. Nonetheless, the waiver is a signed legal document, which asserts that the Defendants waive their right to dispute service. Hence, the Defendants' Motion to Quash is irrelevant on these grounds as well.

Conclusion

Defendants' Motion to Quash reveals the nature of Dartmouth's attempts to use whatever means – back-dating waivers, retaining new attorneys, etc – to delay moving this litigation forward on its merits.

As argued above, Dartmouth possesses critical evidence on both the DHMC Epic EMR system, as well as the DHMC Outlook Email system. Although the Plaintiff has never been terminated/dismissed from employment, Plaintiff's computer accounts have been disabled and/or deleted. Given the Defendants' multiple attempts to subvert due process and misrepresent the truth, at this point Plaintiff is justified in his concern for the integrity of Defendants' evidence preservation efforts. Plaintiff hereby prays for equitable and timely relief from this Court; that the defendants be ordered to preserve the electronic evidence Plaintiff deserve; that the Defendants avoid unnecessary delays leading into the Answer, discovery, and litigation on the merits.

Respectfully submitted, this 28th day of February, 2012.

/s/ J. D. Isaacs

JDIsaacs v. DHMC
Case No. 12-CV-40-JL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

J. D. ISAACS

Plaintiff, *pro se*

**CERTIFICATE OF SERVICE**

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing MOTION TO STRIKE was mailed to the following persons at the address specified herein:

Attorney Edward Kaplan, Sulloway & Hollis, 9 Capitol St, Concord NH

Attorney Kathleen Peahl, Wadleigh Starr & Peters, Manchester NH

Executed on this 28th day of February, 2012.

/s/ J D Isaacs

J. D. ISAACS

Plaintiff, *pro se*