# Selected Discrepancies from Plaintiff's Ethics Complaint

a. Discrepancy # 16: Restraint of a discharged patient who was on her way home for her daughter's birthday. Plaintiff believes this patient had been improperly threatened with an involuntary commitment to the New Hampshire Hospital psychiatric unit, and ultimately was placed in 4-point metal chains. Plaintiff asserts that this unfortunate event occurred because Professor Noordsy ignored his medical opinion, in situations like this where, in fact, Plaintiff was the only doctor present with a patient. He believes patient EMR records and patient testimony will support his belief.

b. Discrepancy #18: Nurses astonishment at Professor Noordsy's apparent ridiculing/laughing directly at a patient who he was committing involuntarily to the state hospital. Plaintiff, in another room, heard the nurses state "How can he do that? That's just wrong."

c. Discrepancy #3: A "One Flew Over the Cuckoo's Nest" vintage movie poster in the rubber restraint patient isolation room.

d. Discrepancy #44: Resident Physician David Bae's reference to Asperger Disease as "ass burgers."

e. Discrepancy #10: Defendant Finn, on a tour of the 2-East Psychiatry unit, stated "I like to compare these patients to somebody you could take care of in your mother's dining room, those with no serious medical illness…. because, you know, we didn't go in to psychiatry to actually touch the patients.

f. Discrepancy #21: In October, Christine Finn "counseled" Plaintiff how to treat one of her patients who suffered from Narcissistic Personality Disorder. She stated that the Plaintiff must feed his ego, even lie to him; about her own lies to him in her clinic, "He's so unlikable… it made me kinda sick to my stomach."

g. Discrepancy #42: A resident physician posited to Plaintiff "You're supposed to feel suicidal on this rotation."

h. Discrepancy #2: Doctor Alan Green, a Harvard trained psychiatrist, during a twenty-five minute orientation speech on June 27th 2012, stared at the Plaintiff for approximately 23 minutes, failing to make eye contact with any of the other thirty individuals in the room.

i. Discrepancy #40: Plaintiff had an overnight sleep laboratory study in late November, during which it was documented by EEG that he only slept approximately one hour. Having been refused accommodations for any disability, and constantly harassed by his Program Directors, Plaintiff went to work that day, afraid he would lose his job if he didn't. After rounding on patients, he told Dr Noordsy he was feeling like he would collapse, and would try his best to get the patient notes finished. Shortly after filing his patient notes, Professor Noordsy emailed him and scolded him for having written poor notes. Such "performance " allegations were typical of the Defendants; they knew Plaintiff had a disability, would try to worsen it, and/or ignore it, then would document Plaintiff's mistakes made on the verge of collapse. If Plaintiff actually had his email and medical records that he requested in January, it would be irrefutable that 1) Plaintiff slept roughly 1 hour in the sleep laboratory, and 2) Professor Noordsy, aware of this fact (not to mention the CPAP machine Plaintiff brought into the work room), proceeded to scold the Plaintiff for "performance issues."

j. Discrepancy #47: Very similar allegations currently underway in *Conners v DHMC et al*, United States District Court for Vermont , alleging bizarre "Fitness to work" tests.