**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 7-10-2012

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
                                *
        J.D. ISAACS              *
                                *  12-CV-40-JL
              v.                 *  March 30, 2012
                                *  11:30 a.m.
DARTMOUTH HITCHCOCK MEDICAL      *
CENTER, ET AL                    *
                                *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

APPEARANCES:


For the Plaintiff:     Jeffrey D. Isaacs
                       Pro Se




For the Defendant:     Edward M. Kaplan, Esq.
                       Sulloway & Hollis

                       Kathleen C. Peahl, Esq.
                       Wadleigh, Starr & Peters, PLLC



Court Reporter:        Susan M. Bateman, LCR, RPR, CRR
                       Official Court Reporter
                       United States District Court
                       55 Pleasant Street
                       Concord, NH 03301
                       (603) 225-1453

2

```
 1              P R O C E E D I N G S
 2         THE CLERK:  We have for consideration this
 3  morning a telephone conference in civil action
 4  12-CV-40-JL, J.D. Isaacs versus Dartmouth Hitchcock
 5  Medical Center, et al.
 6         We do have a court reporter present today,
 7  and I would ask, starting with Mr. Isaacs, if you
 8  would please identify yourselves for the record and
 9  before speaking each time please identify yourselves.
10  Thank you.
11         DR. ISAACS:  Yes.  I guess I'm filed as
12  plaintiff, Dr. J.D. Isaacs, your Honor, and I'm
13  present.
14         MS. PEAHL:  Attorney Kathleen Peahl from
15  Wadleigh, Starr & Peters representing Dartmouth
16  College and Dr. Finn, Dr. Kim and Dr. Noordsy.
17         MR. KAPLAN:  Ed Kaplan from Sulloway & Hollis
18  representing the Medical Center and Mary Hitchcock
19  Memorial Hospital.
20         THE COURT:  Good morning, everyone.
21         MR. KAPLAN:  Good morning, Judge.
22         DR. ISAACS:  Good morning.
23         MS. PEAHL:  Good morning.
24         THE COURT:  With me in chambers, as you just
25  heard, is Deb Eastman, deputy clerk, and I also have a
```

1  law student with me here in chambers, Neal Smith,

2  who's working in my chambers this semester from UNH

3  Law School.

4          I apologize for the formality of having the

5  clerk call the case on a conference call and all of

6  that.  Usually Mr. -- or Dr. Isaacs, usually when I

7  have a telephone conference in a case like this it's

8  pretty informal.

9          DR. ISAACS:  Okay.

10          THE COURT:  But you are appearing pro se.

11  The reason that's usually pretty informal is that I

12  know that if I do it with lawyers and something

13  happens in the phone call that they don't like, or

14  that makes them uncomfortable, they'll file something

15  in court to try to preserve the record.  And I wanted

16  to make sure, since you don't have a lawyer, that

17  there's a record here to protect you in the event you

18  wanted to raise any type of issue or request any type

19  of relief based on this discussion today.

20          The bottom line is I'm just trying to make

21  sure you have a record, okay?

22          DR. ISAACS:  I appreciate that, your Honor.

23          THE COURT:  Okay.  Now, I was going to talk

24  about these what I thought were sort of moot motions

25  regarding service of process, or if not moot at least

4

1  easily resolvable, but the deputy clerk just told me

2  that we've got an amended complaint filed now.

3          DR. ISAACS:  Yeah.

4          THE COURT:  Which is sort of a curve ball.

5  Can somebody tell me what's going on?

6          MR. KAPLAN:  Well, your Honor, this is

7  Kaplan.  I'll speak briefly.  I do think the issue is

8  easily resolvable, and I'll just put it in my

9  perspective for a moment.

10          THE COURT:  Sure.

11          MR. KAPLAN:  The initial challenge was

12  whether or not I personally was properly served in

13  connection with Dr. Isaacs' initial complaint.

14          THE COURT:  Right.

15          MR. KAPLAN:  It is true that he had somebody

16  appear, a process server.  I told him I didn't have

17  the authority to accept service.  He left it anyway,

18  and we ended up -- I filed a motion, and we ended up

19  fighting about that issue.

