UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| Dr. J.D. Isaacs | \* | |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| -v- | \* | Case No. 1:12-cv-00040-JL |
| | \* | |
| Dartmouth-Hitchcock Medical Center, | \* | |
| Mary Hitchcock Memorial Hospital, | \* | |
| Dr. Christine T. Finn, Dr. Douglas Noordsy, | \* | Judge Joseph N. Laplante |
| Trustees of Dartmouth College, Dr. Jim Yong Kim, | \* | |
| and "John Doe," | \* | |
| | \* | |
| Defendants. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum of Law in Support of Defendants Trustees of Dartmouth College,
Dr. Jim Yong Kim, Dr. Christine Finn and Dr. Douglas Noordsy's
Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

**I.      Introduction**

Plaintiff has sued the Trustees of Dartmouth College, the College's president, Dr. Jim Yong Kim, and two Dartmouth professors, Dr. Christine Finn and Dr. Douglas Noordsy, asserting various state law claims, alleged violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, and for so-called "unconstitutional retaliation", related to his employment as a Medical Resident at Mary Hitchcock Memorial Hospital. Plaintiff's Complaint does not allege any legally cognizable relationship with Dartmouth College, nor any facts that would support direct liability under any theory against the College or its President, Dr. Kim. Even if he had plead any facts sufficient to support direct

1

liability against Dartmouth College, the operative employment contract and matters susceptible to judicial notice will establish that there was no relationship between Dartmouth, Dr. Kim, Dr. Finn or Dr. Noordsy on the one hand, and Plaintiff on the other, to impose liability because of Plaintiff's employment at Mary Hitchcock Memorial Hospital ("MHMH").[1]  Even if Plaintiff had alleged facts sufficient to support any cause of action against Dartmouth, Plaintiff has not plead any facts that could support individual liability against Dr. Kim.

Additionally, Plaintiff has failed to exhaust administrative remedies as required under the ADA; has failed to state a claim for relief under the ADA, Rehabilitation Act, and related theories; has failed to allege that there was any contract between himself and the College, Dr. Kim, Dr. Finn or Dr. Noordsy; has failed to allege any extreme and outrageous conduct on the part of any defendant; and has failed to allege sufficient facts to establish that Dartmouth College or its President owed him any duty whatsoever in connection with the facts alleged, or that Drs. Finn and Noordsy breached any duty towards him with regard to his medical records. Finally, Plaintiff is seeking recovery for "unconstitutional retaliation," even though no such claim exists.

All of Plaintiff's claims must be dismissed as against Dartmouth College and Dr. Kim. Plaintiff's claims for Retaliation (Count 1), violation of the Rehabilitation Act (Count 2), Breach of Contract (Count 3), Americans with Disabilities Act violations (Count 4), Intentional Infliction of Emotional Distress (Count 5), Negligence (Count 7), Fraud (Count 8), and Breach of Covenant of Good Faith and Fair Dealing (Count 9) must also be dismissed as against Drs. Noordsy and Finn.

---

[1]  See Employment Contract attached as Exhibit A to Declaration of Kathleen C. Peahl, Esq., attached to this Memorandum.  This Court may consider the pertinent employment contract without converting this 12(b)(6) motion into a Motion for Summary Judgment.  Rosenblum v. TravelByUS.com, Ltd., 229 F.3d 657, 661-62 (7th Cir. 2002). Additionally, the Court may consider facts subject to judicial notice in deciding a Motion under Rule 12(b)(6). Martone v. Sokol, 2011 DNH 215 at 2 (citing Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).

## II.      Summary of Factual Allegations

Plaintiff was a Medical Resident at Mary Hitchcock Memorial Hospital at Dartmouth-Hitchcock Medical Center ("DHMC") from June, 2011 through January, 2012.  See Plaintiff's Amended Complaint ("Complaint") at ¶¶3, 23.  He went on leave in January, 2012, did not return to work, and was terminated on March 19, 2012.  See id. at ¶36.  Although Plaintiff alleges that Dartmouth College[2] Professors took part in "an unethical scenario . . . to coerce [his] resignation from Dartmouth-Hitchcock Medical Center,"[3]id.at §I, Plaintiff does not allege that he had any contract or employment relationship with Dartmouth College or its President, Dr. Kim. See Employment Contract of Plaintiff and Mary Hitchcock Hospital[4] attached as Exhibit A to Declaration of Kathleen C. Peahl, attached hereto.[5]

