```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                 *
     J.D. ISAACS                 *
                                 *   12-CV-40-JL
              v.                 *   March 30, 2012
                                 *   11:30 a.m.
DARTMOUTH HITCHCOCK MEDICAL      *
CENTER, ET AL                    *
                                 *
* * * * * * * * * * * * * * * * *


         TRANSCRIPT OF TELEPHONE CONFERENCE
      BEFORE THE HONORABLE JOSEPH N. LAPLANTE
```

APPEARANCES:

For the Plaintiff:      Jeffrey D. Isaacs
                        Pro Se



For the Defendant:      Edward M. Kaplan, Esq.
                        Sulloway & Hollis

                        Kathleen C. Peahl, Esq.
                        Wadleigh, Starr & Peters, PLLC



Court Reporter:         Susan M. Bateman, LCR, RPR, CRR
                        Official Court Reporter
                        United States District Court
                        55 Pleasant Street
                        Concord, NH 03301
                        (603) 225-1453

```
 1                P R O C E E D I N G S
 2         THE CLERK:  We have for consideration this
 3  morning a telephone conference in civil action
 4  12-CV-40-JL, J.D. Isaacs versus Dartmouth Hitchcock
 5  Medical Center, et al.
 6         We do have a court reporter present today,
 7  and I would ask, starting with Mr. Isaacs, if you
 8  would please identify yourselves for the record and
 9  before speaking each time please identify yourselves.
10  Thank you.
11         DR. ISAACS:  Yes.  I guess I'm filed as
12  plaintiff, Dr. J.D. Isaacs, your Honor, and I'm
13  present.
14         MS. PEAHL:  Attorney Kathleen Peahl from
15  Wadleigh, Starr & Peters representing Dartmouth
16  College and Dr. Finn, Dr. Kim and Dr. Noordsy.
17         MR. KAPLAN:  Ed Kaplan from Sulloway & Hollis
18  representing the Medical Center and Mary Hitchcock
19  Memorial Hospital.
20         THE COURT:  Good morning, everyone.
21         MR. KAPLAN:  Good morning, Judge.
22         DR. ISAACS:  Good morning.
23         MS. PEAHL:  Good morning.
24         THE COURT:  With me in chambers, as you just
25  heard, is Deb Eastman, deputy clerk, and I also have a
```

1       THE COURT: I see.
2       DR. ISAACS: So given the urgency of this, I
3  did feel I could move quicker by filing myself things
4  as opposed to shopping around for attorneys.
5       THE COURT: Sure.
6       DR. ISAACS: It's somewhat by choice
7  initially, but going forward I cannot afford an
8  attorney because educational cases usually they're not
9  done on contingencies. I believe that answers your
10 question.
11      THE COURT: All right. Okay. Look, it's
12 your right to go pro se, if you want to. I mean, I
13 think it's going to be a far more difficult endeavor
14 for you to do that. I think as this service of
15 process sort of episode demonstrates, the fact is you
16 did not effect proper service initially, but that's
17 all moot now because they've accepted service and I'm
18 going to rule that they've been served.
19      I only say that to you because, you know, as
20 a pro se litigant, you know, what I'm going to do is
21 make sure that, you know, you're not taken advantage
22 of or in some way -- I don't mean taken advantage of
23 by counsel here. I mean that you're not victimized by
24 the rules in a technical way to your detriment.
25      I want to make sure justice happens here, but

1  the rules still apply to you.  In other words, I can't
2  make the rules go away.  The Federal Rules of Civil
3  Procedure apply, and I'm going to need to hold you to
4  them.
5       What I'm also going to be doing, because you
6  don't have a lawyer, is making sure you're not -- for
7  lack of a better word -- tripped up by the rules in a
8  way that would be unjust.
9       DR. ISAACS:  Okay.
10      THE COURT:  But those rules do apply to you,
11 and I can't overlook them or not hold you to them.
12 Service of process is an example.  Counsel here are
13 telling me, look, let's get on with it.  We could
14 quibble over some of these issues, but we prefer to
15 move on.  But there are issues that, frankly, they
16 could raise, if they were inclined, and I would have
17 to enforce them.  All right?
18      DR. ISAACS:  Yes.  I appreciate that.  I do
19 have a question.  You stated that service was not
20 properly effected, and I'm just still a little bit
21 baffled by that.
22      Attorney Kaplan represented that he
23 represented all defendants.  As early as this week --
24 I guess this evidence is not in the motion, but this
25 week Attorney Peahl e-mailed me blocking -- barring me

