Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@bakerisaacs.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| DOCTOR J. D. ISAACS ) ) Plaintiff, *pro se*, ) ) -V- ) ) DOCTOR CHRISTINE T. FINN; ) DOCTOR JIM YONG KIM; ) DOCTOR DOUGLAS NOORDSY; ) DARTMOUTH HITCHCOCK MEDICAL CENTER; ) MARY HITCHCOCK MEMORIAL HOSPITAL; ) TRUSTEES OF DARTMOUTH COLLEGE; ) and JOHN DOE, ) ) Defendants. ) ) ) _____) | Case No. CV-12-40-JL  **PLAINTIFF'S REPLY FOR MOTION FOR DECLARATORY RELIEF** |

## I. MOTION FOR DECLARATORY RELIEF- REPLY

Plaintiff reiterates that the Motion for Declaratory Relief seeks clarification on his right to communicate with Dartmouth personnel, as opposed to the individual defendants. Opposing counsel objects to communication with "represented parties," which has created a source of delay and confusion for Plaintiff to pursue administrative actions and violation complaints.

**Criminal violation reports and disability claims are not being filed with appropriate entities, and statute of limitations may be expiring**

After arguing that Plaintiff failed to exhaust administrative remedies before filing this lawsuit, Attorney Kaplan now complains that Plaintiff is filing "the same facts and occurrences" with numerous administrative bodies. It seems, as with all matters related to this case, Dartmouth and its attorneys argue everything both ways, attacking plaintiff and discrediting him, and now apparently going so far as to commit perjury to cover the past. To deny Plaintiff of unemployment funds, in a NHES hearing last week it is alleged that Finn perjured a key date, and Friedman falsely testified that a common resident error was an egregious error justifying Plaintiff's immediate termination without due process. Even their own Dr West seemingly testified against their key witness Harley Friedman, stating copy/paste errors are unfortunately all too common in this era of electronic medical records. Not coincidentally, the alleged "egregious mistake" performed by Plaintiff on his last day at DHMC, a wound bandage issue, is exactly the same issue Plaintiff reported to the ACGME regarding his *first* day at Arizona. (Exhibit A, page 61)

Attorney Kaplan wants this Court to restrict Plaintiff's liberties, so that Plaintiff has delays in pursing administrative and criminal complaints. Then, he could argue that a statute of limitation has expired, which is exactly what he successfully did to throw out an ADA claim (filed nine days too late, according to Kaplan) against Dartmouth Psychiatry in *Connors v. Dartmouth (*USDC VT*).*

Plaintiff went into mental shock (Exhibit A, page 16, diagnosis by DHMC as "adjustment disorder") on January 13th 2012, and ever since, has been trying to file violations reports with Dartmouth administrators. Plaintiff transmitted these violation reports to Dartmouth's attorneys (Exhibit B), but they refuse to acknowledge them. As NH State Police and Lebanon Police informed Plaintiff that there are no mental assault/harassment criminal laws in NH, Plaintiff must file his harassment complaint, if he wants it investigated, with Dartmouth Safety & Security and DHMC Patient Safety.

Plaintiff formally requested disability leave on January 17, after asking his director verbally for it on September 16th 2011. Defendants ignored this request for six months, and only this week, emailed him that he never formally requested "disability." (Exhibit C). Plaintiff filed an administrative complaint with the US Department of Labor as a result of these illegal delays. (Exhibit A page 59, Exhibit D- "employer information missing", Exhibit E)

Despite Attorney Kaplan's hypocritical claim that Plaintiff is "litigious," valid complaints are moving forward with the EEOC (Exhibit A, page 55), US Department of Labor, and US Office of Civil Rights.  In short, Plaintiff was run in circles for six months by Dartmouth psychiatry, and now, six more months by their attorneys. Plaintiff's repetitive complaints are not frivolous nor baseless nor litigious – they are an unfortunate reflection of his justified frustration with Dartmouth's egregious strategic litigation tactics.

**Plaintiff's Perjury Claim is not Baseless**

The key disputed fact in this case is, simply, when & how did Dartmouth learn about Plaintiff's past employment in Arizona and prior litigation in the California USDC. When Plaintiff's directors first specifically mentioned these matters to him on January 13th, Plaintiff went into shock; he realized he had been working under false pretenses for three to six months. Despite his directors conveying professional poise expected of Harvard educated physicians,  Plaintiff  realized that he had actually been regarded with disdain as a litigious 'intruder'  over the course of his time at Dartmouth. "Good enough isn't good enough" was the norm for evaluating all his work (Exhibit F); they were knit-picking his mistakes as he was watched (in deteriorating medical condition) under a microscope by three program directors – Harley Friedman, Ronald Green, and Christine Finn. His two "copy & paste" errors have been described as egregious in NHES hearings – despite contrary testimony by Dartmouth's Dr Donald West. Other interns' egregious mistakes -  accidental overdosing and teratogenic drug administration -  were ignored.

