IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| DR J.D. ISAACS | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:12-CV-40-JL |
| | ) | |
| DARTMOUTH HITCHCOCK MEDICAL CENTER; | ) | |
| MARY HITCHCOCK MEMORIAL HOSPITAL; | ) | |
| DARTMOUTH MEDICAL SCHOOL | ) | |
| DOCTOR CHRISTINE T. FINN | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. INTRODUCTION

This is an action for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* wrongful termination, breach of contract, violations of the Rehabilitation Act of 1973, 29 USC §794 *et. seq.*, violations of NH RSA 354:A, fraud, and intentional and/or negligent infliction of emotional distress. Plaintiff seeks costs and attorney's fees; actual, statutory, and/or punitive damages for the resulting harm to his professional reputation, career, and physical and emotional well-being, in addition to back-pay, front-pay, and loss of lifetime earning capacity.

## II. JURISDICTION AND VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

2.  Venue is proper in the District of New Hampshire according to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this complaint occurred in New Hampshire. For those events that occurred in Vermont, California, or Arizona, this district is the proper venue pursuant to 28 U.S.C. § 1391(e)(2)

## III. THE PARTIES

3.  Plaintiff Doctor J.D. Isaacs is a natural person and resident of the state of Pennsylvania.

4.  Defendant Dartmouth Hitchcock Medical Center ("DHMC") is a Non-profit Corporation with a principal place of business located at One Medical Center Drive, Lebanon NH.

5.  Defendant Mary Hitchcock Memorial Hospital (MHMH") is a Non-profit Corporation with a principal place of business located at One Medical Center Drive, Lebanon NH.

6.  Defendant Dartmouth Medical School ("DMS") is a Non-profit Corporation with a principal place of business located at 1 Rope Ferry Road, Hanover, NH 03755.

7.  Defendant Christen T. Finn is a natural person employed by Dartmouth College, Hanover, NH.

## IV. FACTS APPLICABLE TO ALL CAUSES OF ACTION

8.  Plaintiff began postgraduate medical studies in June of 2011 at DHMC. His curriculum began with internal medicine, and later focused on psychiatry.

9.  Before entering his position at DHMC Plaintiff suffered from several neurological conditions.

10. Plaintiff has had extensive neuropsychological evaluation.

11. Plaintiff has Asperger's Syndrome.

2

12. Plaintiff's syndrome is complicated by a history of head trauma while an undergraduate at Dartmouth College.

13. Before entering his position at DHMC Plaintiff suffered from a well-documented neuropsychiatric disability, which stemmed from a 1997 injury. Plaintiff also suffered from minor sleep issues.

14. These conditions did not prevent Plaintiff from handling the pressures of college, business school, or medical school and medical residency.

15. During his time at DHMC Plaintiff suffered through undue stress which was manufactured by the Defendants, and directed toward the plaintiff for a discriminatory purpose.

16. The undue stress was intended to secure the Plaintiff's resignation from his position with DHMC by way of constructive termination.

17. The extreme nature of the actions of the Defendants as described herein caused Plaintiff's medical conditions to be exacerbated.

18. The extreme conduct of the Defendants as described herein was the direct cause of the exacerbation of the Plaintiff's medical conditions.

19. The current state of the Plaintiff's condition is such that he is completely disabled.

20. As a result of the actions of the Defendants, Plaintiff has suffered from the exacerbation of his sleep disorder and disabling neurological conditions.

21. Since his termination it has become difficult for Plaintiff to concentrate or sleep for an adequate amount of time to function normally.

22. Since his termination Plaintiff has been plagued by chronic nightmares.

23. Plaintiff had no history of chronic nightmares prior to Dartmouth psychiatry.

3

**COUNT I**
**AMERICANS WITH DISABILITIES ACT VIOLATIONS**
**DHMC, MHMH AND DMS**

24. Plaintiff realleges and incorporates by reference the allegations above.

25. Plaintiff has a well-documented neuropsychiatric disability stemming from a 1997 injury.

26. Plaintiff's disability was exacerbated by the relentless and unwarranted criticism directed at him during his employment at DHMC.

