**Jeanne Batchelder**

| | |
|---|---|
| **From:** | jeffreydi@gmail.com on behalf of Jeffrey D. Isaacs <jeffrey.isaacs.wg03 @wharton.upenn.edu> |
| **Sent:** | Thursday, July 25, 2013 3:07 AM |
| **To:** | Edward Kaplan; Kathleen Peahl |
| **Subject:** | 7-25-3: New Request for Defendant MHMH/DHMC For Deposition |

Attorney Kaplan:

Please take notice that I wish to depose your client DHMC/MHMH within
30 days pursuant to Federal Rules of Civil Procedure Rule 30, Section b-6. This is a FRCP 30b6 Deposition and you are required to identify a representative to present for deposition with regards to the enumerated subjects below. Please respond for scheduinge this deposition within a reasonable amount of time (no later than 10 days from now) to allow for deposition within 30 days.

The subjects of deposition:
1) DHMC/MHMH's knowledge of Isaacs' (including when and how knowledge was gained, and evidentiary proof of the purported enrollment) purported enrollment at USC.
2) DHMC/MHMH knowledge (including when and how knowledge was gained) of Isaacs Arizona internship, including DHMC's knowledge as of May 12
2011 of Isaacs' NH Board Application verified by Finn/Bertrand.
3) DHMC/MHMH knowledge of Plaintiff's EPIC audit trail, including purported work flow use during Isaacs' ED admission, and known HIPAA violations
4) DHMC rules and regulation on Fair Hearing procedures and medical leave
5) General knowledge and beliefs amongst the resident physician and attending staff, prior to January 17th 2012, concerning Isaacs purported USC enrollment and AZ surgery residency
6) Knowledge of Isaacs' sleep patterns amongst colleagues
7) DHMC backup procedures for Outlook
8) MHMH review procedures for "New Hire Packets"
9) Christine Finn's verification of Isaacs NH Board Application, her constructive knowledge of Isaacs' AZ internship, and specifically, DHMC/MHMH policy on terminating a resident for the mistake of supervisor.
10) Christine FInn/Bertrands termination letter
11) Jim Yong Kim and Alan Green's professional knowledge of Dr Baughman (NINDS director)
12) Part-time scheduling feasibility and DHMC policy on allowing part-time schedules for resident physicians
13) Actigraph watches, and the specific loss of Isaacs' actigraph watch
14) Legal holds on emails, voicemails, and other ESI at DHMC
15) The loss of Isaacs' Outlook account
16) Indications for rectal exams in elderly patients with terminal cancer
17) Orders issued to Isaacs to perform 2 rectal exams during his first two days of work at DHMC
18) Kaplan's authority to email Isaacs requesting interception of all communications to his client, and likewise, Kaplan's authority to accept summonses after intercepting communications from Isaacs.
19) AII searchable ESI at DHMC containing any of the keywords "Isaacs" or "Keck" or "Baughman"
20) LPMR program eligibility and acceptance rates
21) The contractual agreements between MHMH/DHMC and Dartmouth Psychiatry, to allow for sufficient defense of what appears to be an invalid relationship or a relationship exploited to avoid litigation.
22) Isaacs Quality assurance file
23) Claims of failure to auscultate a patient properly made to Jennifer Connors
24) Knowledge of all terminations that occurred prior to a fair hearing, in the past 15 years at DHMC
25) KNowledge of all terminations that occurred after a fair hearing, in the past 15 years.
26) Relationships with Dr Henderson and/or Baughman (USC Defendants) held with any
27) Any anonymous "tips" conveyed to DHMC/Dartmouth Psychiatry concerning Isaacs

28) Any DHMC/MHMH staff with personal knowledge of Isaacs' time in California in 2005 (ie Dr Graves in orthopedic surgery) or Isaacs time in Arizona.

29) Knowledge of all communications between Finn and Friedman

30) Dr Guez and Dr Twork's knowledge of Isaacs' work, life, and educational background prior to his commencement on M2

31) DHMC/MHMH knowledge (from any ESI, work product, or disseminated beliefs) concerning any facts or beliefs pertaining to Isaacs residence in California, Arizona, Pennsylvania, Singapore, Australia, Caribbean, France, Russia, Moldova, Portugal, Maldives, Ukraine, England, Switzerland, Israel, South Africa or Florida.

32) Knowledge of Isaacs' PSG/CPAP titration and any abnormalities discovered

33) Knowledge on the termination of Peggy Meunier's employment, with regards to her role in handling Isaacs' new hire documentation.

34) Knowledge of any surveillance procedures or devices used on Isaacs during his residency.

35) Knowledge of Alan Green's 20 minute abnormal eye contact with Isaacs his first day of orientation, including witnesses to the event (all Psychiatry orientation meeting)

36) Knowledge of each and every criticism or concern emailed to Isaacs via the Outlook system

37) Knowledge of each day off Isaacs had, and whether or not a criticism was emailed to Isaacs on that day.

38) Knowledge of the identify of all American University of the Caribbean graduates who worked for DHMC in the past 10 years, and knowledge of the current AUC grad working for Harley Friedman in Internal Medicine. Specifically, knowledge of all facts conveyed to or from this individual concerning Isaacs.

39) Knowledge of praise emailed to Isaacs' DHMC Outlook account from a Dartmouth Professor who Isaacs' had cared for her son

40) Knowledge of Bruce Sacerdote's communication with Christine Finn regarding Isaacs

41) Knowledge of Mr George Baker's EPIC and legacy audit trail.

Please let me know if you have any questions. As you know, there are a large number of discrepancies under dispute from what I allege is now a 24-month retaliation/cover-up, and I reserve the right to address additional matters during the deposition. If you object to any specific enumerated item above, please identify it and your basis for objection, but proceed with scheduling the remaining items within 10 days.


Regards,
Jeffrey Isaacs

## Jeanne Batchelder

| | |
|---|---|
| **From:** | jeffreydi@gmail.com on behalf of Jeffrey D. Isaacs <jeffrey.isaacs.wg03 @wharton.upenn.edu> |
| **Sent:** | Thursday, July 25, 2013 11:43 PM |
| **To:** | Kathleen Peahl |
| **Cc:** | Edward Kaplan; Christopher J. Pyles |
| **Subject:** | Letter 7-26-1: Notice of Deposition on Trustees of Dartmouth College |

Attorney Peahl:

Please take notice that I wish to depose your client Trustees of Dartmouth College (aka Dartmouth Psychiatry aka Dartmouth College) hereafter referred to as "Dartmouth" within 30 days pursuant to Federal Rules of Civil Procedure Rule 30, Section b-6. This is a FRCP
30b6 Deposition and you are required to identify a knowledgable
representative(s) to present for deposition with regards to the enumerated subjects below. Please respond for scheduling this deposition within a reasonable amount of time (no later than 10 days from now) to allow for deposition within 30 days. This is deposition
#7 of 8 permitted under the Rule 26 conference (see emails dated 7-25 for sequencing).

The subjects of deposition:

1) Dartmouth's knowledge of Isaacs' (including when and how knowledge was gained, and evidentiary proof of the purported enrollment) purported enrollment at USC.
2) Dartmouth's knowledge (including when and how knowledge was gained) of Isaacs' Arizona internship, including DHMC's knowledge as of May 14
2011 of Isaacs' NH Board Application verified by Finn and Bertrand.
3) Dartmouth Psychiatry residency grievance and disciplinary procedures.
4) General knowledge and beliefs amongst the Dartmouth Psychiatry department, prior to January 17th 2012, concerning Isaacs purported USC enrollment and AZ surgery residency
5) Knowledge of Isaacs' sleep patterns amongst Dartmouth Psychiatry
6) Christine Finn's verification of Isaacs NH Board Application, her constructive knowledge of Isaacs' AZ internship, and specifically, Dartmouth's policy on reprimanding a GME student for the mistake of a professor.
7) Jim Yong Kim and Alan Green's professional knowledge of Dr Baughman (NINDS director)
8) Actigraph watch clinical utilization at Dartmouth Psychiatry, and the specific indications for ordering, and loss of , Isaacs' actigraph study
9) Legal holds on emails, voicemails, and other ESI at Dartmouth pertaining to this lawsuit. Backups available.
10) Attorney Kaplan's authority to email Isaacs requesting interception of all communications to Dartmouth, and likewise, Kaplan's authority to accept summonses after intercepting communications from Isaacs.
11) All searchable ESI at Dartmouth, for the time period January 2011
- January 2012, (EXCLUDING UNDERGRADUATE SYSTEMS) containing any of the keywords "Isaacs" or "Baughman"
12) LPMR program eligibility and acceptance rates. Description of the LPMR accreditation parent administrator (The Dartmouth Institute?) and MPH degree-issuing authority (Dartmouth?) of the program. Previous
PGY2 entries. Average USMLE scores for participants.
13) The contractual agreements between MHMH/DHMC and Dartmouth Psychiatry, to allow for sufficient defense of what appears to be an invalid relationship or a relationship exploited to avoid litigation.
Including, but not limited to: a) Any other known Psychiatry departments in the United States with a similar structure to Dartmouth's, b) salary/paycheck arrangements for faculty (eg, is Finn salaried by DHMC or Dartmouth?), c) accounting and reimbursement relationships between DHMC and Dartmouth Psychiatry, and d) accreditation/licensure of Dartmouth Psychiatry to perform GME education of resident physicians.
14) Description of Dartmouth Psychiatry residency rotations at Dartmouth College (Dick's House), the WRJ VA, and other non-DHMC locations. Specifically, the contractual student/employee relationship of a resident to all of these institutions

(ie student, employee, no privity, etc) during the rotations. The proportion of time a resident spends at DHMC versus other institutions (eg Veterans' Administration or Dartmouth College) during residency, and funding sources for each of their GME rotations.

