UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs, §
    Plaintiff

v.                                                     Civil No.: 1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
    Defendants

## REQUEST FOR ADMISSIONS PROPOUNDED BY PLAINTIFF DOCTOR J.D. ISAACS TO DEFENDANTS DARTMOUTH-HITCHCOCK-MEDICAL CENTER AND MARY HITCHCOCK MEMORIAL HOSPITAL , DEMANDING RESPONSES BY DR MARC BERTRAND

Plaintiff, pursuant to Rule 36 of the Federal Rules of Civil Procedure, orders Marc Bertrand , an officer/director/managing agent of Defendants, to ADMIT or DENY, and fully in writing, under oath, the following statements . In the event no response is served upon Plaintiff within thirty (30) days, the statements shall be deemed ADMITTED.

1) On May 10, 2011 you certified the correctness of Plaintiff's Application for Training License to the New Hampshire Board of Medicine.

2) No later than May 10, 2011, you were noticed, on Page 3 of the aforementioned document, about Isaacs' resignation from a preliminary surgery internship at University of Arizona Health Sciences Center in Tucson (hereafter "Arizona Surgery Internship").

3) Pursuant to the NH Board Training License application instructions, Isaacs appended an entire page (hereafter "Page 5") to the document detailing his resignation from the Arizona Surgery Internship.

4) No later than May 10, 2011, you noticed Page 5 mentioned Plaintiff's concern that the Arizona Surgery Internship was on ACGME probation.

5) No later than May 20, 2011, you possessed knowledge that Isaacs had not mentioned the Arizona Surgery Internship on his ERAS application.

6) Having been noticed of Isaacs' entire ERAS and NH Board Application, by May 20 2011 both you and Christine Finn waived any objection to the purported ERAS omission of the Arizona Surgery Internship.

7) You completed Anesthesiology residency training at the University of Arizona Health Sciences Center in Tucson, for a period of approximately three years.

8) You completed Cardiac Anesthesiology fellowship training at the University of Arizona Health Sciences Center in Tucson, for a period of approximately one year.

9) You completed Neuroanesthesia fellowship training in Arizona, for a period of approximately one year.

10) You worked with numerous surgeons in Arizona during the course of your graduate medical education.

11) As of May 10, 2011, you maintained personal and/or professional relationships with surgical staff and/or GME teaching affiliates at the University of Arizona Health Sciences Center in Tucson.

12) No later than September 30, 2011, you had communicated or discussed Isaacs' residency in Arizona with past colleagues in Arizona.

13) You, or any other agent of the Defendants, made medical education records requests to the Arizona Surgery Internship concerning Isaacs.

14) You, or any other agent of the Defendants, received knowledge of Isaacs' medical education in a fashion, method, or mechanism that was not compliant with FERPA and/or HIPAA regulations.

15) Page 5 no longer exists in Plaintiff's GME "Training License" portfolio.

16) Page 5 was intentionally removed from Isaacs' GME "Training License" portfolio.

17) Isaacs DHMC Outlook email account was terminated at least 1 month prior to his dismissal from Dartmouth.

18) You discussed Isaacs' Arizona Surgery Residency with Finn and or other colleagues prior to commencement of Isaacs' Dartmouth Psychiatry residency training.

19) You have knowledge or belief that other Dartmouth / DHMC staff knew about Isaacs' Arizona Surgery Residency program enrollment, throughout the course of his training at DHMC.

20) During Isaacs' first week of residency at Dartmouth, at least some of his M2 colleagues and instructors had either vague or precise knowledge of Isaacs' Arizona Surgery Internship.

21) During Isaacs' first week of residency at Dartmouth, Isaacs was effectively hazed and or punished, including but not limited to being ordered to conduct inappropriate rectal examination on an elderly patient with terminal metastatic cancer.

22) You have viewed portions of Isaacs' ACGME complaint against the Arizona Surgery Internship.

23) The ACGME complaint, on its first page, details a failure to inspect a "wound bandage" allegation Arizona made against Isaacs.

24) On Isaacs' last day at DHMC, Harley Friedman alleged Isaacs failed to inspect a "wound bandage" and therefore committed Medicare fraud.

