UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Dr. J.D. Isaacs, §
    Plaintiff

v.                                             Civil No.: 1:12-cv-40-JL

Dartmouth-Hitchcock Medical Center,
Mary Hitchcock Memorial Hospital
Dartmouth Medical School and
Doctor Christine T. Finn,
    Defendants

**SECOND SET OF INTERROGATORIES PROPOUNDED BY PLAINTIFF DOCTOR J.D. ISAACS TO DEFENDANTS DARTMOUTH-HITCHCOCK-MEDICAL CENTER (ATTN TO DR GLEN GREENOUGH, ATTENDING PHYSICIAN/OFFICER AT THE DARTMOUTH SLEEP CENTER)**

Plaintiff, pursuant to Rule 33 of the Federal Rules of Civil Procedure propound the following interrogatories to be answered separately and fully in writing, under oath, and within thirty (30) days by Glen Greenough:

1) Please describe, in your medical opinion, Isaacs' medical diagnosis (as a sleep medicine neurologist) and any possible differential diagnosis, citing appropriate references to his medical chart to support your discussion. If not included in your differential, please explain how Isaacs' sleep problems relate to or are exacerbated by his diagnoses of Asperger's Disease and TBI.

2) Did you ever speak with Isaacs' Program Directors (Christine Finn and/or Ronald Green), or his colleagues in Adult Psychiatry (e.g. Dan Herrick), about Isaacs' medical condition? If so, please describe, in full detail, the nature of these discussions. Include any documents that evidence these discussions, such as emails between yourself and Finn.

3) Did Isaacs report symptoms to your department, such as difficulty staying awake in morning rounds, feeling on the verge of syncope, frequent daytime naps, and/or near/actual car accidents? Please describe any symptoms Isaacs complained about to you or your colleagues.

4) For each of the symptoms listed above, could these symptoms impact his ability to safely perform the duties of a resident physician? State yes or no, with an explanation, for each symptom. For each symptom, please identify whether that symptom, by itself, warrants medical leave and/or workplace accommodation for a resident physician to safely perform his duties.

5) Why was an actigraph ordered before Isaacs' PSG?

6) Is it standard of care to discard and/or cancel an actigraph (after it has been recording), in the event a PSG shows sleep apnea? Please describe how an actigraph may provide useful information to augment a PSG.

7) Did you bill for the actigraph study? If yes, describe if it was cancelled before or after billing, and whether or not any efforts made to repeat the study.

8) Did Isaacs' actigraph actually fail and suffer device malfunction data loss? If so, describe any efforts you made to speak with the manufacturer about said failure. Include any documents, including postage receipts for return of unit to manufacturer, and/or warranty exercise.

9) How many times did this type of actigraph failure occur during your practice of sleep medicine? Describe each incident.

10) At the time of making the annotation, were you(Greenough) aware that, in the weeks prior to this annotation, Isaacs' had noticed criminal/civil/ethics complaints against DHMC and Dartmouth? Discuss your knowledge (or lack thereof) that Isaacs' entire DHMC outlook email account disappeared around the time of the actigraph data loss. Discuss your knowledge (or lack thereof) of any systemic retaliation/cover-up at DHMC occurring, including, without limitation, actions by Risk Management to limit exposure. Likewise, please explain in full the circumstances surrounding the nearly three month delay between Isaacs' actigraph study, and Greenough's annotation in Isaacs' patient chart that data was lost.

11) Did Isaacs request that you(Greenough) complete documentation for his disability claim with the Hartford? In light of the PSG and the CPAP titration, and Isaacs' symptoms, please describe what evidence you had, at the time of his request, that would support a disability leave. Include, specifically, whether or not falling asleep in rounds , feeling unsafe driving to work, frequent(daily 1-2 hour) naps on active shifts, and impaired concentration would warrant medical leave.

12) Did you complete the disability documentation that Isaacs requested? If not, please explain fully why you chose not to. Discuss whether or not you were aware that your declaration of Isaacs' disability would impact pending litigation and criminal complaints against Dartmouth/DHMC.

13) Did Isaacs have compelling/pronounced/obvious improvement from the CPAP titration? Discuss in full detail, comparing to other 'typical' sleep apnea patients. In your answer, compare his AHI, sleep quality, and similar metrics, during the PSG and the subsequent titration.

