Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| DOCTOR J. D. ISAACS | )<br>) |
| Plaintiff, *pro se*, | ) Case No. CV-12-40-JL<br>) |
| -V- | )<br>) |
| DARTMOUTH HITCHCOCK MEDICAL CENTER;<br>DOCTOR CHRISTINE FINN;<br>MARY HITCHCOCK MEMORIAL HOSPITAL;<br>TRUSTEES OF DARTMOUTH COLLEGE; | ) **MEMORANDUM OF LAW**<br>) **FOR SANCTIONS & INJUNCTION**<br>)<br>) |
| and JOHN DOE, | )<br>) |
| Defendants. | )<br>) |

# MEMORANDUM OF LAW FOR SANCTIONS AND INJUNCTION

<u>General Applicability of Federal and State Law</u>

This motion, and the case as a whole, pertains to the retaliatory deprivation of Plaintiff's right to participate in federally funded physician training programs. His constitutional right to property – in this case his education credentials and qualifications – is being deprived to retaliate against his exercising his constitutional right to due process eight years ago.  For two years, Defendants and their counsel have illegally sought to 'break' a seal on prior disputed educational records. A most basic federal question exists as to whether it is constitutionally just to, surreptitiously and fraudulently, destroy a physician's career, over settled and sealed records.

Medicare & Medicaid allocated a four-year budget to train the Plaintiff in any ACGME-approved residency, such as that operated by the Defendants. It is alleged Defendants fraudulently accepted eight months of this allocation. Plaintiff is unable to obtain another residency program, as the new program would lose out on eight months (roughly $80,000) of training fees. Moreover, Defendants issued a false termination letter that precludes Plaintiff from obtaining another residency training position. The injunctive relief sought by Plaintiff immediately reestablishes his ability to participate in federally funded residency training, in light of recently discovered evidence of document destruction and fraud.

Plaintiff maintains that violations of New Hampshire and United States criminal code occurred during the retaliatory deprivation of his civil rights. Under both FRCP and applicable criminal code, this Motion for Sanctions and Injunctive Order seeks forensic examination, at Defendants cost, of all relevant emails/ESI pertaining to Plaintiff.

<u>The Court has broad authority to investigate and sanction obstruction of justice</u>

Discovery disputes frequently address attorney's fees, adverse inference instructions, and occasionally, default judgments. This does not preclude more rare orders of contempt, criminal investigation, sanctions, and referral to law enforcement, which Plaintiff hereby seeks. Plaintiff's motion describes a *prima facie* case of fraud initiated by Dartmouth's Dean Bertrand, and a growing cover-up involving destruction and non-production of critical emails. Plaintiff's civil claims allow for discovery of criminal violations. The Court has authority to enforce 18 U.S.C. § 1503 during discovery, which prohibits obstruction of justice. Section 1503′s omnibus or "catch-all" clause is broadly written:

*" Whoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection"*

Section 1503 "is broad enough to cover the attempted corruption ... in a civil action in a Federal District Court." *Roberts v. United States*, 239 F.2d 467, 470 (9th Cir. 1956). *United States v. Lundwall*, 1 F. Supp. 2d 249 (S.D.N.Y. 1998) (refusing to dismiss indictment under section 1503 for corporate executives who destroyed documents while litigating a civil discrimination lawsuit). To the extent Defendants have been transparent with their attorneys, civil attorneys may be subject to investigation for knowingly false filings or participation in evidence destruction. *Nye v. United States*, 137 F.2d 73 (4th Cir.) (by implication), cert. denied, 320 U.S. 755 (1943).

<u>Duty to Preserve Evidence and Sanctions for failure to preserve</u>

*"While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation it is under a duty to preserve what it knows, or reasonably*

*should know, will likely be requested in reasonably foreseeable litigation."* Scott v. IBM Corporation, 196 F.R.D. 233 (D.N.J. 2000)

In this case, Plaintiff notified Defendants on January 16th 2012 about their duty to preserve his and his supervisors/colleagues emails. Such a notice was reasonable, and it appears, a day or two later, the Defendants retaliated and deleted evidence. Plaintiff informed Defendants that emails were being deleted, but they proceeded to delete them. It should be noted that Defendants have abused and harassed Plaintiff since his first day of work, and Plaintiff cannot rule out the possibility that Defendants never actually deleted his emails, and are simply harassing him by claiming the emails no longer exist.

