

REPLY TO: CAPITAL OFFICE
Direct Dial: (603) 223-2834
Fax number:(603) 223-2934
cpyles@sulloway.com

August 23, 2013

FRANK J. SULLOWAY
(1883-1981)
FRANKLIN HOLLIS
(1904-1980)

SENIOR COUNSEL
MARTIN L. GROSS
MICHAEL M. LONERGAN

EDWARD M. KAPLAN
IRVIN D. GORDON
MICHAEL P. LEHMAN
MICHEL A. LAFOND
PETER F. IMSE
R. CARL ANDERSON
DOUGLAS R. CHAMBERLAIN
MARGARET H. NELSON
JAMES O. BARNEY
JAMES E. OWERS
ROBERT J. LANNEY
PETER A. MEYER
JOHN R. HARRINGTON
RONNA F. WISE
WILLIAM D. PANDOLPH
JEANINE L. POOLE
W. KIRK ABBOTT, JR.
ELISE H. SALEK
MARTIN P. HONIGBERG
SARAH S. MURDOUGH
PATRICK J. SHEEHAN
DEREK D. LICK
MELISSA M. HANLON
CHRISTOPHER J. PYLES
KEVIN M. O'SHEA
JEANNE S. SAFFAN
BETH G. CATENZA
JAY SURDUKOWSKI
NICOLE J. SCHULTZ-PRICE
KELLY L. OVITT-PUC
KATHERINE DEFOREST
MATTHEW J. SNYDER
HEATHER L. DEVINE
ROSEMARY B. GUILTINAN

ALL ATTORNEYS ADMITTED
IN NEW HAMPSHIRE

INDIVIDUAL ATTORNEYS
ADMITTED IN:
MAINE, VERMONT, FLORIDA
MASSACHUSETTS, NEW YORK,
AND OTHER STATES

**VIA E-MAIL ONLY**
*jdi@alum.dartmouth.org*

Jeffrey David Isaacs, M.D.
3553 West Chester Pike Unit 177
Newton Square, PA 19073

> Re:     Isaacs v. DHMC, et al.

Dear Dr. Isaacs:

Enclosed please find Responses to the Second Set of Requests for Production of Documents and Second Set of Interrogatories that you have propounded.  We will send the signature page to the Interrogatory Responses under separate cover.

Sincerely,

Chris Pyles

CJP:spp
enclosures

CAPITAL OFFICE
9 Capitol Street
P.O. Box 1256
Concord, NH 03302
Tel: 603-224-2341

PORTLAND OFFICE
477 Congress Street
5th Floor
Portland, ME 04101
Tel: 207-253-5141

GORHAM OFFICE
30 Exchange Street
P.O. Box 335
Gorham, NH 03581
Tel: 603-466-5946

*Celebrating More Than 150 Years of Service to Clients and Community*

[012085-0628 C1077034.1 ]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Dr. J.D. Isaacs | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 1:12-cv-00040-JL** |
| Dartmouth- Hitchcock Medical | ) | |
| Center, Mary Hitchcock Memorial | ) | |
| Hospital, Dr. Christine T. Finn, and the | ) | |
| Trustees of Dartmouth College | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS DARTMOUTH-HITCHCOCK MEDICAL CENTER and MARY HITCHCOCK MEMORIAL HOSPITAL'S RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendants Dartmouth-Hitchcock Medical Center ("DHMC") and Mary Hitchcock Memorial Hospital ("MHMH") by and through its counsel, Sulloway & Hollis, P.L.L.C., hereby respond to Plaintiff's Second Set of Requests for Production of Documents and other items (the "Document Requests") as follows:

### PRELIMINARY STATEMENT

DHMC and MHMH (collectively "Defendants") have responded to the Document Requests as they interpret and understand such requests. If Plaintiff subsequently asserts an interpretation of any request that differs from Defendants' interpretation or understanding, Defendants' reserve the right to supplement their objections and/or responses.

### GENERAL OBJECTIONS

The following General Objections are made to each request in plaintiff's Document Requests in addition to any objections addressed to particular requests:

1.      Defendants object to the Document Requests to the extent that they are overly broad and unduly burdensome.

2.      Defendants object to the Document Requests to the extent that they seek documents that are not relevant to any claim or defense in this action and are not reasonably calculated to lead to the discovery of admissible evidence.