20          As it turns out, as soon as the complaint was

21  provided to me by the process server I contacted the

22  individuals and determined whether or not I had

23  authority to accept service going forward, because now

24  I knew there was a complaint, and I received

25  authority.  And as a result, I sent Dr. Isaacs the

1  waiver and said, you know, if you sign this we're all

2  done and we don't have to worry about service.

3          That has never been done.  So up until the

4  time of the amended complaint my policy here was going

5  to be to simply say to you, that on behalf of the

6  defendants I represent I can accept service, let's get

7  beyond this and get on to the case.  And I think,

8  frankly, Kate would tell you that she can accept

9  service for hers and we wouldn't have to fight about

10 it.

11         THE COURT:  So you pretty much anticipated my

12 approach to the call.

13         MR. KAPLAN:  Yeah.  And so I'll tell you, my

14 only objective right now is two things, and I'll get

15 to the end of my objective because it's really simple.

16         I would like for you, the Court, to say to

17 us, okay, as of X date I'm declaring service

18 effective.  You guys have until whatever date to

19 provide your response to -- and I was going to say the

20 complaint, but now I don't know whether that's the

21 complaint or the amended complaint, but either way, it

22 seems to me, that's the end of it, and then we can get

23 on to dealing with the case.  That's what I was hoping

24 we would accomplish.

25         THE COURT:  We had the same hope.

1           MR. KAPLAN:  Good.

2           THE COURT:  My only question about everything

3   that you said was this.  You made reference to you

4   contacted the individuals.  Are you talking about

5   Attorney Peahl's clients?

6           MR. KAPLAN:  Yeah -- well, no.

7   Additionally -- the confusion here additionally,

8   Judge, is that in many of these cases I typically

9   represent the institution and the physicians that

10  might be involved.  In this particular case I do not.

11  And because of an anomaly in connection with the way

12  psychiatrists are hired -- they are not hired by the

13  medical center or the clinic.  They're hired by the

14  Dartmouth Medical School.  So I would only accept

15  service and appear and answer on behalf of the medical

16  center and the hospital, and I think -- Kathy,

17  everybody else is yours, right?

18          MS. PEAHL:  That's correct.  And just to

19  clarify with respect to the amended complaint, by the

20  time that was filed of course I had already done

21  exactly what Attorney Kaplan did with respect to the

22  initial complaint.  I had offered to waive service and

23  had sent the plaintiff a completed waiver and said,

24  you know, I've signed this.  If you file this, I've

25  accepted service at that point for the college.

1           With respect to the amended complaint, we now

2   have three individuals identified who, as Attorney

3   Kaplan correctly points out, are all employed by

4   Dartmouth College.  So I would be entering an

5   appearance for all three of them.

6           In the earlier days of this week when the

7   amended complaint was first filed, I had communication

8   with the plaintiff.  I had offered exactly the same

9   thing.  I would waive service.  If he sent me the

10  form, I would fill it out, he could file it, and it

11  would not be necessary to go through the formal

12  process of serving the individual defendants.

13          At that point, actually, I think I was

14  talking only about Dr. Kim and Dr. Finn, not realizing

15  that Dr. Noordsy was also an employee of the college.

16          As it turned out, the plaintiff initially

17  accepted my offer to waive service.  He then changed

18  his mind and went ahead.  He attempted to make service

19  on all three of the individuals.

20          I'll point out that the service on Drs. Finn

21  and Noordsy was made to Dartmouth Hitchcock Medical

22  Center's Risk Management Office, which Dartmouth

23  Hitchcock Medical Center and their Risk Management

24  Office did not have authority to accept service for

25  Dr. Finn or Dr. Noordsy.

1       So there's potentially deficiency in the

2  service that was made, but as Ed offered, I would do

3  the same thing.  We want to accept service, get a date

4  for the answer to be due, and move on with the case.

5       THE COURT:  Okay.  I understand.  All right.

6  And I'm not quibbling with anybody's approach to this.

7  I want to get to the same point you do.

8       Dr. Isaacs, what you're being basically told

9  here is that everyone is prepared to agree that

10  they've been served.  All defendants through their

11  counsel have agreed that they've been served and that

12  these motions -- I'm going to basically declare all

13  these motions moot, that they don't matter anymore, or

14  withdrawn or whatever we want to call them, so

15  basically the lawsuit can proceed from here.