---

[2] The Trustees of Dartmouth College are a body corporate and politic with the power and authority to conduct the affairs of Dartmouth College.  The Charter of the College is a public document maintained on file at the N.H. Secretary of State's Office, and is available at https://www.sos.nh.gov/corporate /soskb/csearch.asp (type "Trustees of Dartmouth College" into search bar provided and click on link captioned "Trustees of Dartmouth College," then click on link for "Filed Documents," then click on the Creation Filing dated 12/13/1769).  A copy of the original charter is attached as Exhibit B to Declaration of Kathleen C. Peahl.

[3] Dartmouth-Hitchcock Medical Center is a not-for-profit corporation that was created with a purpose to "support, promote and advance and strengthen," among other entities, Dartmouth College's Medical School by providing "services . . .designed to promote advance and strengthen the interdependent and synergistic activities of the of the *independent supported organizations*" in areas of health care, research, and otherwise.  The Dartmouth-Hitchcock Articles of Agreement are a public document, maintained by the N.H. Secretary of State's Office, and is available at https://www.sos.nh.gov/corporate /soskb/csearch.asp (type "Dartmouth-Hitchcock Medical Center" into search bar provided, then click on link captioned "Dartmouth-Hitchcock Medical Center," then click on links for "Filed Documents," then click on Articles of Agreement dated 05/26/1983). A copy of the Articles of Agreement is attached as Exhibit C to Declaration of Kathleen C. Peahl.

[4] Mary Hitchcock Memorial Hospital is a not-for-profit Corporation created by statute.  See 1889 N.H. Laws Ch. 236 (Approved Aug. 7, 1889).  A copy of this creation filing is maintained by the N.H. Secretary of State, and is available at:  https://www.sos.nh.gov/corporate /soskb/csearch.asp (type "Mary Hitchcock Memorial Hospital" into search bar provided, then click on link captioned "Mary Hitchcock Memorial Hospital," then click on "Filed Documents," and click on link for "Creation Filing" dated 08/07/1889). A copy of this chapter law is attached as Exhibit D to Declaration of Kathleen C. Peahl.

[5]In employment cases such as this one, a defendant may rely upon the operative employment contract without converting a motion to dismiss into one for summary judgment.  Rosenblum v. TravelByUS.com, Ltd., 229 F.3d 657, 661-62 (7th Cir. 2002).

Plaintiff alleges that various Dartmouth professors, in their role as supervisors of the medical residency program at DHMC, subjected him to untruthful criticisms and reviews.  Id. at ¶¶17, 10, 9, 15, 75-81, 85, 86.  Despite plaintiff's conclusory allegations that Dartmouth College and Defendant Kim had duties to him under various ethics codes, HIPAA, and other federal laws, he makes no allegation that he had any contract or employment relationship with Dartmouth College or Dr. Kim, or that those Defendants provided any medical treatment to him.  His conclusory inference that his complaints to Dr. Kim had some relationship to his termination (See Doc. 13-1 at p. 3) is the only asserted link between Dartmouth College or Dr. Kim and Plaintiff.

Plaintiff claims that, while employed at DHMC, he sought, and was denied, accommodation for a disability under the Americans with Disabilities Act and the Rehabilitation Act.  See Complaint at ¶¶14, 17, 18, 39, 45-49, 57-61.  He claims that his termination was caused, in part, by retaliation for requesting such accommodations.  See id at ¶¶ 38-40.Plaintiff further alleges that he sought accommodation from Dartmouth College and Dr. Kim.  See id at ¶¶27, 34.  He alleges that he made an "ethics complaint" pursuant to a Dartmouth College ethics policy and that nobody responded to this complaint.  Id. at ¶¶34, 39, 51, 67, 9, 28, 30, 31, 32, 33.Plaintiff also alleges that DHMC has breached his medical privacy.  See id. at ¶¶24, 35, 70-72.

With respect to Dr. Noordsy, the only allegation made by plaintiff is that he "issued . . . inappropriate criticism" toward plaintiff.  See Doc 13-1 at p. 2.