1   The problem is -- and I don't know the answer
2   to this question because I've never really thought it
3   through. I've never had to deal with it. I don't
4   know the nature and limits of my authority to prevent
5   him, as a pro se litigant, from contacting anybody.
6   The rules of professional conduct don't apply to him,
7   and I'm not sure if there are rules that do prevent
8   that. You may know better than me. There may be
9   authority for this proposition, but you said you
10  wanted to make it clear from the phone call, Attorney
11  Peahl. I think you've made your position clear, but
12  I'm not sure if I can put my imprimatur on that. Am I
13  wrong about that?
14          MS. PEAHL: Well, I guess I've always been
15  under the assumption -- and maybe I will need to
16  research this if it isn't as well-accepted as I
17  thought -- that a pro se litigant would be held to the
18  same requirement with regards to contact once
19  litigation has begun.
20          If there's counsel representing a defendant,
21  I think the defendant is entitled to say contact needs
22  to come through my counsel regarding all the matters
23  having to do with that litigation.
24          THE COURT: Well, sure, but what's the
25  basis -- I understand that, but what's the basis for

```
 1   my authority to say that?  That's a rule of
 2   professional conduct.  That's not a rule of court,
 3   unless I'm overlooking it.
 4          Look, it's certainly a reasonable assumption
 5   for you to make -- don't get me wrong -- that you
 6   would expect someone being a pro se litigant has to
 7   conduct him or herself in the way counsel has to.
 8   But, frankly, those rules of ethics, which I can use
 9   as a tool, are not really available to me with respect
10   to Dr. Isaacs, as far as I know.
11          DR. ISAACS:  Your Honor, also I appreciate
12   you raising this issue, and I think it's even more
13   important given that as an alumnus of Dartmouth
14   College I have other contractual relationships and
15   friendships basically with people at Dartmouth.  And
16   moreover, I own a business corporation in New York
17   City that also has relationships with Dartmouth
18   College.
19          So Attorney Peahl's letter to me the other
20   day stating that I could not communicate with
21   Dartmouth, I mean that would be a clear violation of
22   enumerable constitutional rights so --
23          THE COURT:  I doubt very much that that's the
24   case, sir, but regardless, let me just try to get this
25   resolved.
```

1     DR. ISAACS: Okay.
2     THE COURT: Attorney Peahl, it's not that I'm
3  disagreeing with your position. What I'm saying is I
4  don't know. Do you know, Attorney Kaplan?
5     MR. KAPLAN: I'll only add one thing. In the
6  situation -- and it hasn't been in federal court, so
7  I'll make that clear. But in several matters in state
8  court involving pro se litigants I have had judges
9  place what they considered to be -- what I would
10 consider to be restrictions, and what I think they
11 consider typically to be fair handling in the case,
12 and directed that the parties engage themselves in
13 such a way, including the pro se litigants, and have
14 made it clear that their failure to do so could result
15 in appropriate sanctions and appropriate issues with
16 regard to the case.
17    And I think in this particular matter -- and
18 I agree with Attorney Peahl, we may have to send you
19 something on it, but I think in this particular matter
20 the misunderstanding is that the only restriction, as
21 I understand it, that is being suggested is that
22 contacts and communications concerning the issue
23 surrounding his allegations -- nothing more, nothing
24 less -- what he has alleged in his complaint are the
25 issues that he needs to deal with through counsel.