Plaintiff attempted to ascertain this  'key date' of his program directors' discovery of Arizona/California by requesting an Ethics investigation with Defendant Jim Yong Kim. The reason was justified: how and when Dartmouth learned about Arizona/California reveals what crime & under which jurisdictional authority Plaintiff may report a violation. If Dartmouth learned about Arizona in his "New Hire Packet" filed March 2011 (Exhibit A page 33, DHMC HR nurses scrutinizing past Plaintiff's concussion/neuropsychiatric history), then Dartmouth is almost certainly guilty of perjury,

Medicare/Medicaid fraud, harassment, and patient endangerment, among other violations within the NH criminal code. If Dartmouth learned about the matter at a later date in autumn 2011, from a former NIH/Harvard colleague (Exhibit A page 54, email from George Baker , Exhibit A,page 20, Affidavit of Michael Payne ), Dartmouth is guilty of perjury, conspiracy, harassment, and patient endangerment, under respective state & federal jurisdictions.

Not naïve to the fact opposing counsel would accuse Plaintiff of being a litigious *pro se* litigant suing the internationally renowned President of the World Bank, Plaintiff emailed Attorney Peahl offering to drop Defendant Kim from a pending federal lawsuit, if she could assert Kim never spoke directly or indirectly with, or personally/professionally knew, the former California defendants (Exhibit A, page 41). Peahl never responded. It should be noted that Plaintiff noticed Defendant Kim in this lawsuit prior to public knowledge of his World Bank nomination.

Plaintiff witnessed events that convince him with absolute certainty that Dartmouth learned about these matters no later than October 2011. In October, Plaintiff mentioned Arizona to his program director, and she deftly changed the subject. In November, Director Green told Plaintiff his reputation was unrecoverable, and he'd need a new career. Plaintiff emailed Finn immediately afterwards, asking for clarification of his administrative status (Exhibit G). Hence, Plaintiff has filed a Motion for Perjury Investigation, based upon his own conviction that a January 2012 discovery of Arizona/California is an impossibility. If his motion has intimidated witnesses, it is through no fault of Plaintiff, but rather, their own fault if they have perjured themselves.

In short, Plaintiff has tried to solve a mystery of a probable crime for six months now. He has only faced relentless barriers from Dartmouth; statements such as Defendant Kim's attorney joking on the phone "I'm sure you do wish you knew what happened" have not been helpful. There are two alternate theories Plaintiff believes to be possible 1) Dartmouth was angry when they saw Arizona declared on his March 2011 employment application and/or Dartmouth discovered the California litigation during their extensive pre-employment background checks, or 2) a prior Defendant from California, or a third-party with knowledge of the case, wanted to make sure Plaintiff never became a doctor, and somehow influenced/leaked information to Dartmouth. The idea Dartmouth only learned about these matters in January 2012 is not a possible theory in Plaintiff's eyes; that is what this lawsuit,  related administrative complaints, and motions for perjury investigation are about.  Plaintiff was treated as if he was a criminal with no rights [in complying with terms of the prior USDC settlement agreement,  Plaintiff shall testify during trial about the petty allegations he faced in Los

Angeles, that even the LAPD were not remotely interested in; these sub-misdemeanor , acquitted and discharged civil allegations have now ruined his medical career and much of the last 7 years of his life] , and then he wasn't even permitted to take medical leave when he asked for it in September, in efforts to "escape" a bad situation (Exhibit A, page 36) leading to exacerbated neurological illness. In sum, Plaintiff suspects he lived through through six months of punishment  – suffering serious neurological symptoms documented by DHMC physicians –  carried out by program directors who wanted to teach him a lesson while maintaining their training budget and staff allocation from Medicare. Now, these program directors probably have a good motive for perjury; it may be the lesser of crimes committed.

**Plaintiff emailed Defendant Finn/Green Exhibits they were under subpoena request to testify about the documents the next day**

Plaintiff  forwarded his NHES exhibits to the employer witnesses (Friedman, Green, Finn, West). Kaplan mis-characterizes this as harassment; Plaintiff merely followed instructions, sending supporting evidence to witnesses prior to the hearing in which they were under subpoena request to testify. As Plaintiff knew the witnesses would need to testify on the documents twenty hours later, it is unclear how they were harassed by being emailed Plaintiff's NHES evidence (As it turns out, the NHES never  admitted Plaintiff's evidence into the record, after Dartmouth's attorneys objected three times to the fact he had 140 pages of evidence).

Plaintiff suspects many physicians at Dartmouth still don't know about the program director's apparent three-six month knowledge of and motive regarding Arizona/California, and opposing counsel is simply nervous that 'the truth will be exposed.' On the other hand, it's possible Opposing counsel doesn't know the truth either. This is all the more reason Plaintiff's First Amendment rights shall not be restricted; Plaintiff had good collegiate relations with many physicians at Dartmouth, and should be allowed to speak to personnel at Dartmouth in efforts to resolve matters including disability leave requests and discovery of suspected criminal activity.

In conclusion, it should be noted that opposing counsel's objection which derides Plaintiff as "litigious" and "harassing"  represents more than a defense to the motion underway; it seems they've come forward and admitted what they probably believed about Plaintiff since March 2011.

Respectfully submitted, this 30th  day of June, 2012.

/s/   J. D. Isaacs
_____

J. D. ISAACS

Plaintiff                                                                 2

## CERTIFICATE OF SERVICE

Plaintiff served this Motion for Declaratory Relief Reply on all Defendants via ECF.

/s/   J. D. Isaacs_____

DATED: June 30, 2012.

J. D. ISAACS

Plaintiff, *pro se*