27. EEOC rules require Americans with Disabilities Act claims be brought within 180 (or 300) days of when the claim accrues. 86 Stat. 105. 42 U.S.C. § 12101 *et. seq.*

28. On or about May 31 Plaintiff filed a Charge of Discrimination against DHMC and Dartmouth Psychiatry with the Boston, MA office of the EEOC and was assigned Charge No. 846-2012-24204.

29. This charge covered numerous discrimination claims Plaintiff has against DHMC and DMS.

30. The EEOC processed the plaintiff's charges accordingly.

31. Plaintiff's Americans with Disability Act claims accrued on or about March 19, 2012, the date his employment with DHMC was terminated.

32. Plaintiff's filing with the EEOC was therefore timely under either a 180- or 300 day time-frame.

33. On or about August 1, 2012 Plaintiff received a right to sue letter dated July 27, 2012.

34. Plaintiff filed a complaint, Civil Number 1:12-cv-00413-SM, alleging unlawful discrimination in violation of the ADA on October 26, 2012, within 90 days of receipt of the right to sue letter.  That action was subsequently consolidated with this case, number 1:12-cv-40-JL.

4

35. Plaintiff's ADA and related discrimination claims are therefore timely brought, <u>within</u> 90 days of receiving the Right to Sue Letter, and ripe for adjudication.

36. Under the Americans with Disabilities Act, Disability is defined as: "A physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

37. The statute further requires that there be "a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1)(B).

38. In order to be regarded as having such impairment the individual must establish "that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

39. Plaintiff suffers from mental impairments that substantially limit one or more major life activities.

40. There is a long medical record of the plaintiff suffering from these impairments.

41.  The plaintiff was regarded as having such impairments.

42. The act states that the term "discriminate against a qualified individual on the basis of disability" includes...

    a. "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

5

b. "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;" 42 U.S.C. § 12112(b)(5)(B).

43. Defendant DHMC is considered an employer under the act.

44. The Defendants failed to make reasonable accommodations for the Plaintiff's disabilities.

45. The Defendants denied Plaintiff employment opportunities.

46. Under the act, reasonable accommodation may include: "job restructuring, part-time or modified work schedules…" 42 U.S.C. § 12111(9)(A).

47. Adopting reasonable accommodations for the Plaintiff's disabilities would not impose undue hardship on DHMC.

48. The Plaintiff requested reasonable accommodations.

49. During his first week at DHMC the Plaintiff was required to work eighteen-hour shifts and almost a ninety-hour workweek.

50. Plaintiff found himself subject to intense scrutiny from his Program Director, Defendant Dr. Christen T. Finn , as well as several of her colleagues.

51. Defendant Finn as a Professor at DMS is an agent of DMS, and DHMC at all relevant times.

52. The Defendant, Dr. Christen T. Finn would meet with the Plaintiff on a bi-weekly basis to critique his skills.

53. Plaintiff was the only resident subjected to these hour-long critical sessions.

54. Such sessions were a discriminatory and/or retaliatory action taken by the Defendants against the Plaintiff.

6

55. In early September Plaintiff requested medical leave or an accommodation for his disability.

56. The undue stress caused by Defendants had exacerbated Plaintiff's neuropsychiatric disability.

57. Plaintiff's request for medical leave was denied by Program Director Defendant Finn.

58. Further, after being informed of Plaintiff's condition Defendant Finn refused any accommodation for the Plaintiff's disability. Plaintiff's schedule remained unchanged.

59. In October of 2011 Plaintiff was diagnosed by the Dartmouth College Department of Psychiatry with moderate-severe sleep disorder.

60. Plaintiff's disabilities got consistently worse as his employment continued without reasonable accommodation for his disabilities.