15) All known arguments Dartmouth has asserted in a Court of law asserting that a resident is a student, rather than an employee.

16) All known arguments Dartmouth has asserted in a Court of law asserting that a resident is an employee, rather than a student.

17) All known arguments Dartmouth has asserted in a Court of law asserting that a Dartmouth Psychiatry resident has no privity with Dartmouth College.

18) Research opportunities granted to Dartmouth Psychiatry residents in the past 4 years, and their status as a student or employee of Dartmouth professors they collaborate on these projects with.

19) Ronald Green's thought process, motivations, and truthfulness in accusing Jennifer Connors of medicare fraud, in a closed door meeting prior to seeking her resignation, for failure to conduct/document a physical exam properly.

20) Ronald Green's thought process, motivations, and truthfulness in accusing Isaacs of medicare fraud, in a closed door meeting prior to seeking his resignation, for failure to conduct/document a physical exam properly.

21) Ronald Green's thought process, motivations, and knowledge in suggesting to Isaacs in November that he find an alternative career.

22) Knowledge of all terminations that occurred prior to a fair hearing, in the past 15 years at Dartmouth Psychiatry residency program

23) Knowledge of all terminations that occurred after a fair hearing, in the past 15 years.

24) Any anonymous "tips" conveyed to Dartmouth concerning Isaacs

25) Knowledge of Isaacs' PSG/CPAP titration and any abnormalities discovered ( academic expertise on these studies.)

26) Thomas McAllisters personal memory of Isaacs' revealing his TBI during their interview in 2010. McAllister's credentials/national expertise on TBI. McAllister's thoughtful comments on Isaacs' interview form, in comparison to Finn's comments about "poor social skills for an MBA."

27) Knowledge of Alan Green's 20 minute abnormal eye contact with Isaacs his first day of orientation, including witnesses to the event(all Psychiatry dept orientation meeting)

28) Any documents or work-product of the Trustees regarding Isaacs' or Bakers' plea for an ethics investigation. Knowledge of the Trustee's personal receipt of the documents, and knowledge of their action and/or inaction on the pleas.

29) Any documents from Isaacs' undergraduate file on his head injury, including but not limited to a request for permission to drop chemistry due to concentration difficulties. Likewise, any documents in Dartmouth's possession regarding Christopher Chang's undergraduate file,  disciplinary actions, violence, or anger management issues.

30) Evidence of any investigation conducted into Isaacs' ethics complaint, including but not limited to Trustee Mandel's review of the matter, his opinion on the matter, his thought process in arriving at a course of action, and his current belief as to the legitimacy of Isaacs' ethics complaint and related complaints.

31)  Evidence of any action (or lack thereof) Isaacs' ethics complaint, including but not limited to Trustee Mandel's review of the matter, his opinion on the matter, his thought process in arriving at a course of action, and his current belief as to the legitimacy of Isaacs' ethics complaint and related complaints.

32) Process for review of an Ethics Complaint. Jim Yong Kim's motivation, belief, and objectives in enacting enforcement of the Business Ethics code. Jim Yong Kim's beliefs as to whether or not Isaacs' claims constitute any legitimate grounds for an ethics complaint.

33) Jim Yong Kim's beliefs, mindset, actions, and opinions regarding any information conveyed to him by or about Isaacs. Kim's beliefs regarding Isaacs' accusation of Kim's inaction , one week before his termination. Knowledge of the timing of Kim's world bank nomination, and specifically, Kim's knowledge of efforts to discredit Isaacs by terminating him 2 days prior to the nomination, without a "Fair Hearing." Kim's knowledge on the typical "Fair Hearing" procedures occuring BEFORE termination. Kim's disclosure to the United States Executive Branch (or lack thereof) of his defendant status for retaliation/negligence claims. Kim's disclosure to the World Bank (or lack thereof) of his defendant status for retaliation/negligence claims. Kim's overall reputation for apathy to "hazing" conduct at Dartmouth. Kim's travel itinerary and whereabouts during the week of attempted/failed service of summons. Kim's current opinion, and past opinions, on the validity of Finn/Bertrand's termination letter.

34) Dave Ravi's mindset, beliefs, and knowledge of Isaacs' at the time he made lewd comments about Isaacs' wife, which Isaacs' promptly emailed a complaint about to Finn.

35) David Bae's mindset, beliefs, and knowledge of Isaacs' at the time he made comments about "Ass-burgers" disease.

36) Knowledge of "One Flew Over the Cuckoo's Nest" posters in Dartmouth Psychiatry patient restraint rooms.

37) Knowledge of aggressive glances and stares towards Isaacs by Elizabeth Larusso, and Larusso's opinions, beliefs and knowledge about Isaacs at the time. Knowledge of Julie Frew's complaints about Isaacs on the Thanksgiving shift, her opinions, beliefs and knowledge at the time. Knowledge of Matthew Duncan's negative performance reviews re Isaacs, his opinions, beliefs, and knowledge of Isaacs at the time.

Knowledge of Douglas Noordsy's negative performance reviews re Isaacs, and his accusation regarding a titration entered by Dave Ravi into EPIC , his opinions, beliefs, and knowledge of Isaacs at the time.

Noordsy's IEA justification for a patient Isaacs opposed the grounds for IEA solely on the basis she exited the facility wearing socks (choosing to walk to her husband's car in the parking lot without sneakers).

38) Dartmouth's beliefs and opinions and knowledge on the plausibility of both Finn and Bertrand verifying a document that mentions Arizona on four separate pages, but failing to notice entire paragraphs concerning Arizona.

39) Dartmouth's beliefs, evidentiary support, and opinions regarding the correctness of each claim Finn/Bertrand issued in Isaacs'

termination letter.

40) Any witnessed symptoms of PTSD Isaacs exhibited at Dartmouth, including but not limited to sweating, isolative behavior, social withdrawal, incapacitating anxiety, concentration difficulties, psychotic features, and/or sleep irregularities. Knowledge and description of Dartmouth Psychiatry/WRJ VA's national pre-eminence in PTSD research.

41) Any witnessed symptoms of TBI Isaacs exhibited at Dartmouth, including but not limited to social withdrawal, stimuli anxiety, concentration difficulties,frontal brain/dysexecutive disorder, and/or sleep irregularities. Knowledge and description of Jim Yong Kim's Ivy League Concussion initiative, his reasons, knowledge of TBI, and motivations in forming the consortium.

42) Knowledge of any relationships or work collaboration between Dr Baughman (NINDS) and any Dartmouth Psychiatry member.

43) Knowledge of criticism against Isaacs, conveyed via email or verbally by approximately 30 individuals at Dartmouth.

44) Dartmouth's employment relationship with any members of the Federal Judicial or Executive Branch, or their immediate family members.

45) Dartmouth psychiatry's financial accounting for the past 5 years, including but not limited to , operating losses/gains, reimbursement from federal /state entities for residency training, and, the financial impact of each resident physician vacancy for the past 5 years.

46) Any documents in Dartmouth's custody or control harassment/bullying patterns against Isaacs. including but not limited to his Dartmouth roommate's discipline for harassing Isaacs.

47) Dartmouth Counsel O'Leary's knowledge, opinion, and beliefs about Isaacs when he intercepted a telephone call to Jim Yong Kim's office in early February 2012 "I'm sure you do wish you knew what happened...