25) The "wound bandage" criticism and similar allegations against Isaacs were generally made in bad faith and resulted in his medical deterioration.

26) In May 2012 Isaacs requested that you arrange a videoconference "fair hearing," because he felt "unsafe" on DHMC premises.

27) You responded by emailing 4 (four) denials of Isaacs' requests to his various email accounts.

28) Such activity was done with the intentional desire to ridicule, poke fun at, or intimidate Isaacs.

29) At the time of sending the four emails, you had knowledge of Isaacs' PTSD diagnosis and other serious medical conditions.

30) You typically do not email four copies of the same email to individuals you communicate with.

31) In fact, you have never emailed four copies of the same email to an individual during the course of usual business correspondence.

32) At the time of sending the four emails, you possessed knowledge of Isaacs' use of the ReadNotify email tracking utility.

33) You were aware, by May 2012, that Isaacs invoked ReadNotify on emails he sent to USC and / or to Arizona.

34) In fact, your four duplicative emails regarding the "fair hearing" were ridiculing Isaacs' particular methods and styles of email communication.

35) You issued a termination letter to Isaacs in March 2012, alleging he failed to disclose the Arizona Surgery Internship on ERAS.

36) The termination letter referenced in #35 thereby materially omits your May 2011 waiver to any objection on the purported ERAS omission.

37) Such a material omission mentioned in #36 constitutes fraud and unfair business practices and ethics violations.

38) You conveyed a termination letter containing material omission or fraud to the NH Board of Medicine.

39) As Dean of GME and Director of GME, you have close working relationships and responsibilities with the NH Board of Medicine.

40) Conveying the aforementioned false termination letter to Isaacs via email and post constituted federal wire and mail fraud.

41) The termination letter you issued in March 2012 alleged Isaacs' failed to notify you of a purported enrollment at USC.

42) At the time of issuing the letter, you possessed no legally valid evidence of Isaacs' enrollment at USC.

43) You terminated Isaacs' GME enrollment at Dartmouth Psychiatry, without giving him a prior fair hearing.

44) The DHMC bylaws promise or suggest the requirement of a fair hearing before termination of a resident physician.

45) Historically and or typically, you offered resident physicians a fair hearing prior to terminating them.

46) With the exception of Isaacs, you have never personally terminated a resident without either a) their consent, or b) a "fair hearing"

47) You possess knowledge or belief that during the course of Isaacs' Arizona Surgery Internship, his program directors has knowledge of Isaacs' 2006 federal litigation.

48) You have ever engaged in direct communications with Dr Jim Yong Kim.

49) You have ever engaged in direct communications with Dr Jim Yong Kim concerning Isaacs.

50) At the time of terminating Isaacs, Dr Kim had conveyed to you, either directly or through any third party, including attorneys, knowledge of an approaching important event.

51) At the time of terminating Isaacs, Dr Kim had conveyed to you, either directly or through any third party, including attorneys, knowledge that he would be nominated by the Executive Branch of the United States to serve as the next President of the World Bank.

52) At the time of terminating Isaacs, you were in receipt of an email criticizing Dr Kim for inaction on Isaacs' criminal and ethics complaints.

53) Isaacs was terminated, at least in part, to discredit him before an upcoming important event.

54) Based on your knowledge and or belief, Isaacs was terminated with Dr Kim's assent.

55) Isaacs was terminated, at least in part, to discredit his claims prior to Kim's political appointment or nomination for appointment to the World Bank.

56) As a Dean of Dartmouth Medical School, a resident physician such as Isaacs was one of your students.

Respectfully submitted,

Doctor J. D. Isaacs, Plaintiff

DATED: 7/28/13   By *Jeffrey D. Isaacs* (signature)
JD Isaacs
3553 W Chester PK #177
Newtown Square, PA 19073

===========================================================================

   The foregoing answers to interrogatories are true and complete to the best of my knowledge.


   Dated:_____


   Signed: _____


   Printed Name: _____



   STATE OF _____
   COUNTY OF _____

   Personally appeared before me, on this _____ day of _____, 2013, the above-named, _____, and acknowledged, swore and affirmed, under oath, that the facts herein are true and accurate to the best of her knowledge and belief.


            _____
            Notary Public/Justice of the Peace

            My Commission Expires: _____