14) Does sleep apnea spontaneously develop over the course of days or weeks? Discuss how Isaacs' sudden sleep deterioration, in the days and weeks following commencement of employment at DHMC, could be explained by current medical science. Discuss the role that emotional distress and/or hazing contributed to the sleep symptoms Isaacs' described.

15) Do you believe Isaacs' had a negative reputation at DHMC/Dartmouth? Discuss how this reputation (whether deserved or not), and resultant "shunning" by large numbers of colleagues, might have distressed Isaacs to the point of exacerbating/causing a sleep disorder.

16) Do you believe a resident physician with a sleep disorder may be afforded reasonable accommodations under the Americans with Disability Act, including without limitation, a part-time schedule? Describe any accommodations you would recommend. Describe your opinion on part-time schedules as accommodation. Describe these accommodations in light of Isaacs' condition, and whether or not they would warrant trial before termination of employment.

17) Describe any and all EEG, EKG, respiratory, muscular, or other recorded abnormalities in Isaacs' PSG and/or CPAP titration. For each abnormality, attach a PDF or JPEG (or similar standard) printout of all related recording for that time period to this interrogatory.

18) Did Isaacs have any evidence of a ventricular tachycardia or other serious cardiac abnormalities, which he had on a later PSG at Penn Sleep Center? Include (without limitation) your belief as to whether or not Isaacs' suffered bradycardia during any of your studies. Mention any notification you made to Isaacs of these abnormalities. Mention any evidence of ST abnormalities.

19) In late 2012, you(Greenough) mailed Isaacs a CD copy of his DHMC sleep studies. Please explain any knowledge you possess about why the doctors at the University of Pennsylvania sleep center might have been unable to open any of the data you provided. Please verify a copy of Isaacs' entire data and include a CD copy with this interrogatory. If possible, please export the data to a non-proprietary form like PDF.

20) Could an actigraph provide medical-legal evidence of a disability? In other words, describe how the light recorder and motion recorders could evidence sleeping during shifts, isolative behavior, reclusiveness, Aspergers, PTSD, and other medical conditions relating to emotional abuse, neuropsychiatric illness and/or hazing.

21) If it still existed, discuss how Isaacs' actigraph data (which showed 10 hours roughly of nighttime sleep, followed by 1-2 hours of sleep and isolation on active shift) would support civil/criminal complaints for emotional abuse. In Isaacs' case, where he isolated himself in a dark room for hours a day at DHMC, and took daily naps, and slept 9-10 hours at night, describe how the actigraph could capture and report such behavior. Would destruction of the actigraph assist Isaacs' program directors in their claim that Isaacs does not have any disability, and that he was not emotionally abused?

22) Did you abandon Isaacs as a patient? Describe your reasoning. Mention the harm to your practice or Isaacs that would occur if you didn't abandon him. Additionally, list all patients you have abandoned in the past 6 years.

23) Do you have any knowledge about Isaacs' lawsuit against USC? If so, list every person who ever communicated any knowledge of this to you. If you are unsure whether or not your knowledge is accurate or not, list all purported facts conveyed to you (and from whom).

24) Do you have any knowledge about Isaacs' surgery internship at Arizona? If so, list every person who ever communicated any knowledge of this to you. If you are unsure whether or not your knowledge is accurate or not, list all purported facts conveyed to you (and from whom).

25) In general, did you witness any of Isaacs' colleagues (ie members of Dartmouth Department of Psychiatry) ever mention any relationship (purported or confirmed) between Isaacs and USC or University of Arizona? If so, describe each incident and identify each witness.

Respectfully submitted,

Doctor J. D. Isaacs, Plaintiff

DATED:                By_____*Jeffrey D. Isaacs*_____
JD Isaacs
3553 W Chester PK #177
Newtown Square, PA 19073

      The foregoing answers to interrogatories are true and complete to the best of my knowledge.

Dated:_____

_____
                                  Dr Glen Greenough

STATE OF _____
COUNTY OF _____

      Personally appeared before me, on this _____ day of _____, 2013, the above-named, Glen Greenough, and acknowledged, swore and affirmed, under oath, that the facts herein are true and accurate to the best of her knowledge and belief.

_____
Notary Public/Justice of the Peace

My Commission Expires: _____