*Zubulake V,* 2004 WL 1620866 (S.D.N.Y. July 20, 2004) set forth a standard for seeking an adverse inference instruction, which Plaintiff seeks regarding Defendants' knowledge of AZ/CA, and inappropriate hazing conduct. The standard from *Zubulake* is as follows:

(1) party having control over evidence had duty to preserve at time it was destroyed;

(2) that the records were destroyed with a culpable state of mind;

(3) that the destroyed evidence was relevant to party's claim or defense so that trier of fact could find that it would support that claim or defense.

Dartmouth had a duty to maintain Plaintiff's emails, several months before he was terminated, and during federal litigation nonetheless. These emails, and any containing the search term "Isaacs", are relevant to Plaintiff's claim and most probably contained critical evidence. A culpable state of mind, under *Zubulake* Second Circuit jurisdiction, includes either a) negligence when the data is relevant, or b) intentional destruction. Plaintiff asserts evidence exists suggesting the emails were intentionally destroyed, given the multiple warnings Plaintiff issued to defendants not to delete the emails. Even in the unlikely event forensic evidence determines that the emails were accidentally destroyed, they were absolutely relevant and thus Defendants must be sanctioned in either case.

<u>Timing of Evidence Deletion May Weigh Heavily in Sanctions Determination</u>

In *Barrette Outdoor Living, Inc. v. Michigan Resin Representatives*, No. 11-13335, 2013 WL 3983230 (E.D. Mich. Aug. 1, 2013), sanctions were issued for Defendant's bad faith failure to preserve his cellular phone records, and the district court adopted the recommendations of the Magistrate Judge and ordered monetary sanctions equaling $35,000 and an irrefutable adverse inference that the phone and deleted files would have contained information unfavorable to the defendant. The decision cited reliance on the suspicious timing of the deletion of the ESI.

In this case, an entire hospital email account was deleted days after the Plaintiff noticed federal litigation and criminal complaints. Plaintiff was not even placed on formal administrative leave, let alone terminated, before his email accounts were deleted. This Court may weigh the timing of the deletion in sanctioning the defendants.

<u>The Court may appoint a Special Master to review discovery violations</u>
In *E.E.O.C. v. Fry's Elecs*. Inc., No. C10-1562RSL (W.D. Wash. July 3, 2012), the court twice imposed serious sanctions for Defendant's discovery violations and ordered the appointment of a Special Master who was granted broad access to Defendant's records and personnel to "review defendant's document retention, search, and disclosure activities" and to "report to the court regarding any as-of-yet undiscovered discovery violations."

In this case, Plaintiff alleges multiple crimes occurred at Dartmouth, and asserts these warrant forensic analysis and/or Special master review of ESI.

JDIsaacs v. Dartmouth
Case No. 12-CV-40-JL

<u>Fees May Be Designated to Plaintiff to Cover Litigation Necessitated by Destroyed Evidence</u>

In *Multifeeder Tech. Inc. v. British Confectionery Co. Ltd.,* No. 09-1090 (JRT/TNL), 2012 WL 4128385 (D. Minn. Apr. 26, 2012), the Magistrate Judge recommended that an adverse inference be issued, that Defendant be held in contempt, and that significant monetary sanctions of $600,000 be imposed upon his determination that two of Defendant's employees had intentionally spoliated evidence. The sanctions were to cover forensic analysis and additional anticipated legal fees Plaintiff would incur from a more complex case.

In this case, Plaintiff points out that three well qualified family attorneys needed to withdraw from this case due to growing complexity and discover resistance. Plaintiff would like to hire a national firm experienced in federal litigation. Because this case is significantly more complex as a result of evidence spoliation and non-production of critical discovery documents, Plaintiff seeks sanctions of $900,000 for attorney's fees to cover ongoing litigation by a professional litigation firm. Put simply, if Defendants had turned over all the emails containing the term "Isaacs," this case would be at the summary judgment level and would be manageable *pro se*. Surely Dean Bertrand and Defendant Finn knew about USC/AZ since Day 1 of Plaintiff's employment, and emails would likely elaborate upon what happened to Plaintiff at Dartmouth. These emails no longer reliably exist (even if Dartmouth salvages some of them, that is not acceptable), and now require complex discovery, national communication data subpoenas, out-of-state witness parties, etc, that would tax any *pro se* Plaintiff. Sanctions to pay for an experienced federal litigator should be assigned to Dartmouth.