3.      Defendants object to the Document Requests to the extent that they seek documents pertaining to persons who are not parties to this action and which are protected from disclosure by their rights of privacy, whether arising under common law, statute, defendant's policies and procedures, ACGME requirements, or otherwise.

4.      Defendants object to the Document Requests to the extent that they seek documents which are protected from disclosure by the statutory or common law of the State of New Hampshire (including, but not limited to, New Hampshire RSA 151:13(a) and 329:29(a)).

5.      Defendants object to the Document Requests to the extent that they seek documents protected by the attorney-client privilege or attorney-work product doctrine.

6.      Defendants object to the Document Requests to the extent they are vague and ambiguous, unreasonably cumulative or duplicative, or request documents that are equally available to Plaintiff, and the burden on Plaintiff to obtain the requested documents is no greater than the burden on Defendants.

7.      The objections and responses herein are made without waiver of and with specific preservation of:  (a) all objections as to competency, relevancy, materiality, privilege and admissibility of the information or the subject matter thereof, as evidence for any purpose and any proceeding in this action (including trial) and in other actions; (b) the right to object on any grounds at anytime to a demand for further responses to these or any other discovery requests or other discovery proceedings involved in or related to the subject matter of the discovery to which

information or documents are provided; and, (c) the right at any time to review, correct, add to, supplement or clarify any of these responses.

8.      Defendants object to the document requests to the extent that they exceed the total number of requests (25) as agreed to by the parties in the Discovery Plan.

## RESPONSES TO SECOND SET OF DOCUMENT REQUESTS

1.      Please provide a "data map" of DHMC data structures, and applicable backup procedures and schedules. Include (but not limited to) documents sufficient to detail all DHMC physician Outlook Email backup procedures. Include documents that detail local backup schedules, and documents that include off-site backup locations. If not stated on the data map, please list contact details and names of all DHMC e-discovery liaisons or data compliance/IT officers with authority and designated institutional control of this data.

**RESPONSE:** Objection.  This request as it is overly broad and burdensome and not limited in time or in scope, nor is the term "data map" defined.  Without waiving said objections, attached please find the Electronic Mail policy.  Defendants reserve the right to supplement this response, and will produce additional documents which they are able to locate if responsive to this request.  By way of further answer, the Interim CIO is Marty Purcell, and the Director of Technical Services is Al Gallant.

2.      Include any compliance (JAHCO, ACGME, HIPAA, etc) documents that detail any requirements to backup DHMC Outlook email accounts.

**RESPONSE:** Objection.  JAHCO and HIPAA documents that detail backup requirements for institutions are public record and are equally available to Plaintiff; the burden on Plaintiff to obtain the requested documents is no greater than the burden on Defendants.  Defendants are not aware of any ACGME requirements responsive to this request.

3.      If not described above, please list backup dates currently available of the DHMC Outlook email system.

**RESPONSE:** See Answer to Request No. 1.

4.      Please provide all documents evidencing any "litigation hold" enacted with DHMC IT authorities, with respect to this lawsuit.

**RESPONSE:** Objection. This request infringes upon attorney/client privilege and work product. Without waiving said objections, a litigation hold request was submitted to Defendants' information technology department on or about January 17, 2012 requesting the preservation of Plaintiff's e-mail records. Defendants understood that a litigation hold was in place; however, when gathering the e-mail records in order to prepare responses to Plaintiff's First Request for Production of Documents, Defendants discovered that the litigation hold had not been timely implemented. See Defendants' Responses to Plaintiff's First Request for Production of Documents, including but not limited to Responses 7 and 15.

5.    Please provide non-redacted, non-modified, "original" text-searchable backup data for the backup of Defendant Christine Finn's DHMC Outlook account chronologically nearest to January 13, 2012.

**RESPONSE:** Objection. This Request is overly broad and burdensome and not limited in time or scope. Additionally, Defendants object to production of quality assurance emails which may be responsive to this request, as said privileged documents are protected by disclosure by New Hampshire RSA 151:13(a) and 329:29(a). Defendants also object to producing documents which may be responsive to this request which involve confidential medical information or which were prepared after January 13, 2012, as attorney client and/or work product documents, or materials otherwise prepared in anticipation of litigation and also privileged. Without waiving said objections, Defendants are reviewing email databases, and upon execution of an agreed-to Confidentiality Agreement, will produce documents which they are able to locate and which are limited to appropriate defined specific terms. See Defendants' Responses to Plaintiff's First Request for Production of Documents, at No. 7.