16       I can't imagine why you wouldn't be satisfied

17  with that.  Are you okay with that?

18       DR. ISAACS:  Well, your Honor, I wish I could

19  be satisfied with that.  I'm not sure if you read the

20  amended complaint that I filed just a couple days ago.

21       THE COURT:  No.  I didn't even know it had

22  been filed.

23       DR. ISAACS:  Right.  Unfortunately, part of

24  my central complaint now is that the defendants have

25  deprived me of due process, stalled on matters,

1   withheld evidence.

2          THE COURT:  Yeah, but they're saying that

3   those allegations in your amended complaint -- they

4   are agreeing that they've been served with those.

5          DR. ISAACS:  Well, but I'm saying that my

6   case at Dartmouth revolves around denial of due

7   process for months, and I actually considered attempts

8   that were made to withhold critical evidence to be a

9   continuation of the improper behavior that took place

10  at Dartmouth Psychiatry.

11         They knew how I was traumatized by prior

12  litigation, and they steered me right back into the

13  same situation.  I can't believe I'm in federal court

14  for the second time in my life, and all of the sudden

15  defendants felt -- believed they were immediately

16  proclaimed.

17         THE COURT:  So what are you saying?  Are you

18  saying to me you would prefer that they don't accept

19  service and you would like to try to serve them all

20  over again?

21         DR. ISAACS:  I guess I'm of the belief that

22  they actually were served correctly and that they have

23  delayed things, shielded Dartmouth College, and

24  moreover defendant Kim, from a developing controversy

25  of transitioning duties at the World Bank.  I believe

10

1    they've evaded the summons.  I believe they've

2    misstated things under Federal Rule 11 for an

3    attorney, and even evading a summons -- I have a note

4    from a process server who knew nothing about this case

5    that I ever knew, never spoke with him more than two

6    minutes, stating that he believes that Dr. Kim was at

7    home, despite contrary claims by one Vivienne

8    Barbadoro.

9            THE COURT:  Look, slow down.  That's all

10   great and you can allege all of that, but the question

11   is -- I guess what I'm saying is, what difference does

12   it make if you think they were served properly?  We're

13   prepared to rule that they've been served and proceed.

14           DR. ISAACS:  I guess I consider it as

15   evidence in my case.

16           THE COURT:  Well, sure.  That's fine.  You

17   can present evidence in your case.  We're just talking

18   about whether you have a lawsuit yet, and I'm prepared

19   to rule as of right now that, yes, you do, and that

20   everybody you want to sue is now properly before the

21   Court at least with respect to their service of

22   process.

23           DR. ISAACS:  To the extent that you are -- I

24   have to accept your decision that this issue can be

25   easily corrected with regards to summons, I don't

1  waive my right to pursue in discovery later on what

2  went on behind the scenes during this process.

3          So I guess I'm agreeing with you but not

4  waiving certain rights.

5          THE COURT:  Understood.  Understood.

6          DR. ISAACS:  I believe evidence is being

7  withheld, so I guess I do want this lawsuit to be

8  initiated so we can move quickly forward with getting

9  the evidence that's being withheld and/or destroyed.

10          THE COURT:  All right.  Now, let me ask you

11  this.  I need to ask you this.

12          DR. ISAACS:  Sure.

13          THE COURT:  You don't have counsel.

14          DR. ISAACS:  That's correct.

15          THE COURT:  I mean, is that by choice, or

16  does it reflect an inability to get counsel?  In other

17  words, you tried to hire somebody but no one will take

18  the case, or you're not in a position to --

19          DR. ISAACS:  No.  I have not shopped around

20  or spoken to many lawyers.  I did speak with an

21  attorney that's representing a plaintiff against

22  Dartmouth in a similar matter.  He is forwarding me

23  right now his agreement.  I believe it will be out of

24  my cost range.  So I guess the simple answer to your

25  question is, not fully by choice.

1          THE COURT:  I see.

2          DR. ISAACS:  So given the urgency of this, I

3 did feel I could move quicker by filing myself things

4 as opposed to shopping around for attorneys.