Finally, with respect to Dr. Finn and other unnamed Dartmouth College professors, plaintiff's allegations are that:

A.      There were inappropriate criticisms of his work.  Id.; Complaint at ¶¶9, 14, 17, 79.

4

B.     Requests for accommodation related to his employment at DHMC were ignored. Complaint at ¶¶17, 18, 39, 47, 51, 58.

C.     He was subjected to "rude stares and other abnormal behavior."  Id. at ¶20.

D.     He was subjected to unspecified "cruel and unusual" treatment. Id. at ¶25.

E.     He might have been the subject of unspecified human research.  Id. at ¶33.

## III.     Argument

In considering a Motion under F.R.C.P. 12(b)(6),  the Court must assume that all well-pleaded factual allegations are true, and draw all reasonable inferences arising from them in favor of the Plaintiff.  Martone v. Sokol, 2011 DNH 215 at 2 (citation omitted).  "The court 'may consider not only the complaint, but also . . . 'matters susceptible to judicial notice.'"  Id. (quoting Redford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009)).  Factual allegations must be sufficient to "raise a right to relief sought beyond the speculative level."  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Although the complaints of pro se plaintiffs are generally given a lenient construction, when that construction "demonstrates beyond doubt that plaintiff can prove no set of facts to support [his] claim for relief," dismissal under Rule 12(b)(6) is appropriate.  Rockwell v. Cape Cod Hosp., 26 F.3d 254, 260 (1st Cir. 1994).

### A.  Plaintiff's "Unconstitutional Retaliation" Claims (Count 1) Must be Dismissed.

Count 1 asserts a claim of "Unconstitutional Retaliation."  Although such a claim may be recognized in the context of government employment, see Garcetti v. Ceballos, 547 U.S. 410, 423 (2006), no such claim exists in the private sector.  Plaintiff has not alleged that any defendant was a state actor, or that any of the actions he complains of were taken "under the color of law" and so any claim based on an alleged constitutional deprivation must be dismissed.

See <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999) (citations omitted) (refusing to allow Constitutional claims against private insurers operating under statutory scheme).  Plaintiff's allegations that the Graduate Medical Education Program received federal funds does not render <u>any</u> defendant a "state actor" capable of violating Constitutional rights. See <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 836-37 (1982) (holding that government funding and regulation did not render a private school a state actor).Thus, to the extent his retaliation claims are based on the Constitution, Count 1 of Plaintiff's Amended Complaint fails to state a claim for which relief can be granted, and must be dismissed as against Dartmouth College, Dr. Kim, Dr. Finn and Dr. Noordsy (the "Dartmouth Defendants").

To the extent that Plaintiff claims that he was retaliated against because of his alleged protected activity under the ADA and Rehabilitation Act, his retaliation claims fail because he failed to exhaust his administrative remedies under the ADA and because neither Dartmouth College nor any of the individual defendants can be liable as either Plaintiff's employer or "program or activity" in which Plaintiff sought to participate.  <u>See</u> Sections III(B) and III(D), <i>infra</i>.  <u>See also</u> <u>Davis v. UPS</u>, 2003 DNH 81, 2003 U.S. Dist. LEXIS 8547 at *7-8; <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002).

The Rehabilitation Act's anti-retaliation provision is contained in 28 C.F.R. § 42.503(b)(1)(vii).  <u>See</u> <u>D.B. v. Esposito,</u> 2012 U.S. App. LEXIS 6099 at *36 (1st Cir. Mar. 23, 2012).  A retaliation claim under that regulation requires proof that (1) "[Plaintiff] engaged in protected conduct, (2) [Plaintiff] **was subjected to an adverse action *by the defendant*,** and (3) there was a causal connection between the protected conduct  and the adverse action."  <u>Id.</u> at *38(emphasis added) (<u>citing</u> <u>Quiles-Quiles v. Henderson</u>, 439 F.3d 1, 8 (1st Cir. 2006)). Plaintiff has not alleged that Dartmouth or Dr. Kim subjected him to any adverse action, and so any retaliation claims must be dismissed against them.