1   I don't think anybody is trying to
2   preclude -- at least I'm not, and I don't think
3   Attorney Peahl is trying to preclude his ability to
4   contact any friends he may have or anything of the
5   like.
6   THE COURT: No, of course not.
7   MR. KAPLAN: You know, I think we're talking
8   about matters in which he alleged wrongdoing in his
9   complaint or amended complaint.
10  MS. PEAHL: And I'll confirm that I think it
11  was quite obvious from my letter that that's what was
12  being asked of him. My suggestion is either -- if we
13  can't come to some agreement in this conversation
14  about what contact the plaintiff can or can't make
15  with representatives, including the trustees of
16  Dartmouth College, involving the matters of this
17  litigation -- if we can't come to an understanding,
18  the plaintiff doesn't wish to agree to what I have
19  requested, then we'll file some sort of motion to seek
20  clarification of that.
21  My hope is that we can reach an understanding
22  about the extent to which he is being asked to refrain
23  from contacting those individuals. Nobody is asking
24  that he not have contact with the alumni office and
25  other alumni with whom he is friends or has other

1  relationships.  That clearly was not the scope of my
2  request.
3         THE COURT:  Look, I want to be clear, too.
4  My inclination would certainly be to order Dr. Isaacs
5  here not to have made contact that an attorney would
6  not be able to make in his shoes, because this
7  litigation should be conducted in an orderly way,
8  should proceed in an orderly fashion.
9         My guess is -- and maybe you're hearing
10 something in this conversation that I'm not, but I
11 don't see much hope for that kind of an agreement
12 today.  I just don't see that happening.
13        DR. ISAACS:  Yeah.  And actually I already
14 filed my request for Dartmouth College to help me
15 and -- (inaudible).  I actually don't have any idea
16 of -- (inaudible) -- the nature of that.
17        From my point of view, it's a moot issue
18 because I don't really have any intent at this time to
19 communicate about this issue with Dartmouth.  I'm not
20 at the point where I'm seeking evidence that's been
21 withheld or destroyed.  That's my next step.
22        THE COURT:  All right.  Can I have your
23 agreement then that you will not contact
24 administrators or trustees of Dartmouth College during
25 the pendency of this litigation?

```
 1         DR. ISAACS:  I guess I will agree to -- at
 2   least through Attorney Kaplan, I would hope that
 3   they're quicker in responding than the two months they
 4   ignored me since January.
 5         THE COURT:  All right.  Well, if you -- okay.
 6   I'll accept your word on that.  If you change your
 7   position, please notify the Court.  All right?
 8         DR. ISAACS:  Okay.
 9         THE COURT:  All right then.  I am going
10   to rule that the motions -- all motions pending are
11   withdrawn as moot.  All right?  And that as of today,
12   30th of March, 2012, all defendants have been served
13   with the amended complaint.  And under the federal
14   rules of civil procedure you've got 21 days to file a
15   responsive pleading.  All right?
16         DR. ISAACS:  21 days from today, your Honor?
17         THE COURT:  Yes, sir.
18         DR. ISAACS:  Okay.
19         THE COURT:  Is that satisfactory to
20   everybody?
21         MS. PEAHL:  We're talking about responding to
22   the amended complaint, correct?
23         THE COURT:  Yes.
24         DR. ISAACS:  Well, wait a second.  I don't
25   think the amended complaint -- the amended complaint
```

```
 1  doesn't include -- does it include everybody, Kim
 2  and -- yeah, I guess it does.  Okay.
 3          THE COURT:  Yeah.
 4          DR. ISAACS:  Yeah, it does.  Okay.  So 21
 5  days to respond to amended complaint.  That's fine.
 6          THE COURT:  All right then.
 7          DR. ISAACS:  Your Honor, I'm going to -- just
 8  as a -- thank you very much.  And I guess then we'll
 9  figure out what you want to do with what we'll be
10  going forward with.  That's fine.  Thank you.
11          THE COURT:  All right then.  I appreciate
12  everybody's participation.
13          DR. ISAACS:  Thank you for allowing us to do
14  it this way, Judge.  I really appreciate it.
15          THE COURT:  Not at all.  I'm happy to do it.
16          (Conclusion of hearing 12:05 p.m.)
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3
 4        I, Susan M. Bateman, do hereby certify that the
 5   foregoing transcript is a true and accurate
 6   transcription of the within proceedings, to the best of
 7   my knowledge, skill, ability and belief.
 8
 9
     Submitted: 4-11-10            /s/   Susan M. Bateman
10                                 SUSAN M. BATEMAN, LCR, RPR, CRR
```