61. During an overnight Thanksgiving shift, Plaintiff's conditions worsened to the extent that he feared he was a danger to his patients and he requested immediate medical leave to a supervising fellow.

62. That request for medical leave was denied.

63. Several days later the Plaintiff requested medical leave directly from his Program Director Defendant Finn.

64. That request for leave, and for other reasonable accommodations was denied.

65. Plaintiff, over the next few weeks, requested accommodations from his Program Director Defendant Finn.

66. These requests were all denied.

67. The Defendant Finn told Plaintiff after one such request, that "accommodations are difficult to arrange for an intern."

68. On one occasion Defendant Finn, in order to down-play the seriousness of the Plaintiff's request, claimed "you're just being neurotic."

69. On January 12, 2012, after numerous requests for accommodations, direct pressure from his superiors caused Plaintiff to develop a wheezing and an acute-on-chronic stress reaction.

70. Plaintiff was hospitalized at the DHMC Emergency Department as a result of this reaction.

71. The disregard for Plaintiff's requests for accommodation was in violation of the Americans With Disabilities Act.

72. As a result of these violations Plaintiff's conditions were made exponentially worse, and he became completely disabled.

73. Because of his disabilities, Defendants also refused Plaintiff numerous employment opportunities which should have been available to him.

74. In September of 2011 Plaintiff met with a leading researcher at Dartmouth College Psychiatry, Dr. Paul Holtzheimer  to participate in research. Dr. Holtzheimer was initially receptive to Plaintiff's request, but later told the Plaintiff that he would have to request permission from Defendant Finn.

75. Defendant Finn denied permission for the Plaintiff to participate.

76. Later on, Plaintiff asked to participate in the Preventive Medicine program at Dartmouth, a program with a 100 percent acceptance rate.

77. Defendant Finn denied Plaintiff's request with the claim that he "wasn't competitive enough."

78. Defendants restricted the Plaintiff from participation in these programs based on his disabilities in violation of the Americans with Disabilities Act.

**COUNT II**
**WRONGFUL TERMINATION**
**DHMC ONLY**

79. Plaintiff realleges and incorporates by reference the allegations above.

80. To support a claim of wrongful termination under New Hampshire State law, a plaintiff must establish two elements: 1. that the employer terminated the employment out of bad faith, malice, or retaliation; and 2. that the employer terminated the employment because the employee performed acts which public policy would encourage or because he refused to perform acts which public policy would condemn. Short v. School Admin. Unit 16, 136 NH 76 (NH 1992). *quoting*. Cloutier v. A. & P. Tea Co., Inc., 121 N.H. 915, 921-22, 436 A.2d 1140, 1143-44 (1981).

81. On January 15, 2012 and February 6, 2012 Plaintiff notified the Dartmouth College President, Dr. Jim Yong Kim, of alleged violations of Dartmouth's Business ethics guidelines.

82. The Plaintiff's filed an official ethics complaint with Dr. Jim Young Kim on January 15, 2012.

83. Said ethics complaint included allegations of the following:

    a.  Nurses astonishment at Professor Noordsy's apparent ridiculing laughing directly at a patient…

    b.  A 'One Flew Over the Cuckoo's Nest' vintage movie poster in the rubber restraint room.

    c.  Resident Physician David Bae's reference to Asperger Disease as "ass burgers."

d.  In October, Christine Finn 'counseled' Plaintiff on how to treat one of her patients who suffered from Narcissistic Personality Disorder. She stated that the Plaintiff must feed his ego, even lie to him; about her own lies to him in her clinic, 'He's so unlikable… it made me sick to my stomach.'

84. On January 17, 2012, Plaintiff filed a HIPAA Complaint with the Office of Civil Rights in Boston.

85. On March 19, 2012 only three days after DHMC was notified of the pending HIPAA investigation by the Office of Civil Rights, the Plaintiff was terminated.

86. The Plaintiff was terminated with no notice or opportunity to defend himself against the allegations which lead to his termination.