You can't sue us, you sue everybody." O'Leary's training in retaliation and discrimination law and any credentialing requirements that he be trained in such subjects to serve as Dartmouth Counsel.


Please let me know if you have any questions or clarifications. As you know, there are a large number of discrepancies under dispute from what I allege is now a 24-month retaliation/cover-up involving upwards of thirty individuals, and I reserve the right to address additional matters during the deposition. If you object to any specific enumerated item above, please identify it and your basis for objection, but proceed with scheduling the deposition for remaining items within 10 days.


Regards,
Jeffrey Isaacs

## Jeanne Batchelder

| | |
|---|---|
| **From:** | jeffreydi@gmail.com on behalf of Jeffrey D. Isaacs <jeffrey.isaacs.wg03 @wharton.upenn.edu> |
| **Sent:** | Friday, August 09, 2013 8:36 PM |
| **To:** | Edward Kaplan; Christopher J. Pyles; Pierre Chabot |
| **Subject:** | Fwd: Official Order |
| **Attachments:** | bertranddepo.pdf |

---------- Forwarded message ----------
From: **Jeffrey D. Isaacs** <jeffrey.isaacs.wg03@wharton.upenn.edu>
Date: Fri, Aug 9, 2013 at 8:34 PM
Subject: Official Order
To: Kathleen Peahl <KPeahl@wadleighlaw.com>

Dear Attorney Peahl:

In light of the fact that I am not persuaded by your argument, which seems to state that an officer/ Dean of Dartmouth cannot be produced by Dartmouth for deposition, because his salary stems chiefly from his anesthesiology clinical practice, here is the official order. You will note I had sent an informal order before; it appears you intend to move for a protective order, which I will argue is frivolous. In your filing for a protective order, I believe you will require the attached , official deposition order (as well as the Admissions request).

Again, to summarize, I attempted to apply to a DMS MPH degree program, but allege I was blocked from applying because of fraud/conspiracy involving Bertrand, a Dean of the Med School. Furthermore, I believe my academic participation in the GME program was conducted under the auspices of responsibility and direction of the Trustees. Dartmouth proudly claims it administers prestigious medical residency programs, but when it comes to lawsuits, it disavows any relation to the programs. Clearly, there is a Dean of GME (Bertrand) for a reason. As I stated to Kaplan, it appears Dartmouth is arguing that Bertrand is the only Dean in the country without any student body. The argument that his salary is from hospital anesthesiology work is hardly compelling.

Please let me know if you have any further questions or changes with regards to this matter. Again, like the Request for Admissions, Bertrand's failure to appear for the depositions carries certain legal consequences, absent any protective order.

Regards,
Jeffrey Isaacs

>>
Dear Attorney Peahl:

This is in response to your letter from earlier this hour.

You are correct that I have not issued a formal deposition order for Finn. I would anticipate, to comply with the rules of a 30b6 deposition, that FInn would be produced for that deposition. In the event she is not, and I have remaining questions that I believe should have been answered by the designated 30b6 representative, I will make a decision at that time whether to move to compel further 30b6 production, or simply depose Finn individually. So at this time, I will defer that matter until the 30b6 is scheduled.

I continue to maintain that Bertrand , as an officer of Dartmouth Geisel Med School, should be produced by your client. Please be advised that the requests for admissions shall be deemed ADMITTED but for a court order declaring that Bertrand is not an officer subject to control/custody by DMS.

I was not present in the meeting with Judge LaPlante and Skinner Rivard attorneys. I do understand they felt pressure to drop Kim from the lawsuit. My impression is that the discussions centered around individual liability for ADA claims, in which case, I agree with Judge LaPlante's assertion you purport he made. That said, given knowledge I learned during the past two weeks, this case has shifted away from ADA claims and towards the criminal acts and tortious acts I alleged in the ED on 1/13/12. Kim

had a clear duty to do more than what he did -- forward my call to his attorney (OLeary) who ridiculed me that I couldn't complaint, because "you sue everybody." Again, my order to Kim stands, and be advised that I am in final review of new complaint/pleadings that will make specific charges against Kim for turning a blind eye on criminal activity amongst his colleagues. This has absolutely nothing to do with ADA individual liability, as you know.

While I understand I do not possess all knowledge of Dartmouth/DHMCs corporate infrastructure (it will be discovered in the 30b6 as you stated), I do believe that as an applicant to LPMR, MPH degree program at Dartmouth, and in light of Mayo vs. US, Kim and Bertrand had responsibilities to the Trustees with regards to my claims. Specifically, they had a duty to protect the well-being of their students. As a resident physician, and MPH applicant, my well-being was legally guarded by a Dean of GME, Bertrand, and his superior, Kim.  Therefore, they shall be produced and I will fight any attempt to shield your client on the far-fetched assertion that because Bertrand's salary comes from his anesthesiology work at the hospital, Dartmouth College had no role or responsibility.

I agree it may not be possible to schedule all depositions on the same week, but efforts should be made to make them promptly. It has been almost three weeks since i Made the 30b6 request, and it is not scheduled. I responded to Kaplan's request for a deposition within 24 hours. Furthermore, I hereby request that you/your firm be present and participate at the deposition with Kaplan/DHMC me, and only file a separate deposition order upon me if there is good cause to do so.

At this point, to summarize,  pending are as follows:
1) Deposition scheduling for 30b6, Kim, Bertrand and Riblet, and Twork/Friedman
2) Admissions from Bertrand, deemed admitted if not answered within 30 days or blocked by a protective order
3) Motion to compel and sanctions, injunctive orders, referral for criminal investigation
4) Civil Claim against DHMC and U Arizona, Bertrand, Kim in USDC / D.C. - federal deprivation of rights
5) outstanding criminal complaints for assault, fraud, false statements to institutions in receipt of federal funds, evidence destructions

As you asserted you have a duty to protect your clients, please understand that I have reviewed these matters with numerous physicians, family members, etc, and all find it reasonable to believe that, but for a crime(s), i would be enrolled in a federally funded residency program today.

Regards,
Jeffrey Isaacs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs,                                    §
        Plaintiff


v.                                                 Civil No.:  1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
        Defendants


## NOTICE OF DEPOSITION BY ORAL EXAMINATION


Plaintiff J D Isaacs, pursuant to Rule 30 of the Federal Rules of Civil Procedure, hereby

notices DR MARC BERTRAND (ASSOCIATE DEAN OF GRADUATE MEDICAL

EDUCATION aka ASSOCIATE DEAN OF RESIDENT PHYSICIAN EDUCATION) of

DEFENDANT TRUSTEES OF DARMOUTH COLLEGE  that a deposition of said officer

shall occur within thirty (30) days:

1) This shall be a video-deposition administered by qualified personnel and under oath.

2) Bertrand is to answer questions related to allegations that he:
   a) is an officer of the Trustee's medical school who neglected duties to protect the well-being of the Plaintiff, both a GME student of the Trustees and a denied/refused MPH degree applicant.
   b) conspired with or on behalf of former colleagues in Arizona against Plaintiff
   c) permitted hazing against the Plaintiff in the GME program
   d) permitted fraudulent academic evaluations/ GME performance reports
   e) terminated Plaintiff from GME without a Fair Hearing, for retaliatory reasons
   f) issued false/misleading statements pertaining to Isaacs' GME application
   g) initiated unethical events that lead to the sexual assault of one or more of Plaintiff's patients and general psychological abuse

3) Absent scheduling agreement, DR MARC BERTRAND shall report to the USDC NH at noon on Friday September 13, 2013.


Respectfully submitted,
Doctor J. D. Isaacs, Plaintiff

DATED: 8/9/13          By ___*Jeffrey D. Isaacs*___
JD Isaacs
3553 W Chester PK #177
Newtown Square, PA 19073

**Jeanne Batchelder**

| | |
|---|---|
| **From:** | jeffreydi@gmail.com on behalf of Jeffrey D. Isaacs <jeffrey.isaacs.wg03 @wharton.upenn.edu> |
| **Sent:** | Monday, August 12, 2013 11:02 PM |
| **To:** | Edward Kaplan; Christopher J. Pyles; Jeanne Batchelder; Kathleen Peahl; Pierre Chabot |
| **Subject:** | Deposition for Dr N Riblet |
| **Attachments:** | riblet.pdf |

Dear Attorney Kaplan:

Please find attached formal notice of Dr Riblet's deposition. Her deposition shall occur immediately after Dr Jim Yong Kim's deposition, in the same room.