<u>District Courts have authority to order outside e-discovery forensic analysis</u>

In *Carrillo v. Schneider Logistics*, Inc., 2012 WL 4791614 (C.D. Cal. Oct. 5, 2012),

JDIsaacs v. Dartmouth
Case No. 12-CV-40-JL

plaintiffs filed a motion for discovery sanctions against the defendant for its allegedly deficient search and production of responsive email the defendant previously claimed did not exist. The court ordered monetary sanctions against the defendant for failing to conduct a reasonably diligent search, improperly withholding responsive documents, and failing to adequately preserve evidence. The court also ordered the defendant to pay an outside e-discovery vendor to not only to search for and collect responsive documents, but also to determine whether spoliation occurred.

Similarly, in *Bobrick Washroom Equipment, Inc. v. American Specialties, Inc*., 2012 WL 3217858 (C.D. Cal. Aug. 8, 2012), the court ordered an independent expert, at the defendant's expense, to conduct a search of the defendant's servers, and later found that monetary sanctions were sufficient to mitigate prejudice to the plaintiff.

In *Pouncil v. Branch Law Firm*, 2012 WL 777500 (D. Kan. Mar. 7, 2012), the Court ordered a forensic exam of ESI , at Defendant's expense, to decide whether or not to grant leave to Plaintiff to file for sanctions.

*Peter Kiewit Sons, Inc. v. Wall Street Equity Group, Inc*., 2012 WL 1852048 (D. Neb. May 18, 2012). In *Kiewit*, Plaintiff's sought a search of ESI for the keyword "Kiewit," similar to this Plaintiff's requested keyword search for "Isaacs." Nothing was produced initially and Defendants denied any responsive results for "Kiewit," which lead the District Court for Nebraska to order forensic analysis of ESI. After forensic analysis showed the Defendants had falsified testimony, further sanctions were levied against the Defendants.

In *Rudolph v. Beacon Indep. Living, LLC*, 2012 WL 2804114 (W.D.N.C. July 10, 2012) the defendant and witness were ordered to submit their computers to a forensic examiner of the plaintiff's choice.

<u>The Court has "broad discretion to fashion an appropriate sanction as long as that it is proportionate to the circumstances"</u>

In *Banks v. Enova Fin.*, 2012 WL 5995729 (N.D. Ill. Nov. 30, 2012), the magistrate judge sanctioned the defendant with a presumption at the summary judgment stage about a critical voicemail, and if the case went to trial, the magistrate recommended that the jury be instructed with a "spoliation charge."

In *Pringle v. Adams*, 2012 WL 1103939 (C.D. Cal. Mar. 30, 2012), the District Court granted summary dismissal of a claim after it was proven that evidence was spoliated. Intentionally spoliated evidence may be cause for dismissal or default judgement, on the rational that the spoliated evidence may have been the critical 'smoking gun' required to prove or disprove a claim. Thus, in *E.E.O.C. v. Fry's Electronics, Inc.*, 2012 WL 1642305 (W.D. Wash. May 10, 2012), the court allowed the EEOC "considerable leeway in arguing what information might have been gleaned from the computer hard drivers [sic] that were destroyed."

In *Day v. LSI Corp.*, 2012 WL 6674434 (D. Ariz. Dec. 20, 2012), an action alleging breach of an employment contract, discrimination, and other related claims, the plaintiff accused the defendant of failing to preserve relevant documents. Upon receiving notice of the lawsuit, the defendant's general counsel notified several employees of their preservation duties, but failed to provide the same notification to a relevant custodian. The court further found that the defendant's general counsel failed to comply with its own document retention policies. Turning to the question of an appropriate sanction, the court noted that the "individual determining the parameters" of the preservation duties, the defendant's general counsel "was not simply a clerical employee." Further, because some

of the lost evidence was particularly relevant to one of the plaintiff's claims, the risk of substantial prejudice was "great." Thus, the court awarded the plaintiff partial default judgment as to that claim.