6.    Please provide non-redacted, non-modified, "original" text-searchable backup data for the backup of Alan Green's DHMC Outlook account chronologically nearest to January 17, 2012.

**RESPONSE:** Objection. This Request is overly broad and burdensome and not limited in time or scope. Additionally, Defendants object to production of quality assurance emails which may be responsive to this request, as said privileged documents are protected by disclosure by New Hampshire RSA 151:13(a) and 329:29(a). Defendants also object to producing documents which may be responsive to this request which involve confidential medical information or which were prepared after January 13, 2012, as attorney client and/or work product documents, or materials otherwise prepared in anticipation of litigation and also privileged. Without waiving said objections, Defendants are reviewing email databases, and upon execution of an agreed-to Confidentiality Agreement, will produce documents which they are able to locate and which are limited to appropriate defined specific terms. See Defendants' Responses to Plaintiff's First Request for Production of Documents, at No. 7.

7.    Please provide non-redacted, non-modified, "original" text-searchable backup data for the backup of Harley Friedman's DHMC Outlook account chronologically nearest to January 17, 2012.

**RESPONSE:** Objection. This Request is overly broad and burdensome and not limited in time or scope. Additionally, Defendants object to production of quality assurance emails which may be responsive to this request, as said privileged documents are protected by disclosure by New Hampshire RSA 151:13(a) and 329:29(a). Defendants also object to producing documents which may be responsive to this request which involve confidential medical information or which were prepared after January 13, 2012, as attorney client and/or work product documents, or materials otherwise prepared in anticipation of litigation and also privileged. Without waiving said objections, Defendants are reviewing email databases, and upon execution of an agreed-to Confidentiality Agreement, will produce documents which they are able to locate and which are limited to appropriate defined specific terms. See Defendants' Responses to Plaintiff's First Request for Production of Documents, at No. 7.

8.    Please provide non-redacted, non-modified, "original" backup text-searchable data for the most recent backup of Plaintiff's DHMC Outlook account.

**RESPONSE:**  The requested records are no longer available.  By way of explanation, upon information and belief, a litigation hold request was submitted to Defendants' Information Technology Department on or about January 17, 2012 requesting the preservation of Plaintiff's e-mail records.  Defendants understood that said litigation hold was in place; however, when gathering the e-mail records in order to prepare responses to Plaintiff's First Request for Production of Documents, Defendants learned that the litigation hold had not actually been timely implemented.  Accordingly, Dr. Isaac's Hitchcock.org e-mail account was not preserved.  Defendants believe they will be able to produce the vast majority of e-mails exchanged among Plaintiff and those individuals who evaluated, supervised, or participated in decisions concerning his brief residency.  By way of further response, please see Responses to Plaintiff's First Request for Production of Documents, including but not limited to Request Numbers 7, 12 and 15, and incorporating those responses and objections herein.

9.    Please provide non-redacted, non-modified, "original" text-searchable backup data representing a query of any and all DHMC Outlook emails containing the term "Isaacs" PRIOR to January 17, 2012.

**RESPONSE:**  Objection.  This Request is overly broad and burdensome and not limited in time or scope.  Additionally, Defendants object to production of quality assurance emails which may be responsive to this request, as said privileged documents are protected by disclosure by New Hampshire RSA 151:13(a) and 329:29(a).  Defendants also object to producing documents which may be responsive to this request which involve confidential medical information or which were prepared after January 13, 2012, as attorney client and/or work product documents, or materials otherwise prepared in anticipation of litigation and also privileged.  Without waiving said objections, Defendants are reviewing email databases, and upon execution of an agreed-to Confidentiality Agreement, will produce documents which they

are able to locate and which are limited to appropriate defined specific terms.  See Defendants'

Responses to Plaintiff's First Request for Production of Documents, at No. 7.

10.    The "Universal" Background check report for Isaacs, which he authorized as part of his new-hire packet.

**RESPONSE:**  Please see ISAACS GME/TRAINING documents, 000047-48, previously

provided.