5          THE COURT:  Sure.

6          DR. ISAACS:  It's somewhat by choice

7 initially, but going forward I cannot afford an

8 attorney because educational cases usually they're not

9 done on contingencies.  I believe that answers your

10 question.

11          THE COURT:  All right.  Okay.  Look, it's

12 your right to go pro se, if you want to.  I mean, I

13 think it's going to be a far more difficult endeavor

14 for you to do that.  I think as this service of

15 process sort of episode demonstrates, the fact is you

16 did not effect proper service initially, but that's

17 all moot now because they've accepted service and I'm

18 going to rule that they've been served.

19          I only say that to you because, you know, as

20 a pro se litigant, you know, what I'm going to do is

21 make sure that, you know, you're not taken advantage

22 of or in some way -- I don't mean taken advantage of

23 by counsel here.  I mean that you're not victimized by

24 the rules in a technical way to your detriment.

25          I want to make sure justice happens here, but

13

1   the rules still apply to you.  In other words, I can't

2   make the rules go away.  The Federal Rules of Civil

3   Procedure apply, and I'm going to need to hold you to

4   them.

5          What I'm also going to be doing, because you

6   don't have a lawyer, is making sure you're not -- for

7   lack of a better word -- tripped up by the rules in a

8   way that would be unjust.

9          DR. ISAACS:  Okay.

10          THE COURT:  But those rules do apply to you,

11   and I can't overlook them or not hold you to them.

12   Service of process is an example.  Counsel here are

13   telling me, look, let's get on with it.  We could

14   quibble over some of these issues, but we prefer to

15   move on.  But there are issues that, frankly, they

16   could raise, if they were inclined, and I would have

17   to enforce them.  All right?

18          DR. ISAACS:  Yes.  I appreciate that.  I do

19   have a question.  You stated that service was not

20   properly effected, and I'm just still a little bit

21   baffled by that.

22          Attorney Kaplan represented that he

23   represented all defendants.  As early as this week --

24   I guess this evidence is not in the motion, but this

25   week Attorney Peahl e-mailed me blocking -- barring me

14

1    from contacting Dartmouth, as she stated, "When a

2    party to a lawsuit is represented by counsel,

3    correspondence from a pro se plaintiff that is related

4    to the lawsuit shall be directed to counsel".

5           So they have intimidated me basically with,

6    you know, a restraining order of sorts against

7    communicating with anyone other than their counsel,

8    and they said that -- and Kaplan said that he was

9    counsel for Dartmouth College.  In fact, in the other

10   case, Connors versus Dartmouth, he is counsel for

11   Dartmouth College.

12          So I was essentially restrained from

13   communicating with anyone other than Kaplan.  I was

14   following his orders and served him with a summons.

15   So I still, again, don't waive the fact that they've

16   misrepresented it and he agreed to move forward with

17   regard to the summons, but I firmly believe that

18   they've restrained me from communicating with their

19   clients in an attempt to delay this issue.

20          THE COURT:  Dr. Isaacs, listen.  Here is what

21   you need to understand now, okay?  This is what I'm

22   trying to tell you.

23          DR. ISAACS:  Okay.

24          THE COURT:  If you had a lawyer right now, he

25   would understand that we're not here right now to

15

1  argue the lawsuit.  We're here on a very, very

2  preliminary procedural issue, all right?

3          DR. ISAACS:  Yes.

4          THE COURT:  And you've asked me a question

5  here.  See, that's one of the problems with

6  representing yourself.  I can't give you legal advice.

7          DR. ISAACS:  Okay.

8          THE COURT:  I can't do it.  It's not

9  permitted.  It wouldn't be fair to the other side of

10  the case.  If you need legal advice, you're going to

11  have to get it from a lawyer either by retaining one

12  or finding one that will give you free advice, but it

13  can't come from me.  And it can't come from Attorney

14  Kaplan or Attorney Peahl.  When you ask them, well,

15  why can't I do this or why can't I do that, they're

16  really not in a position to tell you that.  Ethically

17  they're prohibited from giving you advice because they

18  represent a party in the case adverse to you.

19          MR. KAPLAN:  Your Honor, can I add one thing,

20  though, that I think might be important here just so

21  this record is clear?