Similarly, a retaliation claim under the ADA's anti-retaliation provision (42 USC §12203(a)) requires proof that the plaintiff engaged in protected conduct, **suffered an adverse employment action**, and that there was a causal connection between the protected conduct and the adverse action.  See Freadman v. Metro. Prop. &Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007) (emphasis added) (citations omitted).  Plaintiff's complaint is devoid of any allegations that Dartmouth College or Dr. Kim undertook any action because of Plaintiff's allegedly protected requests for accommodation and so any retaliation claims must be dismissed against them.

Finally, to the extent that Plaintiff's claim for retaliation relates to an alleged HIPAA complaint, or the "ethics complaint," or other allegedly protected acts, he has failed allege that any Dartmouth Defendant took any action against him because of the allegedly protected conduct.  For all of these reasons, all of Plaintiff's retaliation claims (Count 1) must be dismissed as against all Dartmouth Defendants.

**B.  Plaintiff's Rehabilitation Act Claims (Count 2) Must be Dismissed as Against All Dartmouth Defendants**

Plaintiff alleges that all Defendants violated his rights under the Rehabilitation Act (Count 2).  Because Plaintiff has not alleged sufficient facts to prove that any of the Dartmouth Defendants were a covered program or activity with respect to Plaintiff's participation in the Graduate Medical Education Program at MHMH, such claims fail to state a claim for relief.

To be liable under the Rehabilitation Act, an entity must constitute a program or activity in which a Plaintiff is enrolled or seeks enrollment.  29 USC § 794(a).  Although Plaintiff claims that he was enrolled in the Graduate Medical Education Program and sought to participate in apparently related programs, there is no factual allegation that Dartmouth administered any such program.  Indeed, as Plaintiff's Contract with MHMH shows, it was only Mary Hitchcock

Memorial Hospital and Dartmouth-Hitchcock Medical Center that were to provide any program or activity in connection with the Graduate Medical Education Program.   *See* Exhibit A. Plaintiff's claims against Dartmouth College and Dr. Kim under the Rehabilitation Act must be dismissed.

Plaintiff also seeks to hold Drs. Finn and Noordsy individually liable for alleged violations of the Rehabilitation Act.  Plaintiff's complaint does not allege anything more of these Defendants than that they supervised his work at MHMH.  "The majority of Circuits that have confronted this issue [have held] that no personal liability can attach to agents and supervisors under . . . the Rehabilitation Act."  J.P.E.H. v. Hooksett School District, 2008 D.N.H. 193 at 4 (quotation omitted).  This Court has found the weight of authority against personal liability persuasive in the recent past.  Id.  As personal liability for Rehabilitation Act violations is not available in the majority of jurisdictions, and has been held unavailable in this Court, Plaintiff's claims against Drs. Finn and Noordsy for violations of the Rehabilitation Act must also be dismissed.

### C.  Plaintiff's Breach of Contract Claims(Count 3) and Good Faith and Fair Dealing Claims(Count 9) Must Be Dismissed Against All Dartmouth Defendants

Plaintiff's contract with MHMH demonstrates that there was no contractual relationship with any Dartmouth defendant. See Exhibit A.  Furthermore, his Complaint does not allege that he had any agreement with any Dartmouth Defendant relating to his medical residency.

Absent an agreement between the Plaintiff and any of the Dartmouth  Defendants, there can be no contract claim against Dartmouth College, Dr. Kim, Dr. Finn or Dr. Noordsy. Tessier v. Rockefeller, 162 N.H. 324, 338-39 (2011); Gross v. Shep Brown's Boat Basin, 2000 DNH 49, 2000 U.S. Dist. LEXIS 2622 at *2-3.  Likewise, a claim for breach of the covenant of good faith and fair dealing is dependent on the existence of a contract.

See Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143 (1989). Thus, plaintiff's claims for Breach of Contract (Count 3) and Breach of the Covenant of Good Faith and Fair Dealing (Count 9) must be dismissed as against all Dartmouth Defendants.