87. The filing of such complaints is the type of activity that public policy would encourage as the filing of such complaints aids in the enforcement of laws intended to promote ethics in the work place and protect the confidentiality of patient records.

88. Plaintiff was terminated because of his ethics and HIPAA complaints.

## COUNT III
### NH RSA 354-A VIOLATIONS
### DHMC, MHMH AND DMS

89. Plaintiff realleges and incorporates by reference the allegations above.

90. NH RSA 354-A defines disability as:

a.  "'Disability' means, with respect to a person:  (a) A physical or mental impairment which substantially limits one or more of such person's major life activities; (b) A record of having such an impairment; or (c) Being regarded as having such an impairment" NH-RSA-A:2 (IV)

10

91. Plaintiff suffers from one or more disability as defined by the act.

92. NH RSA 354 A makes it an unlawful discriminatory practice:

    a.  "For any employer not to make reasonable accommodations for the known physical or mental limitations of a qualified individual with a disability who is an applicant or employee, unless such employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." NH RSA 354 A-7(VII)(a).

    b.  For any employer to deny employment opportunities, compensation, terms, conditions, or privileges of employment to a job applicant or employee who is a qualified individual with a disability, if such denial is based on the need of such employer to make reasonable accommodation to the physical or mental impairments of the applicant or employee." NH RSA 354 A-7(VII)(b).

    c.  "for any person engaged in any activity to which this chapter applies to discharge, expel, or otherwise retaliate or discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under this chapter. NH RSA 354 A:19.

93. DHMC falls within the definition of employer as defined by the act.

94. DHMC on several occasions failed to make reasonable accommodations for the Plaintiffs know disability.

95. Under the act reasonable accommodation includes: "Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment

or devices, appropriate adjustment or modifications of examinations, training materials or polices, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

96. Upon starting work at DHMC Plaintiff was the subject of intense, unwarranted criticism.

97. Plaintiff's performance in his new position did not warrant such scrutiny. He scored either "superior" or "satisfactory" performance in 80% of his work during the early months he was employed at DHMC.

98. As a result of the constant criticism he received from his employer Plaintiff's conditions were exasperated.

99. It was because of the exasperation of his condition that forced Plaintiff to ask for medical leave from Defendant Finn in early September 2011.

100.    Defendant Finn denied Plaintiff's request for medical leave.

101.    Plaintiff's employment continued with no change.

102.    In October 2011 Plaintiff was diagnosed with moderate- severe sleep disorder.

103.    Around Thanksgiving Plaintiff again requested medical leave from Defendant Finn.

104.    This leave was denied.

105.    Defendant Finn informed the Plaintiff that "accommodations are difficult to arrange for an intern."

106.    On another occasion Defendant Finn told the Plaintiff he was being neurotic when he requested leave.

107.   With full knowledge of the Plaintiff's disabilities and with the understanding that he was continually asking for accommodations for those disabilities, the Defendant continually denied the Plaintiff's requests for accommodations in violation of the act.

108.   Plaintiff was also denied employment opportunities, compensation, terms, conditions, or privileges of employment because of his disability.

109.   On numerous occasions Defendants restricted the Plaintiff's access to employment opportunities because of his disability.

110.   Early in his employment the Plaintiff met with a leading researcher at DMS with the goal of participating in exciding research. The researcher was initially receptive, however a few days later he informed the Plaintiff that he had to obtain Defendant Finn's permission.

111.   Defendant Finn, regardless of Plaintiffs exemplary employment record denied permission.

112.   Later, Plaintiff asked to participate in the Preventive Medicine program at DMS.

113.   The Preventive Medicine program has a 100 percent acceptance rate, and is widely known to be open to all DHMC residents who express interest.

114.   Defendant Finn would not allow the Plaintiff to participate in the program telling him that he "wasn't competitive enough."

115.   The Plaintiff has credentials which meet or exceed the criteria required to participate in the Preventative Medicine program.