MHMH/DHMC is receiving formal notice of this deposition, but Dr Riblet may also be questioned about the MPH/LPMR program, and internal Department of Psychiatry (Trustees) communications. As such, Attorney Peahl/Chabot are invited to attend this deposition.

Please let me know if you have any questions about this deposition.

Regards,
Jeffrey Isaacs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs,                                    §
        Plaintiff

v.                                                 Civil No.:  1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
        Defendants


## NOTICE OF DEPOSITION BY ORAL EXAMINATION


Plaintiff J D Isaacs, pursuant to Rule 30 of the Federal Rules of Civil Procedure, hereby

notices DR NATALIE V. B. RIBLET (Plaintiff's Supervising & senior resident physician for

4 weekend/overnight training shifts at MHMH/DHMC; Student/Graduate, Trustees of

Dartmouth College LPMR/MPH program) that a deposition shall occur on September 13,

2013 at 1:45PM. Further instructions follow:

    1) This shall be a video-deposition administered by qualified personnel and under oath.

    2) Dr Riblet is to expected to be questioned about the following matters:
      a) Dr Riblet's knowledge of Plaintiff's past history at Arizona and California;
      b) Plaintiff's performance during shifts Dr Riblet supervised/instructed
      c) Dr Riblet's communications with Dr Finn, Dr Frew, Dr Larusso concerning Plaintiff
      d) Dr Riblet's advising/mentoring of Plaintiff regarding the LPMR MPH program
      e) Dr Riblet's call shift on 1/13/12; any HIPAA violations she witnessed
      f) Plaintiff's general reputation amongst Psychiatry residents/staff throughout his six
month residency training
      g) other substantive matters to be determined at the deposition

    3) DR NATALIE V. B. RIBLET shall report to the USDC NH at 1:45PM on Friday
September 13, 2013. The facility is reserved for her deposition.

Respectfully submitted,
Doctor J. D. Isaacs, Plaintiff

DATED: 8/12/13          By _Jeffrey D. Isaacs_
JD Isaacs
3553 W Chester PK #177
Newtown Square, PA 19073

## Jeanne Batchelder

| | |
|---|---|
| **From:** | jeffreydi@gmail.com on behalf of Jeffrey D. Isaacs <jeffrey.isaacs.wg03 @wharton.upenn.edu> |
| **Sent:** | Monday, August 12, 2013 10:17 PM |
| **To:** | Edward Kaplan; Christopher J. Pyles; Jeanne Batchelder; Kathleen Peahl; Pierre Chabot |
| **Subject:** | Deposition for Harley Friedman |
| **Attachments:** | friedman.pdf |

Dear Attorney Kaplan:
Please find attached formal notice of Dr Friedman's deposition. His deposition shall occur immediately prior to Dean Bertrands, in the same room. Please note that you are invited to attend Bertrand's deposition; I noticed Attorney Peahl, but Bertrand will be questioned regarding his dual administrative roles at DHMC/DMS.

Please let me know if you have any questions about this deposition.
Also, I see that Jeanne Batchelder said you would be suggesting dates for the 30b6 deposition. It had been 3 weeks since the request and I have not heard from you. This is quite a delay given we have a short discovery timeframe. While I understand you have a busy litigation schedule, your client should be able to produce/hire additional attorneys in lieu of unnecessary three week delays.
Please let me know the status of the 30b6 request no later than Wednesday (this week).

Regards,
Jeffrey Isaacs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs,                                    §
    Plaintiff

v.                                                                      Civil No.:  1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
    Defendants

## NOTICE OF DEPOSITION BY ORAL EXAMINATION

Plaintiff J D Isaacs, pursuant to Rule 30 of the Federal Rules of Civil Procedure, hereby

notices DR HARLEY P FRIEDMAN (PROGRAM DIRECTOR, INTERNAL MEDICINE,

DEFENDANT DHMC/MHMH; ASSISTANT PROFESSOR, DEFENDANT TRUSTEES OF

DARMOUTH COLLEGE)  that a deposition of said officer shall occur on September 13,

2013 at 11AM. This deposition is noticed upon Defendants MHMH/DHMC. Due to

HARLEY P FRIEDMAN's dual officer assignment with the defendants, counsel for

TRUSTEES OF DARTMOUTH COLLEGE are invited to attend, as questions pertaining to

both roles shall be permitted in this deposition. Further instructions follow:

    1) This shall be a video-deposition administered by qualified personnel and under oath.

    2) Friedman is to answer questions related to his:
    a) knowledge of Plaintiff's past history at Arizona and California, prior to
commencement of Plaintiff's residency training and or prior to his M2 rotations;
    b) coordination of an improper termination with Defendant Finn
    c) permitting or creating an environment conducive to hazing the Plaintiff
    d) inappropriate physical examination of two patients on Plaintiff's M2 rotation

e) knowledge of HIPAA violations and access to Patient's DHMC eHR on 1/13/12
f) knowledge of concerns about Plaintiff's mental state, during M2
g) Plaintiffs purported clinical errors during M2
h) Plaintiff's general reputation on M2 and at DHMC
i) The hiring of an alumnus of AUC and discussions with this alumnus about Isaacs
j) the transfer of Dr Frances Shin from Medicine to Psychiatry

3) DR HARLEY P FRIEDMAN shall report to the USDC NH at 11AM on Friday
September 13, 2013. The facility is reserved for his deposition.


Respectfully submitted,
Doctor J. D. Isaacs, Plaintiff

DATED: 8/12/13          By_____
JD Isaacs
3553 W Chester PK #177
Newtown Square, PA 19073

**Jeanne Batchelder**

| | |
|---|---|
| **From:** | jeffreydi@gmail.com on behalf of Jeffrey D. Isaacs <jeffrey.isaacs.wg03 @wharton.upenn.edu> |
| **Sent:** | Monday, August 12, 2013 10:29 PM |
| **To:** | Edward Kaplan; Christopher J. Pyles; Jeanne Batchelder; Kathleen Peahl; Pierre Chabot |
| **Subject:** | Deposition for Jim Yong Kim |
| **Attachments:** | kimdepo.pdf |

Dear Attorney Peahl:

Please find attached a final deposition order for President Kim. Because he has not responded to offer of venue, I have proceeded with scheduling him at the Concord courthouse , immediately following Bertrand's noon deposition. This notice supercedes the prior notice (I have a prior sleep medicine appointment on 9-11 at 3PM and would be unable to depose Kim that day).

Please let me know if you have any questions about this deposition. Counsel for DHMC is invited to attend if they feel so obliged.

Regards,
Jeffrey Isaacs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs,                                          §
  Plaintiff

v.                                                       Civil No.:  1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
  Defendants

## NOTICE OF DEPOSITION BY ORAL EXAMINATION

  Plaintiff J D Isaacs, pursuant to Rule 30 of the Federal Rules of Civil Procedure, hereby

notices DR JIM YONG KIM (PRESIDENT, DEFENDANT TRUSTEES OF DARMOUTH

COLLEGE at time of filing) that a deposition of said officer shall occur on September 13,

2013 at 1PM. Further instructions follow:

  1) This shall be a video-deposition administered by qualified personnel and under oath.

  2) Kim is to answer questions related to his:
  a) knowledge of Plaintiff's past history at Arizona and California;
  b) receipt of Plaintiff's request , dated 1/15/12, for Rule 34 evidence preservation
  c) receipt of Plaintiff's requests for ethics / criminal investigations
  d) knowledge of deletion of Plaintiff's email accounts, despite the Rule 34 request
  e) Communications with Dean Bertrand or other individuals regarding Plaintiff
  f) professional knowledge of former NIH Director Baughman
  g) knowledge of his ethics code enactment at Dartmouth; Hazing controversies
  h) knowledge of timing of World Bank nomination, Plaintiff's termination without Fair
hearing 1 week prior to nomination; Isaacs' complaint of Kim's inaction, 2 weeks prior.
  i) additional relevant matters.

  3) DR JIM YONG KIM shall report to the USDC NH at 1PM on Friday September 13,
2013. The facility is reserved for his deposition. This notice supercedes a notice for

September 11, due to scheduling changes. In the event Kim already reserved 9-11-13 for this deposition, please contact Plaintiff to work out scheduling possibilities.