In Plaintiff's case, the critical evidence is ESI to support the reasonable belief that Plaintiff's colleagues and supervisors at Dartmouth knew, throughout his six month residency, about past litigation with Arizona and California. Given the "broad discretion" to enforce due process, this Honorable Court may hereby order a preliminary injunction, summary judgment presumption, and/or jury instruction appropriate to the scope of the case.

<u>The underlying ESI requested is reasonable and should not have been withheld; Civil claims for Obstruction of Justice may result from discovery violations</u>

In *Freeman v. Dal-Tile Corp.*, 2012 WL 4577718 (E.D.N.C. Oct. 2, 2012), the plaintiff was granted leave of court to add a claim of civil obstruction of justice for the defendant's alleged failure to preserve email messages and other electronic data after it was put on notice as to the plaintiff's potential claims. The court found that the emails sought by Plaintiff were likely relevant and that the list of search terms proposed by the plaintiff were appropriately limited in number and scope. Accordingly, the defendant was ordered to conduct the requested searches, produce any responsive, non-privileged material, and provide a privilege log as appropriate.

Similarly, in *Ripberger v. Corizon*, Inc., 2012 WL 4340716 (S.D. Ind. Sept. 20, 2012), the District Court ordered production of all emails pertaining to that plaintiff.

In this case, it is hard to understand why Defendants have not produced a single responsive email containing the term "Isaacs," nor his entire email account. Defendants flagrant deletion and non-production warrant forensic evaluation and sanctions.

### Injunctive Relief may uphold Plaintiff's right to matriculate in federal programs

There exists no precedent case law compelling the matriculation of an individual resident physician who has been deprived of federal residency training because he, eight years prior, exercised his right to due process and ADA protection against a government employee. However, the federal court has well established authority to issue matriculation injunctions that forbid discrimination and violation of the federal rights of students. *Brown v Board of Education*.

### Appropriate sanctions must acknowledge substantial cost of delays to Plaintiff

The loss of Plaintiffs entire email account, and the nonproduction of a basic keyword search for "Isaacs" (should those emails still exist, which is in doubt) substantially prejudices Plaintiff's ability to prosecute this case. At this point, the Defendant's cannot be trusted to produce remaining ESI that likely established 'what happened' to Plaintiff. Forensic analysis by a third-party vendor (or law enforcement) is appropriate at this time. Deletion of ESI reduces Plaintiff's chances of proving his claims by at least 10% as a conservative minimum, and therefore a sanction of $700,000 for undue litigation delays and prejudice is warranted based upon precedent ESI case law.

Plaintiff requested his emails from Defendants, and Jim Yong Kim, over 18 months ago, so that he could support himself at a Dartmouth "Fair Hearing" and in this lawsuit. Defendants now refuse to honor a "Fair Hearing," which is likely to be the subject of an additional civil claim. Plaintiff has already lost two years of his medical career, if not his entire career, as a result of an alleged cover-up of harassment and coercion to break a "sealed" academic record. Moreover, Plaintiff (and family) suffered immensely, with new diagnosis of frontal brain impairment and cardiac arrhythmias such as , possibly, ventricular tachycardia.

JDIsaacs v. Dartmouth
Case No. 12-CV-40-JL

*Portions of the case law above are compiled excerpts from The Sedona Conference e-discovery website.*

<u>Conclusion</u>

The case law above are recent, representative examples Plaintiff, *pro se*, was able to locate on the internet. Sanctions to investigate and reprimand apparent subversion of due process are necessary. Furthermore, in light of the fact Defendant's litigation practice caused the withdraw of three qualified family attorneys, and in light of Plaintiff's disability, sanctions to cover Plaintiff's federal litigation attorney's fees and delays going forward are appropriate. It is reasonably evident ESI would have proven by now, if it had been appropriately produced, that Dartmouth's Bertrand, Finn and many others knew all along about Plaintiff's time in AZ and CA, and hazed him for it. Sanctions and injunctive order for forensic review are appropriate, given the *bona fide* claims underway.

**CERTIFICATE OF SERVICE**

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing **MEMORANDUM OF LAW** was delivered electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

Executed on this 20th day of August, 2013.

/s/ J.D. Isaacs

J. D. ISAACS

Plaintiff, *pro se*

JDIsaacs v. Dartmouth
Case No. 12-CV-40-JL