11.    Please provide the entire EPIC DHMC admission record (physician notes , labs/studies, etc) for admitted M2 patients that Plaintiff treated in June-July 2011.

**RESPONSE:**  Objection.  This Request is overly broad and burdensome, and

impermissibly seeks confidential patient information and protected health information.

12.    Please provide long-distance PBX records and litigation-hold voicemails for Defendant Finn's pbx phone node/account from January 2011 through January 2012.

**RESPONSE:**  Objection.  This Request infringes upon attorney/client privilege and work

product, is likely to encompass confidential patient information, and is overly broad and not

reasonable calculated to lead to the discovery of admissible information.  Without waiving said

objections, this request is not properly directed to Defendants.


OBJECTION BY COUNSEL:

Dated: August 23, 2013          By

Christopher J. Pyles (#15165)
Sulloway & Hollis, P.L.L.C.
9 Capitol Street
Concord, NH 03301
(603)223-2863

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August 2013, Defendants Dartmouth Hitchcock Medical Center and Mary Hitchcock Memorial Hospital's Responses to Plaintiff's Second Set of Requests for Production of Documents were forwarded, via email, to all counsel of record.

_____
Christopher J. Pyles

 **Dartmouth-Hitchcock Information Systems Policies**    Official Copy

## Article 20. Electronic Mail

Page 1 of 3

Article 20.                    Electronic Mail

### Section 20.01                    Purpose

A. To protect the integrity and functioning of the D-H email system. The D-H email system is a clinical, operational and business resource. There is a level of responsibility that all users need to maintain. Inappropriate use can compromise the system's integrity and availability. This policy is designed to clarify the use, ownership, confidentiality, security, eligibility and account management of the system.

### Section 20.02                    Statement of Policy

A. The D-H email system will be managed by IS so as to ensure that there is a level of access control for the system which is commensurate with the sensitivity and criticality of the system and the Organizational Data contained within it, and to ensure that inappropriate use does not compromise the system's integrity and availability.

### Section 20.03                    Scope

A. Applies to Users who access and use the D-H email system.

### Section 20.04                    Responsibilities

A. Compliance

    i.    Electronic mail users should comply with all D-H conduct rules as they apply to the working environment. Noncompliance with any of these policies may result in termination of the e-mail account as well as any other actions as defined by organizational policy.

    ii.    The document "E-Mail Communications between Patients and Providers of Care" (http://policy.hitchcock.org/dspPolicyWindow.cfm?policy_id= 912) is available on the Intranet. E-mail users should adhere to the principles therein.

B. Ownership

    i.    The D-H e-mail system is wholly owned by the organization. The data files there in, are the sole property of the institution and may be viewed if deemed necessary. Users do not own or have rights to those files outside of their use in the performance of their organizational duties.

C. Confidentiality

    i.    E-mail practices should comply with the employee's institutional "Policy for Confidentiality and Release of Patient Information". The Dartmouth-Hitchcock Privacy Group Policy Statement on the Privacy & Confidentiality of Patient Information (http://policy.hitchcock.org/dspPolicyWindow.cfm?policy_id= 189).

    ii.    Unauthorized reading, distributing, copying, using or possessing patient or employee information is prohibited.

D. Solicitation

    i.    E-mail practices should comply with the employee's institutional "Policy for Distribution and Solicitation".

    ii.    It is a violation of policy to use the institutional e-mail system for the generation of personal income or to initiate unsolicited mass mailings.

E. Security

    i.    Sharing an individual password or allowing any person access to an individual electronic mail box other than the single registered "owner/user" is prohibited.

 **Dartmouth-Hitchcock Information Systems Policies**          Official Copy

## Article 20. Electronic Mail                                       Page 2 of 3

    ii.    To reset a password, the e-mail box owner should go in person to the Help Desk (during regular hours) with a valid D-H photo ID. Off site staff should be identified by showing their ID or via telephone call back methods. User Support will contact the individual and reset the password.

    iii.    Forwarding your email account to an outside system is prohibited

F.  Eligibility for an Electronic Mail Account

    i.    D-H has its own electronic mail system that is separate from Dartmouth College.

    ii.    Employees of the following institutions are eligible for Electronic Mail access to the D-H email system:

1.    Dartmouth-Hitchcock Alliance

2.    Dartmouth-Hitchcock Clinic

3.    Mary Hitchcock Memorial Hospital

4.    Dartmouth Medical School and its Students

5.    D-H "Affiliates" (as defined by the "Affiliated Information System Overview").

G.  Sponsored Accounts

    i.    The following other groups are eligible for access only for the duration of their employment or engagement with D-H (an expiration date will be set on account activation):

1.    "Contract employees" or temporary employees hired through a temporary agency

2.    Traveling nurses

3.    Student interns (requires written request from a Department Director)

4.    Approved temporary extensions (1-2 weeks) for terminated or retiring employees

    ii.    A sponsoring department director should take responsibility for the usage of the system by the temporary worker and will be held accountable for any abuse of the system.

    iii.    On creation, these accounts will be set to expire on the date the worker is expected to finish their term.

    iv.    If a requester does not fall into one of these categories, they are not able to get an email account on the D-H email system.

1.    Short term consultants are to provide their own email account.

2.    Long term consultants may be considered "contract employees" and would be eligible for an account on the D-H email system.

H.  Account Deletion

    i.    Accounts will be deactivated upon termination of employment or if no longer sponsored. On the date of termination the account will expire unless sponsored or a temporary extension has been approved.

I.  Group Accounts

    i.    Accounts intended to be used by multiple users are discouraged. Group distribution lists are recommended as an alternative to Group Accounts. In order to issue a Group Account the department director must assume responsibility for the activities of the account and will be held accountable for any misuse of the account. Group Accounts should not be used to send or receive any patient information.

J.  Access Email accounts without the Permission of the User

    i.    Under certain circumstances, e-mail accounts may need to be accessed by D-H management without the expressed permission of the users. This access will only be granted with the authorization of appropriate senior management.

K.  Retrieval of Deleted or Expired messages

A.    Deleted or expired messages are not backed up and will not be retrieved. Electronic mail is not retained for any significant timeframe.

L.  Deletion of Misdirected Messages

    i.    Mail that has been sent cannot be cancelled or deleted.

 **Dartmouth-Hitchcock Information Systems Policies**    Official Copy

## Article 20. Electronic Mail

Page 3 of 3

M.  Accountability

    i.    Users are responsible for all electronic mail originating from their D-H account. Forgery, or attempted forgery, of e-mail is prohibited. Accessing, deleting, copying and/or modifying (or attempts to do so) of the electronic messages of another employee is prohibited.

*Section 20.05*    *HIPAA Reference*

Regulatory Category:    None

Regulatory Type:    None

Regulatory Reference:    None

| | |
|---|---|
| **Policy ID and Title:** | IS.0070:  Article 20. Electronic Mail |
| **Owner:** | Information Systems email |
| **Review Dates:** | 12/10/2012, 01/05/2012, 08/28/2009, 05/01/2008, 08/25/2006 |
| **Revision History:** | 01/05/2012, 10/08/2010, 03/19/2010, 12/24/2009, 05/30/2008, 01/28/2008, 09/20/2006, 09/01/2006 |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Dr. J.D. Isaacs )<br><br>        Plaintiff, )<br><br>v. )<br><br>Dartmouth- Hitchcock Medical )<br>Center, Mary Hitchcock Memorial )<br>Hospital, Dr. Christine T. Finn, and the )<br>Trustees of Dartmouth College )<br><br>        Defendants. ) | Case No. 1:12-cv-00040-JL |

**DEFENDANTS DARTMOUTH-HITCHCOCK MEDICAL CENTER and
MARY HITCHCOCK MEMORIAL HOSPITAL'S ANSWERS TO
PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Defendants Dartmouth-Hitchcock Medical Center ("DHMC") and Mary Hitchcock

Memorial Hospital ("MHMH") by and through its counsel, Sulloway & Hollis, P.L.L.C., hereby

respond to Plaintiff's Second Set of Interrogatories (the "Interrogatories") as follows:

**PRELIMINARY STATEMENT**

DHMC and MHMH have responded to the Interrogatories as they interpret and

understand such Interrogatories.  If Plaintiff subsequently asserts an interpretation of any

Interrogatory that differs from DHMC's and MHMH's interpretation or understanding, DHMC

and MHMH reserve the right to supplement their objections and/or responses.