22          THE COURT:  My next point was going to be

23  that I'm sure Attorneys Kaplan and Peahl now probably

24  want to say something on the record because of what

25  you said, so I'll let them do that now.

16

1          MR. KAPLAN:  Well, actually -- I don't mean

2     to be redundant.  I had filed pleadings that respond

3     to these allegations, and I'm satisfied that my record

4     is clear on those pleadings and I don't need to rebut

5     what has been said.  I'm comfortable with what I've

6     already provided to you in the affidavits I signed.

7          I actually wanted to address a different

8     issue --

9          THE COURT:  Okay.

10          MR. KAPLAN:  -- that I wanted to be clear to

11     Dr. Isaacs as well.

12          There's a parallel issue going here.  As you

13     are probably aware, at the end of the day what this

14     case involves -- aside from enumerable allegations, it

15     involves the fact that Dr. Isaacs was terminated from

16     his first year psychiatry residency, and he is

17     challenging that termination.

18          There's other things, obviously, as well, but

19     with regard to that termination Dr. Isaacs has been

20     notified by the director of graduate medical

21     education -- not me -- the director of graduate

22     medical education that he is entitled to pursue

23     certain challenges under the graduate medical

24     education program to that decision -- to the decision

25     to terminate him.

1          That hearing -- it's called a fair hearing

2     process.  That hearing is not connected in any way to

3     this litigation.  In fact, it is a process that

4     excludes counsel in its processing and in its

5     handling.  And I want Dr. Isaacs to be clear and the

6     Court to be clear that insofar as he decides to

7     challenge that decision he can proceed, and he's not

8     barred from doing so, and in fact has received letters

9     from the graduate medical education program alerting

10    him to that fact.  So I don't want there to be any

11    mistake about that, and I don't want him to think in

12    any way that he cannot pursue that remedy if he

13    chooses to do so, and just so the record is clear on

14    that point.

15          THE COURT:  Understood.

16          MS. PEAHL:  And if I might add something as

17    well, your Honor.  I represent Dartmouth College.

18    Dartmouth College is not -- does not run the graduate

19    medical education program.  They were not involved in

20    the decision to terminate Dr. Isaacs from his

21    residency program.

22          The letter that I sent to Dr. Isaacs was

23    quite clear, I think, but to the extent that it wasn't

24    clear, I'm hoping we can clear this up on this phone

25    conference.

1          Dr. Isaacs has continued to contact the

2    president of Dartmouth College, and now the individual

3    trustees of Dartmouth College, regarding an ethics

4    complaint, which as best I can understand is

5    essentially the same allegations that he's now added

6    to his amended complaint.

7          My letter instructed Dr. Isaacs that he needs

8    to communicate through me, as counsel for Dartmouth

9    College, with respect to the matters that are involved

10   in this litigation.  That includes contacting the

11   individual trustees to complain about the same things

12   he's raised in his amended complaint.

13         That's what I communicated by letter to Dr.

14   Isaacs and then repeated in an e-mail, and he's chosen

15   to ignore both of those and continues to make contact

16   with individuals.

17         Nobody is restraining him from pursuing this

18   litigation, but he needs to communicate through me and

19   not be contacting the individuals, and I hope that

20   that message can be made clear through this phone

21   conference.

22         DR. ISAACS:  Well, I just want to respond.

23   Again, this is what I believe is an obstruction of due

24   process.  We learned about respondeat superior in the

25   first semester of law school.  My lawsuit, the initial

1   complaint, was filed months before my termination that

2   Attorney Kaplan just referred to and it is not solely

3   limited to the GME, graduate medical education,

4   termination, which I was informed of only two days

5   ago -- or a week ago, two days before the World Bank

6   nomination.

7            I had filed HIPPA complaints and I had filed

8   breach of contract complaints that my ethics complaint

9   was never listened to, and my complaints of improper

10  activity under respondeat superior, which again is a

11  claim I am legally entitled to make to the employer of

12  the psychiatrists, and the employer of the

13  psychiatrists in this case receive their paychecks

14  from Dartmouth College.

15           So I am sure that Attorney Peahl was brought

16  into this case again to extricate defendant Kim and

17  Dartmouth College from a messy situation.  So I just

18  have to object to what they said, that this is all

19  about a fair hearing process and a termination,

20  because it is much broader than that.