### D.  Plaintiff's Claims under the Americans with Disabilities Act (Count 4) Must Be Dismissed Against all Dartmouth Defendants

Plaintiff claims that all defendants violated the Americans with Disabilities Act.  As a preliminary matter, Plaintiff does not allege that he filed a claim with the EEOC or parallel state agency. Having failed to exhaust his administrative remedy, his claims under the ADA, including any retaliation claims, are barred. Thornton v. UPS, Inc., 587 F.3d 27, 31 (1st Cir. 2009) (citing 42 USC 2000e-5); see also 42 USC § 12117(a) (adopting procedures in 42 USC 2000e-5 for enforcement of ADA Title I provisions).  Thus, Count 4 of Plaintiff's Amended Complaint, as well as any related retaliation claim under Count 1, must be dismissed.  Even if Plaintiff had exhausted his administrative remedy, as required, however, the allegations of his complaint would still fail to state a cause of action.

The Americans with Disabilities Act only forbids discrimination by a "covered entity," which can only include "an employer, employment agency, labor organization or joint labor-management committee." 42 USC § 12111(2)).  Therefore, for Plaintiff's claim to survive a 12(b)(6) motion, Plaintiff must allege that, under Title I of the ADA, Dartmouth College, Dr. Kim, Dr. Finn and Dr. Noordsy were his "employers" within the meaning of the statute.  *See* 42 USC § 12112.

Plaintiff's contract with respect to his employment was solely with MHMH.  Plaintiff does not even suggest that his ADA claims are premised on anything other than his employment relationship with MHMH.  Plaintiff does not allege that he was an employee of Dartmouth College, nor could he.  See Exhibit A. Nor does he allege that Dartmouth College controlled any

aspect of his employment at MHMH.  Absent such an allegation, Plaintiff's complaint fails to state a cause of action against Dartmouth College or Dr. Kim.  See Lopez v. Massachusetts, 588 F.3d 69, 88 (1st Cir. 2009) (entity cannot be "employer" within meaning of ADA unless it employs Plaintiff or "exercises control over an important aspect of [a] plaintiff's employment.").

Additionally, plaintiff has not alleged anything more than that Drs. Noordsy and Finn were his supervisors at MHMH.  Supervisors are not "employers" under the ADA.  See Roman-Oliveras v. Puerto Rico Electric Power Authority, 655 F.3d 43, 45 (1st Cir. 2011), Accordingly, there can be no individual liability against Drs. Noordsy or Finn under the ADA and Count 4 of the Complaint must be dismissed as against Dartmouth, Dr. Kim, Dr. Finn and Dr. Noordsy.

### E.  Plaintiff's Claims of Intentional Infliction of Emotional Distress (Count 5) Fail to State a Claim for Relief

Plaintiff has not made any allegation against Dr. Kim, other than that he did not respond to inquiries by plaintiff about his employment at an entity that Dr. Kim did not control.  There is also no allegation that Dartmouth took any action against plaintiff, other than his unsupported conclusions that "defendants" did all of the things he believes were wrongful. Likewise, the only allegation as to Dr. Noordsy was that he gave inaccurate criticism of plaintiff's work.

These acts do not rise to the level of "extreme and outrageous" conduct required for an intentional infliction of emotional distress.  See Konefal v. Hollis/Brookline Sch. Dist., 143 N.H. 256, 260-61 (1998).   Indeed, under New Hampshire law, even where the "illegal and reprehensible" discharge of an employee may be actionable, it does not support an intentional infliction of emotional distress claim.   Id.   To rise to the level of intentional infliction of emotional distress, a Defendant's actions must be "so outrageous and extreme 'as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Bourque v. Town of Bow, 736 F. Supp. 398, 404 (D.N.H. 1990) (citing

RESTATEMENT (SECOND) OF TORTS § 46(1)).  Plaintiff does not allege any conduct on the part of Dartmouth or Dr. Kim, other than ignoring complaints he (incorrectly) believed required a response. Plaintiff only alleges that Dr. Noordsy inaccurately criticized his work.   Such allegations do not rise to the level of "extreme and outrageous conduct" needed to be actionable under New Hampshire law.

Plaintiff's allegations against Dr. Finn amount to the subjective belief of Plaintiff that she participated in unlawful employment actions and the discharge of Plaintiff.  Such allegations, even if proven, would only constitute the type of illegal workplace behavior that the New Hampshire Supreme Court has held not to be actionable as intentional infliction of emotional distress theory.  Konefal, 143 N.H. at 260-61. Thus, Plaintiff's intentional infliction of emotional distress claim (Count 5), as against Dartmouth and Drs. Kim, Noordsy and Finn, must be dismissed.