116.   The Defendants violated RSA-358:A by failing to offer reasonable accommodations for the Plaintiff's disabilities, and denying him opportunities because of those disabilities, and unlawfully retaliating against the Plaintiff.

**COUNT IV**
**BREACH OF CONTRACT**
**DHMC ONLY**

117.    Plaintiff realleges and incorporates by reference the allegations above.

118.    Plaintiff signed and accepted an Agreement of Appointment an eight additional forms,

applications, an agreements sent to him by DHMC human resources.

119.    Plaintiff signed a HIPAA patient rights declaration as a DHMC ED patient on January

13, 2012.

120.    Within the new hire packet Plaintiff fully disclosed his voluntary resignation from a six-

week internship in Arizona, as well as the rest of his employment history.

121.    By beginning his employment under these contracts on or around June 26th, 2011

Plaintiff was fully reliant on Defendant's promises therein. Including the Administrative

Leave and termination provisions contained therein.

122.    On January 13th 2012, Defendant Finn and the rest of Plaintiff's program directors

verbally informed Plaintiff that he was being placed on immediate Administrative Leave.

123.    Upon information and good faith belief, the DHMC handbook, regulations, and

documents provided to the Plaintiff as a new hire, require a more through written record prior

denying requests for accommodation, and prior to termination.

124.    DHMC breached their own rules are regulations in denying Plaintiffs requests for

accommodation and ultimately in his termination.

125.    Defendants therefore breached the contract that they had with Plaintiff, all to his

detriment and damage.

## COUNT V
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
## DHMC ONLY

126.   Plaintiff realleges and incorporates by reference the allegations above.

127.   "[A]n employer violates an implied term of a contract for employment at-will by firing an employee out of malice or bad faith in retaliation for action taken or refused by the employee in consonance with public policy. Although good faith in this context has not been rigorously defined, bad faith has been spoken of as equivalent to malice, and treated virtually as a subject of equitable estoppel in labor relations." Centronics Corp. v. Genicom Corp., 132 NH 133 (NH 1989). *citing.* Cloutier v. A. & P. Tea Co., Inc., 121 NH 915 (1981).

128.   On January 15th and February 6th the Plaintiff notified Supervising Fellow Dr. Jim Yong Kim of numerous violations of Dartmouth's Business Ethics Guidelines.

129.   The ethics complaint contained numerous and varied ethics concerns.

130.   Plaintiff filed a HIPAA Complaint with the Office of Civil Rights in Boston on January 17th.

131.   On March 19th, only three days after DHMC was notified of the pending HIPAA investigation by the Office of Civil Rights, the plaintiff was terminated.

132.   The Plaintiff was terminated in retaliation for his ethics and HIPAA complaints.

133.   The filing of an ethics complaint is an action taken by the Plaintiff that  is in consonance with public policy.

134.   The filing of a HIPAA compliant is an action taken by the Plaintiff that is in consonance with public policy.

135.   Plaintiff's termination was in bad faith in retaliation for the filing of these complaints.

136.    By terminating Plaintiff's employment in bad faith Defendants have breached the

covenant of good faith and fair dealing which exists as part of their employment contract

with the Plaintiff.

**COUNT VI**
**NEGLIGENT MISREPRESENTATION**
**DHMC, DMS, MHMH, AND DOCTOR FINN**

137.    Plaintiff realleges and incorporates by reference the allegations above.

138.    A cause of action is stated by a "negligent misrepresentation of a material fact by the

defendant and justifiable reliance by the plaintiff. Snierson v. Scruton, 145 NH 73, 78 (2000).

139.    "It is the duty of one who volunteers information to another not having equal knowledge,

with the intention that he [or she] will act upon it, to exercise reasonable care to verify the

truth of his [or her] statements before making them." Id. quoting Patch v. Arsenault, 139 NH

313, 319 (1995).

140.    Defendant Finn, an agent of DHMC, and DMS made several representations to the

Plaintiff which were misrepresentations of material fact.