Respectfully submitted,
Doctor J. D. Isaacs, Plaintiff

DATED: 8/12/13                By _____ *Jeffrey D. Isaacs*
JD Isaacs
3553 W Chester PK #177
Newtown Square, PA 19073

## Jeanne Batchelder

| | |
|---|---|
| **From:** | jeffreydi@gmail.com on behalf of Jeffrey D. Isaacs <jeffrey.isaacs.wg03 @wharton.upenn.edu> |
| **Sent:** | Tuesday, August 13, 2013 12:01 AM |
| **To:** | Edward Kaplan; Christopher J. Pyles; Jeanne Batchelder; Kathleen Peahl; Pierre Chabot |
| **Subject:** | Trustees 30b6 deposition |
| **Attachments:** | dms30b6.pdf |

Dear Attorney Peahl:

Please find attached, official notice for the first 30b6 session.

It is noted that I requested scheduling of this matter three weeks ago. I will not accept any excuses at this point for rescheduling, as the courthouse has confirmed the venue.

Please note that the initial RFP/interrogatory deadlines were extended by one month. We then spent the greater part of the last month going in circles about compelling responses. No depositions were scheduled (except mine, which I volunteered for).

Please let me know how you seriously expect to conclude discovery on complex matters that relate to the loss of a physicians entire career? It seems you have succeeded in running out the clock, as of today your firm is still asking for another week delay on trivial matters. Your client has unlimited resources compared to me, a pro se individual with no career and $400,000 in medical school and law school loans.

This is a complex federal lawsuit (potentially multi-district in the foreseeable future) about how your clients seriously harmed my well-being, and your firm is treating it like a traffic ticket matter. If you / Atty Chabot are truly busy with scheduling other cases, I suggest you have an ethical obligation to inform your client of the need for more legal resources. We have less than 2 months left in fact discovery - and nothing has been produced yet. Not even my emails from DHMC. Not a single deposion. We haven't even gotten to subpoenas of telephone/email national transmission data, etc. I believe the NSA might have evidence useful for this trial as well, if your clients truly deleted everything.

Please confirm receipt of these deposition notices within twenty-four hours. Advise of any questions if necessary. Please provide dates for the second 30b6 session within 10 days.

Thank you,
Jeffrey Isaacs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs,                                §
         Plaintiff


v.                                              Civil No.:  1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
         Defendants


## <u>NOTICE OF DEPOSITION BY ORAL EXAMINATION</u>


Plaintiff J D Isaacs, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure,

hereby notices DEFENDANT TRUSTEES OF DARTMOUTH COLLEGE that a 30(b)(6)

deposition shall occur on September 13, 2013 at 2:30PM. Further instructions follow:

   A) This shall be a video-deposition administered by qualified personnel and under oath.

   B) The Trustees of Dartmouth college shall produce authorized individual(s) with
appropriate knowledge pertaining to the following subjects. In the event the Trustees object to
any of the following subjects, they shall produce representatives for the remaining subjects:

   1) Dartmouth's knowledge of Isaacs' (including when and how knowledge was gained,
   and evidentiary proof of the purported enrollment) purported enrollment at USC.
   Attempted FERPA requests made to USC/Keck School of Medicine.

   2) Dartmouth's knowledge (including when and how knowledge was gained) of Isaacs'
   Arizona internship, including DHMC's knowledge as of May 14 2011 of Isaacs' NH
   Board Application verified by Finn and Bertrand. FERPA requests or attempts made to
   U. Arizona HSC affiliated programs.

   3) Dartmouth Psychiatry residency grievance, administrative leave, and disciplinary
   procedures.

4) General knowledge and beliefs amongst the Dartmouth Psychiatry department, prior to January 17th 2012, concerning Isaacs purported USC/Keck SOM enrollment and AZ surgery residency

5) Knowledge of Isaacs' sleep abnormalities amongst Dartmouth Psychiatry

6) Christine Finn's verification of Isaacs NH Board Application, her constructive knowledge of Isaacs' AZ internship, and specifically, Dartmouth's policy on reprimanding a GME student for the mistake of a professor.

7)Trustees' mentality, goals, and objectives in appointing a Dean of GME. The Dean of GME's student cohort, and duties towards his students.

7) Jim Yong Kim and Alan Green's professional knowledge of Dr Baughman (NINDS director)

8) Actigraph watch clinical utilization at Dartmouth Psychiatry, and the specific indications for ordering, and loss of , Isaacs' actigraph study

9) Legal holds on emails, voicemails, and other ESI at Dartmouth pertaining to this lawsuit. Backups available. Jim Yong Kim's notice of FRCP 34 hold request on 1/15/12. Christine Fitts authorization to delete DHMC email accounts.

10) Attorney Kaplan's authority to email Isaacs requesting interception of all communications to Dartmouth, and likewise, Kaplan's authority to accept summonses after intercepting communications from Isaacs.

11) All searchable ESI at Dartmouth, for the time period January 2011 - January 2012, (EXCLUDING UNDERGRADUATE SYSTEMS) containing any of the keywords "Isaacs" or "Baughman"

12) LPMR program eligibility and acceptance rates. Description of the LPMR accreditation parent administrator (The Dartmouth Institute?) and MPH degree-issuing authority (Dartmouth?) of the program. Previous PGY2 entries. Average USMLE scores for participants. Dr Riblet's knowledge and beliefs of LPMR colleagues and procedures conveyed to Plaintiff. Dr Riblet's discussions with Finn or others about Plaintiff.

13) The contractual agreements between MHMH/DHMC and Dartmouth Psychiatry, to allow for sufficient defense of what appears to be an invalid relationship or a relationship exploited to avoid litigation. Including, but not limited to: a) Any other known Psychiatry departments in the United States with a similar structure to Dartmouth's, b) salary/paycheck arrangements for faculty (eg, is Finn salaried by DHMC or Dartmouth?), c) accounting and reimbursement relationships between DHMC and Dartmouth Psychiatry, and d) accreditation/licensure of Dartmouth Psychiatry to perform GME education of resident physicians.

14) Description of Dartmouth Psychiatry residency rotations at Dartmouth College (Dick's House), the WRJ VA, and other non-DHMC locations. Specifically, the contractual student/employee relationship of a resident to all of these institutions (ie student, employee, no privity, etc) during the rotations. The proportion of time a resident spends at DHMC versus other institutions (eg Veterans' Administration or Dartmouth College) during residency, and funding sources for each of their GME rotations.

15) All known arguments Dartmouth has asserted in a Court of law asserting that a resident is a student, rather than an employee.

16) All known arguments Dartmouth has asserted in a Court of law asserting that a resident is an employee, rather than a student.

17) All known arguments Dartmouth has asserted in a Court of law asserting that a Dartmouth Psychiatry resident has no privity with Dartmouth College.

18) Research opportunities granted to Dartmouth Psychiatry residents in the past 4 years, and their status as a student or employee of Dartmouth professors they collaborate on these projects with. Non-clinical learning opportunities generally available to Dartmouth Psychiatry GME students. Published non-clinical papers of GME students.

19) Ronald Green's thought process, motivations, and truthfulness in accusing Jennifer Connors of medicare fraud, in a closed door meeting prior to seeking her resignation, for failure to conduct/document a physical exam properly.

20) Ronald Green's thought process, motivations, and truthfulness in accusing Isaacs of medicare fraud, in a closed door meeting prior to seeking his resignation, for failure to conduct/document a physical exam properly.

21) Ronald Green's thought process, motivations, and knowledge in suggesting to Isaacs in November that he find an alternative career.

22) Knowledge of all terminations that occurred prior to a fair hearing, in the past 15 years at Dartmouth Psychiatry residency program

23) Knowledge of all terminations that occurred after a fair hearing, in the past 15 years.

24) Any anonymous "tips" conveyed to Dartmouth concerning Isaacs

25) Knowledge of Isaacs' PSG/CPAP titration and any abnormalities discovered ( academic expertise on these studies.)

26) Thomas McAllisters personal memory of Isaacs' revealing his TBI during their interview in 2010. McAllister's credentials/national expertise on TBI. McAllister's

thoughtful comments on Isaacs' interview form, in comparison to Finn's comments about "poor social skills for an MBA."

27) Knowledge of Alan Green's 20 minute abnormal eye contact with Isaacs his first day of orientation, including witnesses to the event(all Psychiatry dept orientation meeting)

28) Any documents or work-product of the Trustees regarding Isaacs' or Bakers' plea for an ethics investigation. Knowledge of the Trustee's personal receipt of the documents, and knowledge of their action and/or inaction on the pleas.

29) Any documents from Isaacs' undergraduate file on his head injury, including but not limited to a request for permission to drop chemistry due to concentration difficulties. Likewise, any documents in Dartmouth's possession regarding Christopher Chang's undergraduate file, disciplinary actions, violence, or anger management issues.