**GENERAL OBJECTIONS**

The following General Objections are made to each request in Plaintiff's Interrogatories

in addition to any objections addressed to particular requests:

1.        Defendants object to the Interrogatories to the extent that they are overly broad

and unduly burdensome.

{012085-0628 C1069946.2 }

2.      Defendants object to the Interrogatories to the extent that they seek documents that are not relevant to any claim or defense in this action and are not reasonably calculated to lead to the discovery of admissible evidence.

3.      Defendants object to the Interrogatories to the extent that they seek documents pertaining to persons who are not parties to this action and which are protected from disclosure by their rights of privacy, whether arising under common law, statute, defendant's policies and procedures, ACGME requirements, or otherwise.

4.      Defendants object to the Interrogatories to the extent that they seek documents which are protected from disclosure by the statutory or common law of the State of New Hampshire (including, but not limited to, New Hampshire RSA 151:13(a) and 329:29(a)).

5.      Defendants object to the Interrogatories to the extent that they seek documents protected by the attorney-client privilege or attorney-work product doctrine.

6.      Defendants object to the Interrogatories to the extent they are vague and ambiguous, unreasonably cumulative or duplicative, or request documents that are equally available to plaintiff, and the burden on plaintiff to obtain the requested documents is no greater than the burden on defendant

7.      The objections and responses herein are made without waiver of and with specific preservation of:  (a) all objections as to competency, relevancy, materiality, privilege and admissibility of the information or the subject matter thereof, as evidence for any purpose and any proceeding in this action (including trial) and in other actions; (b) the right to object on any grounds at anytime to a demand for further responses to these or any other discovery requests or other discovery proceedings involved in or related to the subject matter of the discovery to which information or documents are provided; and, (c) the right at any time to review, correct, add to, supplement or clarify any of these responses.

8.     Defendants object to the Interrogatories to the extent that they exceed the total number of requests (25) as agreed to by the parties in the Discovery Plan.

9.     Defendants object to the Interrogatories to the extent they are propounded upon or sent to the attention of Dr. Glen Greenough, who is not a party to this case.  He is not employed by these Defendants, and neither DHMC nor MHMH can answer on his behalf.  Pursuant to Fed. R. Civ. P. 33(a)(1) a party may serve on any other party such written discovery, but there is no provision for propounding interrogatories on a non-party.

## RESPONSES TO SECOND SET OF INTERROGATORIES

1.     Please describe, in your medical opinion, Isaacs' medical diagnosis (as a sleep medicine neurologist) and any possible differential diagnosis, citing appropriate references to his medical chart to support your discussion. If not included in your differential, please explain how Isaacs' sleep problems relate to or are exacerbated by his diagnoses of Asperger's Disease and TBI.

**RESPONSE:**  Defendants do not have a medical opinion relating to Plaintiff, and cannot otherwise answer since the Interrogatory is directed to Dr. Greenough, who is neither a party nor an employee of Defendants.

2.     Did you ever speak with Isaacs' Program Directors (Christine Finn and/or Ronald Green), or his colleagues in Adult Psychiatry (e.g. Dan Herrick), about Isaacs' medical condition? If so, please describe, in full detail, the nature of these discussions. Include any documents that evidence these discussions, such as emails between yourself and Finn.

**RESPONSE:**  Defendants cannot respond to this Interrogatory since it is directed to Dr. Greenough, who is neither a party nor an employee of Defendants.  Defendants are without knowledge as to what conversations Dr. Greenough may have had with Dr. Finn, Dr. Green or Dr. Herrick about Plaintiff's medical condition.

3.      Did Isaacs report symptoms to your department, such as difficulty staying awake in morning rounds, feeling on the verge of syncope, frequent daytime naps, and/or near/actual car accidents? Please describe any symptoms Isaacs complained about to you or your colleagues.

**RESPONSE:** Defendants are without knowledge as to reports made by Plaintiff to any treating physicians. Upon information and belief, any such reports may be contained in medical records.

4.      For each of the symptoms listed above, could these symptoms impact his ability to safely perform the duties of a resident physician? State yes or no, with an explanation, for each symptom. For each symptom, please identify whether that symptom, by itself, warrants medical leave and/or workplace accommodation for a resident physician to safely perform his duties.