21           THE COURT:  Well, I have a question.  This is

22  directed to the attorneys on the call.  If the doctor

23  here was represented by counsel, I would certainly

24  order him to have no further contact whatsoever with

25  any defendant in this lawsuit.

1          The problem is -- and I don't know the answer

2     to this question because I've never really thought it

3     through.  I've never had to deal with it.  I don't

4     know the nature and limits of my authority to prevent

5     him, as a pro se litigant, from contacting anybody.

6     The rules of professional conduct don't apply to him,

7     and I'm not sure if there are rules that do prevent

8     that.  You may know better than me.  There may be

9     authority for this proposition, but you said you

10    wanted to make it clear from the phone call, Attorney

11    Peahl.  I think you've made your position clear, but

12    I'm not sure if I can put my imprimatur on that.  Am I

13    wrong about that?

14          MS. PEAHL:  Well, I guess I've always been

15    under the assumption -- and maybe I will need to

16    research this if it isn't as well-accepted as I

17    thought -- that a pro se litigant would be held to the

18    same requirement with regards to contact once

19    litigation has begun.

20          If there's counsel representing a defendant,

21    I think the defendant is entitled to say contact needs

22    to come through my counsel regarding all the matters

23    having to do with that litigation.

24          THE COURT:  Well, sure, but what's the

25    basis -- I understand that, but what's the basis for

1    my authority to say that?  That's a rule of

2    professional conduct.  That's not a rule of court,

3    unless I'm overlooking it.

4         Look, it's certainly a reasonable assumption

5    for you to make -- don't get me wrong -- that you

6    would expect someone being a pro se litigant has to

7    conduct him or herself in the way counsel has to.

8    But, frankly, those rules of ethics, which I can use

9    as a tool, are not really available to me with respect

10   to Dr. Isaacs, as far as I know.

11        DR. ISAACS:  Your Honor, also I appreciate

12   you raising this issue, and I think it's even more

13   important given that as an alumnus of Dartmouth

14   College I have other contractual relationships and

15   friendships basically with people at Dartmouth.  And

16   moreover, I own a business corporation in New York

17   City that also has relationships with Dartmouth

18   College.

19        So Attorney Peahl's letter to me the other

20   day stating that I could not communicate with

21   Dartmouth, I mean that would be a clear violation of

22   enumerable constitutional rights so --

23        THE COURT:  I doubt very much that that's the

24   case, sir, but regardless, let me just try to get this

25   resolved.

1          DR. ISAACS:  Okay.

2          THE COURT:  Attorney Peahl, it's not that I'm

3   disagreeing with your position.  What I'm saying is I

4   don't know.  Do you know, Attorney Kaplan?

5          MR. KAPLAN:  I'll only add one thing.  In the

6   situation -- and it hasn't been in federal court, so

7   I'll make that clear.  But in several matters in state

8   court involving pro se litigants I have had judges

9   place what they considered to be -- what I would

10  consider to be restrictions, and what I think they

11  consider typically to be fair handling in the case,

12  and directed that the parties engage themselves in

13  such a way, including the pro se litigants, and have

14  made it clear that their failure to do so could result

15  in appropriate sanctions and appropriate issues with

16  regard to the case.

17          And I think in this particular matter -- and

18  I agree with Attorney Peahl, we may have to send you

19  something on it, but I think in this particular matter

20  the misunderstanding is that the only restriction, as

21  I understand it, that is being suggested is that

22  contacts and communications concerning the issue

23  surrounding his allegations -- nothing more, nothing

24  less -- what he has alleged in his complaint are the

25  issues that he needs to deal with through counsel.

1          I don't think anybody is trying to

2    preclude -- at least I'm not, and I don't think

3    Attorney Peahl is trying to preclude his ability to

4    contact any friends he may have or anything of the

5    like.

6          THE COURT:  No, of course not.

7          MR. KAPLAN:  You know, I think we're talking

8    about matters in which he alleged wrongdoing in his

9    complaint or amended complaint.