### F.  Plaintiff's Claims of Negligent Infliction of Emotional Distress (Count 6) Against Dartmouth and Dr. Kim Must Be Dismissed

To state a valid claim for negligent infliction of emotional distress, a plaintiff must allege that the causal negligence of a defendant foreseeably caused serious mental and emotional harm, accompanied by objective physical symptoms. Tessier, 162 N.H. at 342.

Plaintiff has not plead any facts that would support the proposition that Dr. Kim or Dartmouth College owed him any duty of care with respect to his employment or medical treatment at DHMC.  Plaintiff makes conclusory allegations about the lack of a response to his ethics complaints—but offers no facts in support of his contention that Dartmouth owed him any duty to respond to the ethics complaint of a medical resident who was employed by an entity other than Dartmouth College. His only other allegation against Dr. Kim or Dartmouth is that he complained to, or inquired of, Dr. Kim about DHMC HIPAA violations and his employment

status, without any response.  Even construing these allegations generously, in light of the employment agreement and the charters of each entity, see Exhibits A-D to the attached Declaration of Kathleen C. Peahl, Plaintiff's complaint does not establish the existence of any duty owed to him by Dartmouth or Dr. Kim in relation to his employment or treatment.  The Complaint does not allege such duties of care on the part of Dartmouth or Dr. Kim.

As there is no cognizable duty of care alleged as to Dartmouth or Dr. Kim, Plaintiff's Negligent Infliction of Emotional Distress claim (Count 6) must be dismissed as to those defendants.

### G.   Plaintiff's Negligence Claims (Count 7) Must Be Dismissed as Against Dartmouth and Drs. Kim, Noordsy, and Finn

In Count 7, Plaintiff attempts to assert a negligence claim based on the alleged breach of his medical privacy following his admission to DHMC.  He claims generally that "Defendants" had a duty under the Health Insurance Portability and Accountability Act ("HIPAA") to maintain the confidentiality of his medical information and that "Defendants" breached that duty.[6]Although he makes a vague reference to "The Department of Psychiatry," see Complaint at ¶ 24, he makes no allegation that either Dartmouth or Dr. Kim was a health-care provider, or otherwise was a "covered entity" under HIPAA.   See 45 CFR §160.103.   Indeed, he acknowledges that he was treated at DHMC, Complaint at ¶23, and makes no allegation that Dartmouth, or Dr. Kim, had any access to his medical records or any obligation to safeguard these records. Plaintiff also does not allege that Dr. Finn or Dr. Noordsy improperly accessed his records.  He makes no allegation that either doctor treated him when he was admitted at DHMC. Indeed, he does not even make any allegation about who became aware of his admission, or how they became aware of it.  Additionally, Plaintiff makes no allegation that either Dr. Finn or

---

[6]  This count sounds in negligence and does not assert a cause of action under HIPAA.  In fact, no private right of action exists under HIPAA.  See Miller v.Nichols, 586 F.3d 53, 59-60 (1st Cir. 2009).

Dr. Noordsy were the members of the Department of Psychiatry who allegedly breached his medical privacy, which seems to be the sole basis of this negligence claim.  <u>See</u> Complaint at ¶¶ 24, 70-73.   Absent such allegations, the bare conclusion that a medical privacy breach occurred is insufficient to maintain a negligence claim.  Fed. R. Civ. Pro. 12(b)(6).

Absent any allegation that Dartmouth or Dr. Kim owed Plaintiff any duty or that Dr. Noordsy or Dr. Finn took part in, or committed, any unauthorized access to his protected health information, the negligence claim in Plaintiff's Complaint (Count 7) must be dismissed as to all Dartmouth Defendants.

### H.  Plaintiff's Fraud Claim (Count 8)  Must Fail as to All Dartmouth Defendants

To survive a Motion to Dismiss, a plaintiff's fraud claim must be pleaded with specificity.  Fed. Civ. Pro 9(b).  Facts sufficient to prove the following elements must be plead:

    i.      That defendant made a representation to plaintiff;

    ii.     With knowledge of its falsity;

    iii.    With the intention of causing plaintiff to rely on the statement; and

    iv.     That plaintiff justifiably relied on these statements to his detriment.