141.    Defendant Finn told the Plaintiff that "accommodations are difficult to arrange for an

intern."

142.    This representation was untruthful because DHMC is required by law to make reasonable

accommodations for all employees with disabilities under the ADA, NH RSA 358:A  and

Section 504 of the Rehabilitation Act of 1973. See. 42 U.S.C. § 12101 et. seq., 29 USC §794

et. seq. and, NH RSA 354:A.

143.    These laws, rules and regulations are incorporated in to the DHMC employee handbook.

144.    These laws, rules and regulations are incorporated in to the DMS employee handbook.

145.    Plaintiff justifiably relied on the representations of the Defendant Finn.

146.    Plaintiff was justified in his reliance because Defendant Finn was his direct superior, and

therefore Plaintiff should know DMS and DHMC's policy on accommodations for

disabilities.

147.    Plaintiff's reliance led to the exacerbation of his conditions, and eventually his complete

disability, and wrongful termination.

### COUNT VII
### SECTION 504 OF THE REHABILITATION ACT OF 1973
### DHMC, MHMH, AND DMS

148.    Plaintiff realleges and incorporates by reference the allegations above.

149.    Section 504 of the Rehabilitation Act of 1973 applies to "an entire corporation,

partnership, or other private organization, or an entire sole proprietorship…. which is

principally engaged in the business of providing education, health care…" 29 U.S.C. §794.

150.    Defendants DHMC and DMS area corporations which are principally engaged in the

business of providing education, and health care.

151.    "The standards used to determine whether this section has been violated in a complaint

alleging employment discrimination under this section shall be the standards applied under

title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the

provisions of sections 501 through 504, and 510, [1] of the Americans with Disabilities Act

of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment." 29

U.S.C. § 794.

152.    Title I of the Americans With Disabilities Act prevents a covered entity from

discriminating against a qualified individual on the basis of a disability. 42 U.S.C. § 12112.

153. Under the Americans with Disabilities Act sections incorporated in Section 504 of the Rehabilitation Act of 1973 the following practices are violations:

> "(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or
>
> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(B)(5).

154. Plaintiff has a well-documented neuropsychiatric disability stemming from a 1997 head injury.

155. Plaintiff while employed by the Defendants was diagnosed with moderate-severe sleep disorder.

156. Defendants denied Plaintiff's several requests for reasonable accommodation for his disabilities.

157. The conduct of the Defendants caused great financial loss to the Plaintiff including loss of career opportunity, physical illness, and emotional distress.

158. Further, in violation of the Act Defendants continually denied Plaintiff access to programs entirely because of his disability.

159.   Early on in his employment, Plaintiff approached a leading researcher at DHMC with the

goal of working with him on an exciting research assignment.  The researcher was initially

receptive to Plaintiff working with him later told the Plaintiff that he would have to "ask the

Program Director" for permission.

160.   Plaintiff asked permission of Defendant Finn, Plaintiff was denied permission.

161.   Such denial was a retaliatory and/or discriminatory act.

162.   Plaintiff then asked to transfer from the Psychiatry program to the Preventative Medicine

program at DMS. A program that has a *100% acceptance rate*, and is widely known to be

open to all DHMC residents that express interest.

163.   Plaintiff's Program Administrators would not give their recommendation for the transfer

with the excuse that Plaintiff "wasn't competitive" enough.

164.   Such denial was a retaliatory and/or discriminatory act.

165.   Plaintiff performed his work in a manner that was considered "superior" or "satisfactory"

by Professors of the Department of Psychiatry, yet he was consistently denied opportunities

for advancement.

166.   Plaintiff was also denied opportunities to participate in research at DMS,

167.   Defendants knew that such denial was especially troubling to Plaintiff as this research

was very important to him.

168.   With Plaintiff's academic and employment record these opportunities should have been

open to him.