30) Evidence of any investigation conducted into Isaacs' ethics complaint, including but not limited to Trustee Mandel's review of the matter, his opinion on the matter, his thought process in arriving at a course of action, and his current belief as to the legitimacy of Isaacs' ethics complaint and related complaints.

31) Evidence of any action (or lack thereof) Isaacs' ethics complaint, including but not limited to Trustee Mandel's review of the matter, his opinion on the matter, his thought process in arriving at a course of action, and his current belief as to the legitimacy of Isaacs' ethics complaint and related complaints.

32) Process for review of an Ethics Complaint. Jim Yong Kim's motivation, belief, and objectives in enacting enforcement of the Business Ethics code. Jim Yong Kim's beliefs as to whether or not Isaacs' claims constitute any legitimate grounds for an ethics complaint.

33) Jim Yong Kim's beliefs, mindset, actions, and opinions regarding any information conveyed to him by or about Isaacs. Kim's beliefs regarding Isaacs' accusation of Kim's inaction , one week before his termination. Knowledge of the timing of Kim's world bank nomination, and specifically, Kim's knowledge of efforts to discredit Isaacs by terminating him 2 days prior to the nomination, without a "Fair Hearing." Kim's knowledge on the typical "Fair Hearing" procedures occuring BEFORE termination. Kim's disclosure to the United States Executive Branch (or lack thereof) of his defendant status for retaliation/negligence claims. Kim's disclosure to the World Bank (or lack thereof) of his defendant status for retaliation/negligence claims. Kim's overall reputation for apathy to "hazing" conduct at Dartmouth. Kim's travel itinerary and whereabouts during the week of attempted/failed service of summons. Kim's current opinion, and past opinions, on the validity of Finn/Bertrand's termination letter.

34) Dave Ravi's mindset, beliefs, and knowledge of Isaacs' at the time he made lewd comments about Isaacs' wife, which Isaacs' promptly emailed a complaint about to Finn.

35) David Bae's mindset, beliefs, and knowledge of Isaacs' at the time he made comments about "Ass-burgers" disease.
36) Knowledge of "One Flew Over the Cuckoo's Nest" posters in Dartmouth Psychiatry patient restraint rooms.

37) Knowledge of aggressive glances and stares towards Isaacs by Elizabeth Larusso, and Larusso's opinions, beliefs and knowledge about Isaacs at the time. Knowledge of Julie Frew's complaints about Isaacs on the Thanksgiving shift, her opinions, beliefs and knowledge at the time. Knowledge of Matthew Duncan's negative performance reviews re Isaacs, his opinions, beliefs, and knowledge of Isaacs at the time. Knowledge of Douglas Noordsy's negative performance reviews re Isaacs, and his accusation regarding a titration entered by Dave Ravi into EPIC , his opinions, beliefs, and knowledge of Isaacs at the time. Noordsy's IEA justification for a patient Isaacs opposed the grounds for IEA solely on the basis she exited the facility wearing socks (choosing to walk to her husband's car in the parking lot without sneakers).

38) Dartmouth's beliefs and opinions and knowledge on the plausibility of both Finn and Bertrand verifying a document that mentions Arizona on four separate pages, but failing to notice entire paragraphs concerning Arizona.

39) Dartmouth's beliefs, evidentiary support, and opinions regarding the correctness of each claim Finn/Bertrand issued in Isaacs' termination letter.

40) Any witnessed symptoms of PTSD Isaacs exhibited at Dartmouth, including but not limited to sweating, isolative behavior, social withdrawal, incapacitating anxiety, concentration difficulties, psychotic features, and/or sleep irregularities. Knowledge and description of Dartmouth Psychiatry/WRJ VA's national pre-eminence in PTSD research. The WRJ VA's relationship (contractually) to a resident in the GME program and to Dartmouth Psychiatry.

41) Any witnessed symptoms of TBI Isaacs exhibited at Dartmouth, including but not limited to social withdrawal, stimuli anxiety, concentration difficulties, frontal brain/dysexecutive disorder, and/or sleep irregularities. Knowledge and description of Jim Yong Kim's Ivy League Concussion initiative, his reasons, knowledge of TBI, and motivations in forming the consortium.

42) Knowledge of any relationships or work collaboration between Dr Baughman (NINDS) and any Dartmouth Psychiatry member.

43) Knowledge of criticism against Isaacs, conveyed via email or verbally by approximately 30 individuals at Dartmouth.

44) Dartmouth's employment relationship with any members of the Federal Judicial or Executive Branch, or their immediate family members.

45) Dartmouth psychiatry's financial accounting for the past 5 years, including but not limited to, operating losses/gains, reimbursement from federal /state entities for residency training, and, the financial impact of each resident physician vacancy for the past 5 years.

46) Any documents in Dartmouth's custody or control harassment/bullying patterns against Isaacs. including but not limited to his Dartmouth roommate's discipline for harassing Isaacs.

47) Dartmouth Counsel O'Leary's knowledge, opinion, and beliefs about Isaacs when he intercepted a telephone call to Jim Yong Kim's office in early February 2012 "I'm sure you do wish you knew what happened... You can't sue us, you sue everybody." O'Leary's training in retaliation and discrimination law and any credentialing requirements that he be trained in such subjects to serve as Dartmouth Counsel.

48) Dr Harley Friedman's communications with Defendant Finn and their knowledge, goals, and motivations to terminate Isaacs on M2. Encouragement/pressure from Bertrand or others to terminate Isaacs. Dr Frances Shin's transfer into the Psychiatry program. Plans to termination Isaacs on his first week of M2.

49) Dr Tobey Horn, Ethan Karson, William Haynal, Donald West, Sonia Joy, Jeffrey Simon, Sarah Akerman, Dan Herrick and Anne Villari's knowledge of Isaacs' past medical training; their beliefs about his professionalism and competency, integrity, honesty; Sonia Joy (and other enumerated individuals) concern about Isaacs hospitalization on 1/13/12;Joy's pager message to Isaacs; Ryan Smith's email to Isaacs of concern; their long-term knowledge throughout Isaacs' residency that he would be terminated on M2. The Trustees official position whether or not subjecting a large cohort of GME students to education fraud is ethical or  unethical .



Authorized representative(s) for DEFENDANT TRUSTEES OF DARTMOUTH COLLEGE shall report to the USDC NH at 2:30PM on Friday September 13, 2013. Due to Isaacs' medical disability, the 7 hours permitted for this deposition shall be split into 2 sessions. The second session shall be noticed seperately , if Opposing counsel fails to suggest dates within 10 days of this notice. The first session shall proceed regardless of whether or not the second session is scheduled. The courthouse conference facility is reserved for this deposition.


Respectfully submitted,
Doctor J. D. Isaacs, Plaintiff

DATED: 8/12/13                    By _Jeffrey D. Isaacs_____
JD Isaacs

3553 W Chester PK #177
Newtown Square, PA 19073

**Jeanne Batchelder**

| | |
|---|---|
| **From:** | jeffreydi@gmail.com on behalf of Jeffrey D. Isaacs <jeffrey.isaacs.wg03 @wharton.upenn.edu> |
| **Sent:** | Tuesday, August 13, 2013 10:14 PM |
| **To:** | Kathleen Peahl; Pierre Chabot; Edward Kaplan |
| **Subject:** | Deposition Notices |
| **Attachments:** | dms30b6.pdf; riblet.pdf; kim depo.pdf |

Dear Attys Peahl & Chabot:

In light of Atty Kaplan's observation of Yom Kippur the evening of 9/13, I am serving you Dr Riblet's deposition notice, as a GME instructor/Senior resident of the Trustees, and LPMR enrollee and advisor.

I am also sending you the completed proof-of-service for the 30b6 and Kim, since I haven't heard from you for three weeks with any alternative dates. In the event you wish to change any times/venues at this point, you will need a protective order.

Regards,
Jeffrey Isaacs

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs,                                    §
        Plaintiff


v.                                                  Civil No.:  1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
        Defendants


## <u>NOTICE OF DEPOSITION BY ORAL EXAMINATION</u>


Plaintiff J D Isaacs, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure,

hereby notices DEFENDANT TRUSTEES OF DARTMOUTH COLLEGE that a 30(b)(6)

deposition shall occur on September 13, 2013 at 2:30PM. Further instructions follow:

A) This shall be a video-deposition administered by qualified personnel and under oath.

B) The Trustees of Dartmouth college shall produce authorized individual(s) with
appropriate knowledge pertaining to the following subjects. In the event the Trustees object to
any of the following subjects, they shall produce representatives for the remaining subjects:

1) Dartmouth's knowledge of Isaacs' (including when and how knowledge was gained,
and evidentiary proof of the purported enrollment) purported enrollment at USC.
Attempted FERPA requests made to USC/Keck School of Medicine.