**RESPONSE:** Defendants do not have a medical opinion relating to Plaintiff, and cannot otherwise answer since this Interrogatory is directed to Dr. Greenough, who is neither a party nor an employee of Defendants.

5.      Why was an actigraph ordered before Isaacs' PSG?

**RESPONSE:** Defendants do not know why Dr. Greenough ordered an actigraph.

6.      Is it standard of care to discard and/or cancel an actigraph (after it has been recording), in the event a PSG shows sleep apnea? Please describe how an actigraph may provide useful information to augment a PSG.

**RESPONSE:** Defendants do not have a medical opinion relating to Plaintiff, and cannot otherwise answer since this Interrogatory is directed to Dr. Greenough, who is neither a party nor an employee of Defendants. Defendants further object to this interrogatory to the extent it call for an expert opinion, and reserve the right to supplement this response accordance with the agreed-upon scheduling order.

7.      Did you bill for the actigraph study? If yes, describe if it was cancelled before or after billing, and whether or not any efforts made to repeat the study.

No.

8.      Did Isaacs' actigraph actually fail and suffer device malfunction data loss? If so, describe any efforts you made to speak with the manufacturer about said failure.

Include any documents, including postage receipts for return of unit to manufacturer, and/or warranty exercise.

      **RESPONSE:** Defendants are without knowledge of Plaintiff's actigraph, or what

actions, if any, Dr. Greenough took regarding that study.

      9.     How many times did this type of actigraph failure occur during your practice of sleep medicine? Describe each incident.

      **RESPONSE:** Defendants cannot respond to this question because it is directed to Dr.

Greenough, who is neither a party nor an employee of the Defendants.

      10.    At the time of making the annotation, were you(Greenough) aware that, in the weeks prior to this annotation, Isaacs' had noticed criminal/civil/ethics complaints against DHMC and Dartmouth? Discuss your knowledge (or lack thereof) that Isaacs' entire DHMC outlook email account disappeared around the time of the actigraph data loss. Discuss your knowledge (or lack thereof) of any systemic retaliation/cover-up at DHMC occurring, including, without limitation, actions by Risk Management to limit exposure. Likewise, please explain in full the circumstances surrounding the nearly three month delay between Isaacs' actigraph study, and Greenough's annotation in Isaacs' patient chart that data was lost.

      **RESPONSE:** Defendants cannot answer this Interrogatory, as it goes to the personal

knowledge of Dr. Greenough, who is neither a party to this case nor an employee of Defendants.

      11.    Did Isaacs request that you(Greenough) complete documentation for his disability claim with the Hartford? In light of the PSG and the CPAP titration, and Isaacs' symptoms, please describe what evidence you had, at the time of his request, that would support a disability leave. Include, specifically, whether or not falling asleep in rounds, feeling unsafe driving to work, frequent(daily 1-2 hour) naps on active shifts, and impaired concentration would warrant medical leave.

      **RESPONSE:** Defendants cannot answer this Interrogatory, as it goes to the personal

knowledge of Dr. Greenough, who is neither a party to this case nor an employee of Defendants.

      12.    Did you complete the disability documentation that Isaacs requested? If not, please explain fully why you chose not to. Discuss whether or not you were aware that your declaration of Isaacs' disability would impact pending litigation and criminal complaints against Dartmouth/DHMC.

      **RESPONSE:** Defendants cannot answer this Interrogatory to the extent it seeks personal

knowledge from Dr. Greenough, who is neither a party to this case nor an employee of

Defendants.  However, upon information and belief, Hartford notified Defendants of a claim, and

Defendants completed a claim form in July 2012.

13.    Did Isaacs have compelling/pronounced/obvious improvement from the CPAP titration? Discuss in full detail, comparing to other 'typical' sleep apnea patients. In your answer, compare his AHI, sleep quality, and similar metrics, during the PSG and the subsequent titration.

**RESPONSE:**  Objection.  This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

14.    Does sleep apnea spontaneously develop over the course of days or weeks? Discuss how Isaacs' sudden sleep deterioration, in the days and weeks following commencement of employment at DHMC, could be explained by current medical science. Discuss the role that emotional distress and/or hazing contributed to the sleep symptoms Isaacs' described.