10          MS. PEAHL:  And I'll confirm that I think it

11    was quite obvious from my letter that that's what was

12    being asked of him.  My suggestion is either -- if we

13    can't come to some agreement in this conversation

14    about what contact the plaintiff can or can't make

15    with representatives, including the trustees of

16    Dartmouth College, involving the matters of this

17    litigation -- if we can't come to an understanding,

18    the plaintiff doesn't wish to agree to what I have

19    requested, then we'll file some sort of motion to seek

20    clarification of that.

21          My hope is that we can reach an understanding

22    about the extent to which he is being asked to refrain

23    from contacting those individuals.  Nobody is asking

24    that he not have contact with the alumni office and

25    other alumni with whom he is friends or has other

1  relationships.  That clearly was not the scope of my

2  request.

3          THE COURT:  Look, I want to be clear, too.

4  My inclination would certainly be to order Dr. Isaacs

5  here not to have made contact that an attorney would

6  not be able to make in his shoes, because this

7  litigation should be conducted in an orderly way,

8  should proceed in an orderly fashion.

9          My guess is -- and maybe you're hearing

10  something in this conversation that I'm not, but I

11  don't see much hope for that kind of an agreement

12  today.  I just don't see that happening.

13          DR. ISAACS:  Yeah.  And actually I already

14  filed my request for Dartmouth College to help me

15  and -- (inaudible).  I actually don't have any idea

16  of -- (inaudible) -- the nature of that.

17          From my point of view, it's a moot issue

18  because I don't really have any intent at this time to

19  communicate about this issue with Dartmouth.  I'm not

20  at the point where I'm seeking evidence that's been

21  withheld or destroyed.  That's my next step.

22          THE COURT:  All right.  Can I have your

23  agreement then that you will not contact

24  administrators or trustees of Dartmouth College during

25  the pendency of this litigation?

1          DR. ISAACS:  I guess I will agree to -- at

2     least through Attorney Kaplan, I would hope that

3     they're quicker in responding than the two months they

4     ignored me since January.

5          THE COURT:  All right.  Well, if you -- okay.

6     I'll accept your word on that.  If you change your

7     position, please notify the Court.  All right?

8          DR. ISAACS:  Okay.

9          THE COURT:  All right then.  I am going

10    to rule that the motions -- all motions pending are

11    withdrawn as moot.  All right?  And that as of today,

12    30th of March, 2012, all defendants have been served

13    with the amended complaint.  And under the federal

14    rules of civil procedure you've got 21 days to file a

15    responsive pleading.  All right?

16         DR. ISAACS:  21 days from today, your Honor?

17         THE COURT:  Yes, sir.

18         DR. ISAACS:  Okay.

19         THE COURT:  Is that satisfactory to

20    everybody?

21         MS. PEAHL:  We're talking about responding to

22    the amended complaint, correct?

23         THE COURT:  Yes.

24         DR. ISAACS:  Well, wait a second.  I don't

25    think the amended complaint -- the amended complaint

1  doesn't include -- does it include everybody, Kim

2  and -- yeah, I guess it does.  Okay.

3            THE COURT:  Yeah.

4            DR. ISAACS:  Yeah, it does.  Okay.  So 21

5  days to respond to amended complaint.  That's fine.

6            THE COURT:  All right then.

7            DR. ISAACS:  Your Honor, I'm going to -- just

8  as a -- thank you very much.  And I guess then we'll

9  figure out what you want to do with what we'll be

10 going forward with.  That's fine.  Thank you.

11           THE COURT:  All right then.  I appreciate

12 everybody's participation.

13           DR. ISAACS:  Thank you for allowing us to do

14 it this way, Judge.  I really appreciate it.

15           THE COURT:  Not at all.  I'm happy to do it.

16           (Conclusion of hearing 12:05 p.m.)

17

18

19

20

21

22

23

24

25

27

```
 1                  C E R T I F I C A T E

 2

 3

 4        I, Susan M. Bateman, do hereby certify that the

 5   foregoing transcript is a true and accurate

 6   transcription of the within proceedings, to the best of

 7   my knowledge, skill, ability and belief.

 8

 9
     Submitted: 4-11-10         Susan M. Bateman
10                              SUSAN M. BATEMAN, LCR, RPR, CRR
                                LICENSED COURT REPORTER, NO. 34
11                              STATE OF NEW HAMPSHIRE

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```