<u>See</u> <u>Tessier</u>, 162 N.H. at 332.

Plaintiff's Complaint consistently asserts that Dartmouth and Dr. Kim had <u>no</u> communication with him.   In the absence of any allegation of any representation made to plaintiff by Dr. Kim or Dartmouth, the fraud claim must be dismissed as to them.

As to Drs. Finn and Noordsy, plaintiff asserts that they misrepresented his performance in an effort to force his resignation.  Complaint at ¶77.  Plaintiff does not, however, allege that he resigned—indeed, he claims he was terminated for improper reasons.  Plaintiff has not plead that he justifiably relied on the allegedly inaccurate criticisms except to the extent he worked to keep

a job from which he now claims wrongful termination. He does not claim that he changed his position at MHMH, other than to try to improve his performance, and he does not allege that such improvements caused him any harm.  Absent justifiable, detrimental reliance on any statements of Dr. Finn or Noordsy, his fraud claim must fail as to those defendants. Gray v. First N.H. Banks, 138 N.H. 279, 284 (1994).Thus, the fraud claim (Count 8) must be dismissed as against all Dartmouth Defendants.

### I.  Even if Any Claims Against Dartmouth College Are Allowed to Proceed, Plaintiff Has Not Stated Any Claim for Relief Against Dr. Kim.

The president of a corporate entity, such as Dartmouth College, cannot be individually liable for a tort committed by the corporation or one of its employees unless the president "participate[d] in the tort or ha[d] knowledge amounting to acquiescence[.]"  Martone, 2011 DNH 215 at 9 n.4 (citations omitted).  "Some knowledge and participation, actual or implied, must be brought home" to a corporate officer before any personal liability in tort will be imputed to him.  Id.  Plaintiff has not alleged that Dr. Kim participated or acquiesced in any tort. Additionally, as discussed in sections III(B) and III(D), *supra*, an individual corporate officer cannot be held liable for ADA or Rehabilitation Act violations, or retaliation claims based on those laws, under the facts alleged by Plaintiff.  A corporate officer cannot be held individually liable for a corporate entity's contract claims without piercing the corporate veil, which Plaintiff has not alleged.  See, Holloway Automotive Group v. Lucic, 163 N.H. 6, 11-12 (2011).  Thus, even if any claims against Dartmouth survive this Motion to Dismiss, all claims against Dr. Kim cannot.

### IV.    CONCLUSION

Plaintiff has not alleged that he had any relationship with Dartmouth College or Dr. Kim that is relevant to this lawsuit.  Although Drs. Finn and Noordsy supervised his work as a

resident at DHMC and Mary Hitchcock Memorial Hospital, Plaintiff has not made out claims for their individual liability pursuant to the federal laws under which he claims protection, even if he had exhausted his administrative remedies where required.  He has not alleged any extreme or outrageous conduct on the part of any defendant, nor has he alleged that Dartmouth, Dr. Kim, Dr. Noordsy or Dr. Finn improperly accessed or disseminated his medical records.  Plaintiff has not alleged sufficient facts to establish any duty owed to him by Dr. Kim or Dartmouth in connection with his employment at MHMH.  In short, Plaintiff has failed to plead sufficient facts to maintain any cause of action against Dartmouth or Dr. Kim, and has failed to plead sufficient facts to maintain anything other than a claim of negligent infliction of emotional distress against Drs. Finn and Noordsy.

Respectfully Submitted,
**Trustees of Dartmouth College, Dr. Jim Yong Kim, Dr. Christine Finn and Dr. Douglas Noordsy**
Wadleigh, Starr & Peters, P.L.L.C.


/s/ Kathleen C. Peahl
Kathleen C. Peahl, Esquire, NH Bar No.
Pierre A. Chabot, Esquire, NH Bar No. 17606
95 Market Street, Manchester, NH  03101
(603) 669-4140
Kpeahl@wadleighlaw.com
pchabot@wadleighlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has this 20th day of April, 2012, been filed electronically with the Court and copied to J.D. Isaacs, pro se, and Edward M. Kaplan, Esq.


/s/ Kathleen C. Peahl
Kathleen C. Peahl

15