169.   Such denial was a retaliatory and/or discriminatory act.

170.    As a result of these denials, Defendants, discriminated against the plaintiff in violation of

Section 504 of the Rehabilitation Act of 1973.

171.    Section 504 of the Rehabilitation Act of 1973 allows for the court in its discretion to

allow the prevailing party reasonable attorney's fees. 29 U.S.C. §794a.

## COUNT VIII
### FRAUD
### DHMC, DMS, MHMH, AND DOCTOR FINN

172.    Plaintiff realleges and incorporates by reference the allegations above.

173.    To establish fraud, a plaintiff must prove that the defendant made a representation with

knowledge of its falsity or with conscious indifference to its truth with the intention to cause

another to rely upon it. In addition, a plaintiff must demonstrate justifiable reliance. A

plaintiff cannot allege fraud in general terms, but must specifically allege the essential details

of the fraud and the facts of the defendants' fraudulent conduct. Snierson v. Scruton, 145

N.H. 73 (NH 2000) *citing*. Patch v. Arsenault, 139 N.H. 313, 319, 653 A.2d 1079, 1083-84

(1995). Gray v. First NH Banks, 138 N.H. 279, 283, 640 A.2d 276, 279 (1994). Proctor v.

Bank of N.H., 123 N.H. 395, 399, 464 A.2d 263, 265 (1983).

174.    Defendants throughout Plaintiff's employment, knowingly, or with conscious

indifference, misrepresented Plaintiff's performance as a resident physician. Such

representations had the effect of causing Plaintiff's reputation as an employee to be

irreparably harmed.

175.    Defendants intended that Plaintiff rely on these false representations.

176.    As discussed at length herein, Plaintiff was justified in reasonably relying on the word of

his supervisors, superiors, teachers, and mentors.

20

177.    The end result of these representations is Plaintiff's mental deterioration, hospitalization and, termination from employment, loss of income, and loss of lifetime earning capacity.

178.    The test scores and performance of the Plaintiff show an employee who was at the top of his field, these scores directly conflict with the constant complaints made to him by Defendant Finn and other agents of DHMC, and DMS.

179.    The misrepresentations of members of the staff of DHMC and DMS, specifically, Defendant Finn were intended to secure the Plaintiff's resignation.

180.    On January 13, 2012 at approximately 9:15 AM, Plaintiff was fraudulently threatened while in a meeting with Defendant Finn and another senior professor.

181.    The two threatened the Plaintiff to resign in order to avoid further investigation.

182.    No investigation was ever initiated.

183.    Plaintiff was justified in relying on the Defendants' misrepresentations. As an employee he had every right and expectation to trust that his Program Directors' statements and evaluations were accurate, true, and fair.

184.    As a result of the Defendant's misrepresentations Plaintiff worked for months with the stress of believing his job performance was less than satisfactory.

185.    This stress caused Plaintiff to go in to an acute-on-chronic stress condition. A condition that required immediate hospitalization.

186.    On March 19, 2012 Plaintiff received a letter terminating his employment. The letter falsely alleged that he had been on formal Administrative Leave.

187.    The Defendant's perpetuated the Fraud that the Plaintiff's performance was not satisfactory in order to induce the stress reaction that followed. The effect of the constant pressures on the defendant where his total disability and related damages.

188.    Plaintiff suffered financial, professional, and emotional loss as a result of these misrepresentations.


**COUNT IX**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**DHMC, DMS, MHMH, AND DOCTOR FINN**

189.    Plaintiff realleges and incorporates by reference the allegations above.

190.    In a cause of action for intentional infliction of emotional distress in New Hampshire: "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Tessier v. Rockefeller, 33 A.3d 1118, 1131 (2011) *quoting*. Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009).

191.    This case is one of the few cases where actions of a Defendant can be found to rise to the high bar of "atrocious, and utterly intolerable in a civilized community." Id.

192.    Here, the Defendants' agents were not only Plaintiff's direct supervisors, they were also trained psychologists.

193.    Defendants' had notice and knowledge of Plaintiff's neuropsychiatric disability. Further, because it is their field of study Defendant's had actual knowledge of what that condition consisted of, specifically what would cause that condition to intensify.