2) Dartmouth's knowledge (including when and how knowledge was gained) of Isaacs'
Arizona internship, including DHMC's knowledge as of May 14 2011 of Isaacs' NH
Board Application verified by Finn and Bertrand. FERPA requests or attempts made to
U. Arizona HSC affiliated programs.

3) Dartmouth Psychiatry residency grievance, administrative leave, and disciplinary
procedures.

4) General knowledge and beliefs amongst the Dartmouth Psychiatry department, prior to January 17th 2012, concerning Isaacs purported USC/Keck SOM enrollment and AZ surgery residency

5) Knowledge of Isaacs' sleep abnormalities amongst Dartmouth Psychiatry

6) Christine Finn's verification of Isaacs NH Board Application, her constructive knowledge of Isaacs' AZ internship,  and specifically, Dartmouth's policy on reprimanding a GME student  for the mistake of a professor.

7)Trustees' mentality, goals, and objectives in appointing a Dean of GME. The Dean of GME's student cohort, and duties towards his students.

7) Jim Yong Kim and Alan Green's professional knowledge of Dr Baughman (NINDS director)

8) Actigraph watch clinical utilization at Dartmouth Psychiatry, and the specific indications for ordering, and loss of , Isaacs' actigraph study

9) Legal holds on emails, voicemails, and other ESI at Dartmouth pertaining to this lawsuit. Backups available. Jim Yong Kim's notice of FRCP 34 hold request on 1/15/12. Christine Fitts authorization to delete DHMC email accounts.

10) Attorney Kaplan's authority to email Isaacs requesting interception of all communications to Dartmouth, and likewise, Kaplan's authority to accept summonses after intercepting communications from Isaacs.

11) All searchable ESI at Dartmouth, for the time period January 2011 - January 2012, (EXCLUDING UNDERGRADUATE SYSTEMS) containing any of the keywords "Isaacs" or "Baughman"

12) LPMR program eligibility and acceptance rates. Description of the LPMR accreditation parent administrator (The Dartmouth Institute?) and MPH degree-issuing authority (Dartmouth?) of the program. Previous PGY2 entries. Average USMLE scores for participants. Dr Riblet's knowledge and beliefs of LPMR colleagues and procedures conveyed to Plaintiff. Dr Riblet's discussions with Finn or others about Plaintiff.

13) The contractual agreements between MHMH/DHMC and Dartmouth Psychiatry, to allow for sufficient defense of what appears to be an invalid relationship or a relationship exploited to avoid litigation. Including, but not limited to: a) Any other known Psychiatry departments in the United States with a similar structure to Dartmouth's, b) salary/paycheck arrangements for faculty (eg, is Finn salaried by DHMC or Dartmouth?), c) accounting and reimbursement relationships between DHMC and Dartmouth Psychiatry, and d) accreditation/licensure of Dartmouth Psychiatry to perform GME education of resident physicians.

14) Description of Dartmouth Psychiatry residency rotations at Dartmouth College (Dick's House), the WRJ VA, and other non-DHMC locations. Specifically, the contractual student/employee relationship of a resident to all of these institutions (ie student, employee, no privity, etc) during the rotations. The proportion of time a resident spends at DHMC versus other institutions (eg Veterans' Administration or Dartmouth College) during residency, and funding sources for each of their GME rotations.

15) All known arguments Dartmouth has asserted in a Court of law asserting that a resident is a student, rather than an employee.

16) All known arguments Dartmouth has asserted in a Court of law asserting that a resident is an employee, rather than a student.

17) All known arguments Dartmouth has asserted in a Court of law asserting that a Dartmouth Psychiatry resident has no privity with Dartmouth College.

18) Research opportunities granted to Dartmouth Psychiatry residents in the past 4 years, and their status as a student or employee of Dartmouth professors they collaborate on these projects with. Non-clinical learning opportunities generally available to Dartmouth Psychiatry GME students. Published non-clinical papers of GME students.

19) Ronald Green's thought process, motivations, and truthfulness in accusing Jennifer Connors of medicare fraud, in a closed door meeting prior to seeking her resignation, for failure to conduct/document a physical exam properly.

20) Ronald Green's thought process, motivations, and truthfulness in accusing Isaacs of medicare fraud, in a closed door meeting prior to seeking his resignation, for failure to conduct/document a physical exam properly.

21) Ronald Green's thought process, motivations, and knowledge in suggesting to Isaacs in November that he find an alternative career.

22) Knowledge of all terminations that occurred prior to a fair hearing, in the past 15 years at Dartmouth Psychiatry residency program

23) Knowledge of all terminations that occurred after a fair hearing, in the past 15 years.

24) Any anonymous "tips" conveyed to Dartmouth concerning Isaacs

25) Knowledge of Isaacs' PSG/CPAP titration and any abnormalities discovered ( academic expertise on these studies.)

26) Thomas McAllisters personal memory of Isaacs' revealing his TBI during their interview in 2010. McAllister's credentials/national expertise on TBI. McAllister's

thoughtful comments on Isaacs' interview form, in comparison to Finn's comments about "poor social skills for an MBA."

27) Knowledge of Alan Green's 20 minute abnormal eye contact with Isaacs his first day of orientation, including witnesses to the event(all Psychiatry dept orientation meeting)

28) Any documents or work-product of the Trustees regarding Isaacs' or Bakers' plea for an ethics investigation. Knowledge of the Trustee's personal receipt of the documents, and knowledge of their action and/or inaction on the pleas.

29) Any documents from Isaacs' undergraduate file on his head injury, including but not limited to a request for permission to drop chemistry due to concentration difficulties. Likewise, any documents in Dartmouth's possession regarding Christopher Chang's undergraduate file,  disciplinary actions, violence, or anger management issues.

30) Evidence of any investigation conducted into Isaacs' ethics complaint, including but not limited to Trustee Mandel's review of the matter, his opinion on the matter, his thought process in arriving at a course of action, and his current belief as to the legitimacy of Isaacs' ethics complaint and related complaints.

31)  Evidence of any action (or lack thereof) Isaacs' ethics complaint, including but not limited to Trustee Mandel's review of the matter, his opinion on the matter, his thought process in arriving at a course of action, and his current belief as to the legitimacy of Isaacs' ethics complaint and related complaints.

32) Process for review of an Ethics Complaint. Jim Yong Kim's motivation, belief, and objectives in enacting enforcement of the Business Ethics code. Jim Yong Kim's beliefs as to whether or not Isaacs' claims constitute any legitimate grounds for an ethics complaint.

33) Jim Yong Kim's beliefs, mindset, actions, and opinions regarding any information conveyed to him by or about Isaacs. Kim's beliefs regarding Isaacs' accusation of Kim's inaction , one week before his termination. Knowledge of the timing of Kim's world bank nomination, and specifically, Kim's knowledge of efforts to discredit Isaacs by terminating him 2 days prior to the nomination, without a "Fair Hearing." Kim's knowledge on the typical "Fair Hearing" procedures occuring BEFORE termination. Kim's disclosure to the United States Executive Branch (or lack thereof) of his defendant status for retaliation/negligence claims. Kim's disclosure to the World Bank (or lack thereof) of his defendant status for retaliation/negligence claims. Kim's overall reputation for apathy to "hazing" conduct at Dartmouth. Kim's travel itinerary and whereabouts during the week of attempted/failed service of summons. Kim's current opinion, and past opinions, on the validity of Finn/Bertrand's termination letter.

34) Dave Ravi's mindset, beliefs, and knowledge of Isaacs' at the time he made lewd comments about Isaacs' wife, which Isaacs' promptly emailed a complaint about to Finn.

35) David Bae's mindset, beliefs, and knowledge of Isaacs' at the time he made comments about "Ass-burgers" disease.

36) Knowledge of "One Flew Over the Cuckoo's Nest" posters in Dartmouth Psychiatry patient restraint rooms.

37) Knowledge of aggressive glances and stares towards Isaacs by Elizabeth Larusso, and Larusso's opinions, beliefs and knowledge about Isaacs at the time. Knowledge of Julie Frew's complaints about Isaacs on the Thanksgiving shift, her opinions, beliefs and knowledge at the time. Knowledge of Matthew Duncan's negative performance reviews re Isaacs, his opinions, beliefs, and knowledge of Isaacs at the time. Knowledge of Douglas Noordsy's negative performance reviews re Isaacs, and his accusation regarding a titration entered by Dave Ravi into EPIC , his opinions, beliefs, and knowledge of Isaacs at the time. Noordsy's IEA justification for a patient Isaacs opposed the grounds for IEA solely on the basis she exited the facility wearing socks (choosing to walk to her husband's car in the parking lot without sneakers).