**RESPONSE:**  Objection.  This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

15.    Do you believe Isaacs' had a negative reputation at DHMC/Dartmouth? Discuss how this reputation (whether deserved or not), and resultant "shunning" by large numbers of colleagues, might have distressed Isaacs to the point of exacerbating/causing a sleep disorder.

**RESPONSE:**  Objection.  This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

16.    Do you believe a resident physician with a sleep disorder may be afforded reasonable accommodations under the Americans with Disability Act, including without limitation, a part-time schedule? Describe any accommodations you would recommend. Describe your opinion on part-time schedules as accommodation. Describe these accommodations in light of Isaacs' condition, and whether or not they would warrant trial before termination of employment.

**RESPONSE:**  Objection.  This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

17.    Describe any and all EEG, EKG, respiratory, muscular, or other recorded abnormalities in Isaacs' PSG and/or CPAP titration. For each abnormality, attach a PDF or JPEG (or similar standard) printout of all related recording for that time period to this interrogatory.

**RESPONSE:** Objection. This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

18.    Did Isaacs have any evidence of a ventricular tachycardia or other serious cardiac abnormalities, which he had on a later PSG at Penn Sleep Center? Include (without limitation) your belief as to whether or not Isaacs' suffered bradycardia during any of your studies. Mention any notification you made to Isaacs of these abnormalities. Mention any evidence of ST abnormalities.

**RESPONSE:** Objection. This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

19.    In late 2012, you (Greenough) mailed Isaacs a CD copy of his DHMC sleep studies. Please explain any knowledge you possess about why the doctors at the University of Pennsylvania sleep center might have been unable to open any of the data you provided. Please verify a copy of Isaacs' entire data and include a CD copy with this interrogatory. If possible, please export the data to a non-proprietary form like PDF.

**RESPONSE:** Objection. This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

20.    Could an actigraph provide medical-legal evidence of a disability? In other words, describe how the light recorder and motion recorders could evidence sleeping during shifts, isolative behavior, reclusiveness, Aspergers, PTSD, and other medical conditions relating to emotional abuse, neuropsychiatric illness and/or hazing.

**RESPONSE:** Objection. This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

21.    If it still existed, discuss how Isaacs' actigraph data (which showed 10 hours roughly of nighttime sleep, followed by 1-2 hours of sleep and isolation on active shift) would support civil/criminal complaints for emotional abuse. In Isaacs' case, where he isolated himself in a dark room for hours a day at DHMC, and took daily naps, and slept 9-10 hours at night , describe how the actigraph could capture and report such behavior. Would destruction of the actigraph assist Isaacs' program directors in their claim that Isaacs does not have any disability, and that he was not emotionally abused?

**RESPONSE:** Objection. This request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

22.    Did you abandon Isaacs as a patient? Describe your reasoning. Mention the harm to your practice or Isaacs that would occur if you didn't abandon him. Additionally, list all patients you have abandoned in the past 6 years.

**RESPONSE:** Objection.  This request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

23.    Do you have any knowledge about Isaacs' lawsuit against USC? If so, list every person who ever communicated any knowledge of this to you. If you are unsure whether or not your knowledge is accurate or not, list all purported facts conveyed to you (and from whom).

**RESPONSE:** Objection.  This request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

24.    Do you have any knowledge about Isaacs' surgery internship at Arizona? If so, list every person who ever communicated any knowledge of this to you. If you are unsure whether or not your knowledge is accurate or not, list all purported facts conveyed to you (and from whom).

**RESPONSE:** Objection.  This request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

25.    In general, did you witness any of Isaacs' colleagues (ie members of Dartmouth Department of Psychiatry) ever mention any relationship (purported or confirmed) between Isaacs and USC or University of Arizona? If so, describe each incident and identify each witness.

**RESPONSE:** Objection.  This request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

OBJECTION BY COUNSEL

Dated: August 23, 2013          By _____

Christopher J. Pyles (#15165)
Sulloway & Hollis, P.L.L.C.
9 Capitol Street
Concord, NH 03301
(603)223-2863

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of August 2013, Defendants Dartmouth Hitchcock Medical Center and Mary Hitchcock Memorial Hospital's Answers to Plaintiff's Second Set of Interrogatories were forwarded, via e-mail, to all counsel of record.

Christopher J. Pyles