194.    Using that knowledge Defendants' intentionally put the Plaintiff through a series of work

place tests to determine the amount of stress the Defendant could take with his condition.

195.    These tests included but are not limited to:

    a.    Subjecting the Plaintiff to 90 hour work weeks;

    b.    Forcing the Plaintiff to work when a sleep study the night before showed he got

        one hour of sleep;

    c.    Consistently denying Plaintiff accommodations for his disability, and;

    d.    Continuing criticism of the Plaintiff's work when he was at his most susceptible

        to it;

196.    These tests were performed with the intention of forcing Plaintiff to resign his position.

197.    The actions of the Defendants rise to the level of being intolerable in a civilized

community.

198.    As a direct result of the Defendants' actions Plaintiff has suffered severe stress related

injuries. These injuries include an acute-on-chronic stress reaction which caused the Plaintiff

to seek immediate treatment.

199.    The stress reaction has continued to manifest itself in the Plaintiff's now full disability.

**COUNT X**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**DHMC, DMS, MHMH, AND DOCTOR FINN**

200.    Plaintiff realleges and incorporates by reference the allegations above.

201.    To recover for emotional distress under a traditional negligence theory, we have

consistently required plaintiffs to demonstrate physical symptoms of their distress regardless

of physical impact. O'Donnell v. HCA Health Services of NH, 152 NH 608, 611  (NH 2005)

*citing*. Palmer v. Nan King Restaurant, 147 N.H. 681, 683-84 (2002).

202.    Defendant's owed statutory duties to Plaintiff to allow for reasonable accommodations

for his disabilities, and to not discriminate against him for his disabilities. See. 42 U.S.C. §

21121(5), 29 U.S.C. 701.

203.    Defendants owed common law duties to the plaintiff as a student or as an employee.

204.    Defendants owed the Plaintiff a general duty of reasonable care that is owed to all people

in society.

205.    Defendants breached those duties through the conduct outlined in detail above, including

but not limited to:

      a.   Restricting Plaintiff's career advancement;

      b.   Harassing Plaintiff;

      c.   Lying to or Misleading Plaintiff;

      d.   Subjecting Plaintiff to constant scrutiny that was above and beyond the scrutiny

         they gave the rest of their employees.

      e.   Refusing to grant Plaintiff reasonable accommodations for his disabilities.

206.    Because of this negligence Plaintiff suffered from emotional distress with which

manifested itself in physical symptoms.

207.    Plaintiff, because of the Defendants' negligence, has suffered severe stress related

injuries. These injuries include an acute-on-chronic stress reaction that caused the Plaintiff to

seek immediate treatment.

208.   The stress reaction has continued to manifest itself in the Plaintiff's now complete

disability.

WHEREFORE, the Plaintiff prays for an Order of this Court as follows:

a.   Declaratory Judgment & Relief;

b.   Compensatory damages, including, general and special damages to be determined

by the finder of fact;

c.   Exemplary and punitive damages;

d.   Pre- and Post-judgment interest;

e.   Costs and Attorney's fees as allowed by 42 U.S.C. §12205 or other rule, statute,

or contract.

f.   All other compensatory, equitable and declaratory relief as this Court deems just.

Plaintiff Requests Jury Trial on all Counts


Respectfully Submitted,
DR. J.D. ISAACS,
Through his Attorney

DATED: February, 6, 2013                    /s/ Keith A. Mathews
Keith A. Mathews, Esq.
NH Bar No. 20997
Skinner | Rivard Law Offices
530 Chestnut Street, 3rd Floor
Manchester, NH 03101
(603) 622-8100
Keith.Mathews@skinnerrivard.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as of the date of filing.


DATED: February 6, 2013                    By:     /s/ Keith A. Mathews

                                                    Keith A. Mathews, Esq.