38) Dartmouth's beliefs and opinions and knowledge on the plausibility of both Finn and Bertrand verifying a document that mentions Arizona on four separate pages, but failing to notice entire paragraphs concerning Arizona.

39) Dartmouth's beliefs, evidentiary support, and opinions regarding the correctness of each claim Finn/Bertrand issued in Isaacs' termination letter.

40) Any witnessed symptoms of PTSD Isaacs exhibited at Dartmouth, including but not limited to sweating, isolative behavior, social withdrawal, incapacitating anxiety, concentration difficulties, psychotic features, and/or sleep irregularities. Knowledge and description of Dartmouth Psychiatry/WRJ VA's national pre-eminence in PTSD research. The WRJ VA's relationship (contractually) to a resident in the GME program and to Dartmouth Psychiatry.

41) Any witnessed symptoms of TBI Isaacs exhibited at Dartmouth, including but not limited to social withdrawal, stimuli anxiety, concentration difficulties, frontal brain/dysexecutive disorder, and/or sleep irregularities. Knowledge and description of Jim Yong Kim's Ivy League Concussion initiative, his reasons, knowledge of TBI, and motivations in forming the consortium.

42) Knowledge of any relationships or work collaboration between Dr Baughman (NINDS) and any Dartmouth Psychiatry member.

43) Knowledge of criticism against Isaacs, conveyed via email or verbally by approximately 30 individuals at Dartmouth.

44) Dartmouth's employment relationship with any members of the Federal Judicial or Executive Branch, or their immediate family members.

45) Dartmouth psychiatry's financial accounting for the past 5 years, including but not limited to, operating losses/gains, reimbursement from federal /state entities for residency training, and, the financial impact of each resident physician vacancy for the past 5 years.

46) Any documents in Dartmouth's custody or control harassment/bullying patterns against Isaacs. including but not limited to his Dartmouth roommate's discipline for harassing Isaacs.

47) Dartmouth Counsel O'Leary's knowledge, opinion, and beliefs about Isaacs when he intercepted a telephone call to Jim Yong Kim's office in early February 2012 "I'm sure you do wish you knew what happened... You can't sue us, you sue everybody." O'Leary's training in retaliation and discrimination law and any credentialing requirements that he be trained in such subjects to serve as Dartmouth Counsel.

48) Dr Harley Friedman's communications with Defendant Finn and their knowledge, goals, and motivations to terminate Isaacs on M2. Encouragement/pressure from Bertrand or others to terminate Isaacs. Dr Frances Shin's transfer into the Psychiatry program. Plans to termination Isaacs on his first week of M2.

49) Dr Tobey Horn, Ethan Karson, William Haynal, Donald West, Sonia Joy, Jeffrey Simon, Sarah Akerman, Dan Herrick and Anne Villari's knowledge of Isaacs' past medical training; their beliefs about his professionalism and competency, integrity, honesty; Sonia Joy (and other enumerated individuals) concern about Isaacs hospitalization on 1/13/12;Joy's pager message to Isaacs; Ryan Smith's email to Isaacs of concern; their long-term knowledge throughout Isaacs' residency that he would be terminated on M2. The Trustees official position whether or not subjecting a large cohort of GME students to education fraud is ethical or unethical .

Authorized representative(s) for DEFENDANT TRUSTEES OF DARTMOUTH COLLEGE shall report to the USDC NH at 2:30PM on Friday September 13, 2013. Due to Isaacs' medical disability, the 7 hours permitted for this deposition shall be split into 2 sessions. The second session shall be noticed seperately , if Opposing counsel fails to suggest dates within 10 days of this notice. The first session shall proceed regardless of whether or not the second session is scheduled. The courthouse conference facility is reserved for this deposition.

Respectfully submitted,
Doctor J. D. Isaacs, Plaintiff

DATED: 8/13/13                    By_____ _____
JD Isaacs

3553 W Chester PK #177
Newtown Square, PA 19073

## CERTIFICATE OF SERVICE

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing DEPOSITION NOTICE was delivered electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

Executed on this 13th day of August, 2013.

_____

J. D. ISAACS
Plaintiff, *pro se*

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs,                                        §
           Plaintiff

v.                                                                Civil No.:  1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
           Defendants


## NOTICE OF DEPOSITION BY ORAL EXAMINATION


Plaintiff J D Isaacs, pursuant to Rule 30 of the Federal Rules of Civil Procedure, hereby

notices DR NATALIE V. B. RIBLET (Plaintiff's Supervising & senior resident physician for

4 weekend/overnight training shifts at MHMH/DHMC; Student/Graduate, Trustees of

Dartmouth College LPMR/MPH program; Dartmouth Psychiatry GME Supervising resident

for Plaintiff) that a deposition shall occur on September 13, 2013 at 1:45PM. Further

instructions follow:

   1) This shall be a video-deposition administered by qualified personnel and under oath.

   2) Dr Riblet is to expected to be questioned about the following matters:
   a) Dr Riblet's knowledge of Plaintiff's past history at Arizona and California;
   b) Plaintiff's performance during shifts Dr Riblet supervised/instructed
   c) Dr Riblet's communications with Dr Finn, Dr Frew, Dr Larusso concerning Plaintiff
   d) Dr Riblet's advising/mentoring of Plaintiff regarding the LPMR MPH program
   e) Dr Riblet's call shift on 1/13/12; any HIPAA violations she witnessed
   f) Plaintiff's general reputation amongst Psychiatry residents/staff throughout his six
month residency training
   g) other substantive matters to be determined at the deposition

3) DR NATALIE V. B. RIBLET shall report to the USDC NH at 1:45PM on Friday September 13, 2013. The facility is reserved for her deposition.


Respectfully submitted,
Doctor J. D. Isaacs, Plaintiff

DATED: 8/13/13            By _____
JD Isaacs
3553 W Chester PK #177
Newtown Square, PA 19073

## CERTIFICATE OF SERVICE

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing PRO SE STATUS CHANGE was delivered via USPS & electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

Executed on this 13th day of August, 2013.


_____
J. D. ISAACS
Plaintiff, *pro se*

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs,                                    §
        Plaintiff

v.                                                 Civil No.:  1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
        Defendants


## NOTICE OF DEPOSITION BY ORAL EXAMINATION


Plaintiff J D Isaacs, pursuant to Rule 30 of the Federal Rules of Civil Procedure, hereby

notices DR JIM YONG KIM (PRESIDENT, DEFENDANT TRUSTEES OF DARMOUTH

COLLEGE at time of filing) that a deposition of said officer shall occur on September 13,

2013 at 1PM. Further instructions follow:

1) This shall be a video-deposition administered by qualified personnel and under oath.

2) Kim is to answer questions related to his:
a) knowledge of Plaintiff's past history at Arizona and California;
b) receipt of Plaintiff's request , dated 1/15/12, for Rule 34 evidence preservation
c) receipt of Plaintiff's requests for ethics / criminal investigations
d) knowledge of deletion of Plaintiff's email accounts, despite the Rule 34 request
e) Communications with Dean Bertrand or other individuals regarding Plaintiff
f) professional knowledge of former NIH Director Baughman
g) knowledge of his ethics code enactment at Dartmouth; Hazing controversies
h) knowledge of timing of World Bank nomination, Plaintiff's termination without Fair
hearing 1 week prior to nomination; Isaacs' complaint of Kim's inaction, 2 weeks prior.
    i) additional relevant matters.

3) DR JIM YONG KIM shall report to the USDC NH at 1PM on Friday September 13,
2013. The facility is reserved for his deposition. This notice supercedes a notice for

September 11, due to scheduling changes. In the event Kim already reserved 9-11-13 for this deposition, please contact Plaintiff to work out scheduling possibilities.


Respectfully submitted,
Doctor J. D. Isaacs, Plaintiff

DATED: 8/13/13              By _____*Jeffrey D. Isaacs*_____
JD Isaacs
3553 W Chester PK #177
Newtown Square, PA 19073

## CERTIFICATE OF SERVICE

    I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing DEPOSITION NOTICE was delivered electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

    Executed on this 13th day of August, 2013.


_____*Jeffrey D. Isaacs*_____
J. D. ISAACS
Plaintiff, *pro se*