Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DOCTOR J. D. ISAACS | |
| Plaintiff, *pro se*, | Case No. CV-12-40-JL |
| -V- | |
| DARTMOUTH HITCHCOCK MEDICAL CENTER; <br> DOCTOR CHRISTINE FINN; <br> MARY HITCHCOCK MEMORIAL HOSPITAL; <br> TRUSTEES OF DARTMOUTH COLLEGE; <br><br> and JOHN DOE, <br><br> Defendants. | **OPPOSITION TO MOTION FOR PROTECTIVE ORDER RE JIM YONG KIM** |

# OPPOSITION TO PROTECTIVE ORDER RE JIM YONG KIM

Defendants have filed a motion to quash the deposition notice of Dr Jim Yong Kim, who at the time of filing the original Complaint, was the President of Dartmouth College. Defendants incorrectly invoke the so-called "Apex Doctrine," which has no precedent or binding authority in the First Circuit nor has it ever been applied to the president of a liberal arts college. Although it has been used sporadically in Texas and California, the Apex Doctrine has never been widely adopted.  Generally in federal court, vacating a deposition is regarded unfavorably and as an unusual "most extraordinary relief" *Speadmark, Inc v. Federated Dep't Stores, Inc* (176 F.R.D. 116 (S.D.N.Y. 1997) "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition."

Pursuant to Local Rule 37.1, Plaintiff attaches Jim Yong Kim's original deposition notice (Exhibit A). This opposition paper will briefly examine the items mentioned in the deposition notice, and establish that even if the Apex Doctrine applied in New Hampshire, an order quashing Kim's deposition would be inappropriate. Furthermore, Defendants have admitted Kim's involvement, as they failed to execute any signature in response to Plaintiff's Request for Admissions (Exhibit B – Unsigned RFA):  (After Plaintiff informed them, they did sign the document 2 days after deadline, but nonetheless Defendants should be held to the same standard they apply to Plaintiff, which is to invoke an overwhelming number of technical objections)

**RFA EXCERPTS**

**Isaacs was terminated, at least in part, to discredit his claims prior to Kim's political appointment or nomination for appointment to the World Bank.**

**Based on your knowledge and or belief, Isaacs was terminated with Dr Kim's assent.**

<u>1. Plaintiff has already unsuccessfully sought discovery knowledge from Dartmouth's 'lower-level' employees</u>

Dartmouth's Dean Bertrand and Christine Finn fraudulently denied knowledge of Plaintiff's disclosure of employment at Arizona – and terminated the Plaintiff for purportedly not disclosing Arizona (see Docket Item 71). Despite the fact that Finn and Bertrand verified, by signature, the Arizona disclosure, they both now claim they didn't read it (Exhibit B, RFA Item #5; deemed admitted but apparently Bertrand attempted to disavow knowledge of Arizona).

In short, Plaintiff asserts Dean Bertrand and Defendant Finn are "known liars." They verified that they read a document, but now claim they didn't read it; in either case, they have lied.

Plaintiff escalated his criminal and ethics violations to Jim Yong Kim, the only individual involved with this case who had seniority to Dean Bertrand. Since Dean Bertrand is a known liar, and discovery has thus far been unsuccessful in revealing details about the *prima facie* fraud Dean Bertrand committed, Jim Yong Kim must respond to the deposition.

<u>2. An entire hospital email account disappeared two days after Kim received a Rule 34 notice; Kim was the only Dartmouth employee to receive Plaintiff's Rule 34 Request</u>

On January 15th 2012, Plaintiff emailed a notice of lawsuit to Jim Yong Kim, and two of Dartmouth's General Counsel. The notice also included a Rule 34 notice to preserve Plaintiff's email account (Docket Item 71, Exhibit #7). Two days later, Plaintiff telephoned DHMC IT, who notified him that his email account was being deleted. DHMC Email Policy is not to delete an employees email account until after they are terminated

(Docket #77, Exhibit A). This is currently the subject of a pending Motion for Sanctions. In light of the peculiar deletion of Plaintiff's email account, two months before normal procedure, Kim is in possession of unique knowledge – he was the only Dartmouth employee, other than Counsel, to receive the Rule 34 Notice.

3. <u>All binding authority and applicable case law requires Kim to be deposed</u>

"Certainly, when a party seeks to depose an individual who has personal knowledge of facts relevant to a lawsuit, a court would expect that individual, even a corporate president or CEO, to appear for deposition." See In re AIR CRASH AT TAIPEI, TAIWAN on October 31, 2000, MDL1394- GAF (RCX), 2002 WL 32155478 (C.D. Cal. Nov. 6, 2002); Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 102–06 (S.D.N.Y. 2001) (compelling the deposition of the CEO of Sony because the party seeking it presented sufficient evidence that he possessed some unique knowledge on several issues.); Citigroup Inc. v. Holtsberg, 915 So. 2d 1265 (Fla. Dist. Ct. App. 2005) (holding a court should deny a protective order covering high-ranking officials when it appears personal knowledge exists of key issues or the motivations of the company are relevant to a case)

The cases above represent the overwhelming majority of decisions Plaintiff has found concerning the Apex doctrine in federal court. Kim certainly has personal knowledge pertaining to what happened to Plaintiff at Dartmouth & DHMC, and it appears to be unique knowledge. He has worked with and supervised Dean Bertrand, who orchestrated the fraud alleged in this lawsuit. In fact, if Kim doesn't have knowledge of the fraud, he should have had it – and his negligence would be just as important to ascertain in a deposition.

4. <u>No Apex Doctrine Case Law for Liberal Arts College Presidents</u>

The Apex Doctrine is best known for its use to shield former Chrysler Chairmen Lee Iacocca from a deposition on a matter that had absolutely no relevance to Iacocca. Conversely, Samuel Walton, CEO of Wal-Mart, was required to attend a deposition for a customer slip-and-fall case, because Arkansas, like most states, does not recognize the Apex Doctrine. *Plaintiff has been unable to find any liberal arts college president in any case in the United States who successfully invoked the Apex doctrine*. Often, these colleges have several thousand students, and a hundred or so tight knit faculty members – hardly the intended scale of the Apex doctrine. While it *might* apply under California law to the University of California system, **there is simply no precedent elsewhere for a liberal arts college president to claim an Apex privilege in a lawsuit alleging fraud by a college Dean**. Although Jim Yong Kim is currently president of the World Bank, he was not at the time of his involvement in this dispute, and it would be erroneous to apply the Apex privilege to his time as the president of a rural liberal arts college with several hundred professors and a small number of Deans (such as Bertrand).

5. <u>The motion to quash does not include the required affidavit</u>

The hallmark case for the Apex Doctrine comes from the Texas Supreme Court from *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125 (Tex. 1995), and *In re Alcatel USA, Inc.,* 11 S.W.3d 173 (Tex. 2000), which described the initial requirement for an Apex motion to quash:

> "When a party seeks to depose a corporate president or other high level corporate official and that official (or the corporation) files a motion for protective order to prohibit the deposition *accompanied by the official's affidavit denying any knowledge of relevant facts...*"

Kim, and his Counsel, have failed to attach the initial affidavit required under the Apex doctrine denying that he has any knowledge of relevant facts. In fact, Plaintiff offered to dismiss Kim from certain claims over a year ago if he provided such an affidavit, and Kim declined. Plaintiff does not believe Kim can produce such an affidavit. Kim worked for fifteen years as a leader in international health at Harvard Med School with Robert Baughman, another Harvard leader in international health who Plaintiff sued 8 years ago. For a host of reasons, including Kim's relationship with /responsibility for Dean Bertrand, and Kim's unique receipt of the Rule 34 email notice, it seems reasonably likely that Kim has unique knowledge of what transpired at Dartmouth. A deposition will clarify this knowledge.

6.  <u>President Kim was noticed of criminal reports about fraud by Dean Bertrand and probable felonious sexual assault.</u>

As a college president, Kim had a duty to respond to what are *prima facie* criminal and civil charges. The recent Penn State football controversy made clear that even a university president is liable should he/she turn a blind eye on illegal activity. It would be terrible precedent (and it doesn't exist) to hold that when a student reports a crime such as fraud or sexual assault to a University President, that President has no obligation or duty to investigate (or delegate the matter, at the very least). Indeed, Kim was negligent at best with regards to investigating Dean Bertrand and Finn.

7.  <u>Plaintiff was terminated without a "Fair Hearing" one week prior to Jim Yong Kim's World Bank Appointment</u>

After waiting several months for an ethics investigation, Isaacs complained about Kim's inaction. A week later, Isaacs was terminated – what he believes was the first dismissal of a Dartmouth resident physician to occur without a Fair Hearing. According to Exhibit B RFA Admission 46, "**with the exception of Isaacs, [Dartmouth] has never terminated a resident without either a) their consent, or b) a fair hearing**."

There exists legitimate concern that Plaintiff was retaliated against for his ethics and criminal complaints to Kim. The blatant email deletion and Plaintiff's termination without either administrative leave or a "fair hearing" is suspicious at best. Kim almost certainly has direct knowledge about these matters and must be deposed.

8.   <u>The Apex Doctrine is not logical in this case because Plaintiff was retaliated against for suing an 'Apex' level official</u>

In 2005, Plaintiff sued the Dean of a US Medical School and an Executive Director of the National Institutes of Health. The NIH director is now Co-CEO of Okinawa Institute of Science and Technology. It is undisputed that Dartmouth has retaliated against Plaintiff for this lawsuit, terminating him despite the fact his academic records from 2005 were sealed and annulled. Moreover, Plaintiff, his family, friends, and attorneys all suspect that somebody – probably at or near the 'Apex' level – leaked information to Dartmouth about Plaintiff's sealed academic records. Defendants, at time of filing, have put forth no plausible explanation of how Dartmouth learned about Plaintiff's sealed records. As such, this is an open matter for discovery, and **shielding Apex level employees – for what appears to be an Apex level leak of privileged information – is not appropriate.**

9.   <u>Jim Yong Kim's office had knowledge of 'what happened'</u>

Plaintiff telephoned Dr Kim's office to follow up on his Ethics complaint, but Kim transferred the call to Dartmouth College Assistant General Counsel O'Leary. O'Leary stated in a sarcastic tone "I'm sure you do wish you knew *what happened*," but elaborated that Kim had "no obligation to conduct an investigation." He continued "you can't sue us, you sue everybody." Put simply, it appears Kim and his attorneys had specific knowledge about Plaintiff, and more likely than not, they know exactly *what happened* to Plaintiff.

JDIsaacs v. Dartmouth
Case No. 12-CV-40-JL

<u>10. Because Defendants destroyed critical email evidence, the Court must be liberal in allowing discovery to recover lost information</u>

In light of Plaintiff's pending Motion for Sanctions, the Court is asked to consider the fact that Dartmouth destroyed critical evidence. Even if for some reason the Apex doctrine did apply to Kim, Plaintiff believes the Court should now err on the side of allowing broad discovery, in order to recover permanently lost evidence. Kim, a most knowledgeable individual who appears to be connected to several key people and issues in this lawsuit, almost certainly knows what happened to Plaintiff. Deposing Kim could save the Court – and the taxpayer – significant resources. It is believed that despite spoliated email evidence, Kim could provide sufficient factual knowledge to allow immediate summary judgment of this case.

<u>11. According to a process server, Kim attempted to evade his Summons</u>

When Plaintiff originally attempted to serve the Summons for this lawsuit on Kim, the process server declared that he felt Kim was home, despite statements to the contrary apparently relayed through Kim's assistant (see Motion to Quash summons and Proof of Service upon Kim). In light of apparent/possible evasion of a summons, and destruction of an entire email account following FRCP 34 notice, it is hard to justify Kim's absence from a deposition – an extraordinary measure in and of itself.

<u>12. Dartmouth College and DHMC are intertwined for the purposes of this motion</u>

Opposing counsel claims "It is undisputed that plaintiff's employment relationship was with Mary Hitchcock Hospital, not with The College." Plaintiff and opposing counsel have been disputing the role of Dartmouth College in this matter for almost two years. Plaintiff was denied the ability to apply to an MPH degree program at The Dartmouth Institute, a trademark of the College (Exhibit C). Moreover, Dartmouth College uses language that it "offers" psychiatry residency programs "affiliated with Dartmouth-Hitchcock" (Exhibit D). Dean Bertrand is a Dean of Residency Programs for Dartmouth

JDIsaacs v. Dartmouth
Case No. 12-CV-40-JL

College (Exhibit E). Defendant Finn is salaried by Dartmouth College. Plaintiff was *dismissed* from a Dartmouth College residency program, then *terminated* from employment at DHMC. It appears Dartmouth Psychiatry (part of the College) operates the residency program, but DHMC salaries the resident; ie the Plaintiff was a student of Dartmouth College and an employee of DHMC. The distinctions are subtle, and similar matters were the subject of a US Supreme Court case (*Mayo vs United States,* 2011 "We have no doubt a resident physician is a student of his trade"). This issue cannot be decided in this motion alone, as it is, itself, the subject of discovery investigation. For the purposes of deciding this motion, the Court may take notice of the attached exhibits (Exhibit C – Dartmouth College Dean Bertrand) which portray, at the very least, an intertwined relationship between the College and DHMC, with regards to Dartmouth Psychiatry. Moreover, even if Plaintiff was not a student of Dartmouth's (which he vehemently denies), that does not preclude the possibility of fraud and retaliation involving senior Dartmouth officials.

<u>13. Kim wrote the Ethics Policy and formed the Ivy League Concussion Initiative</u>
When Plaintiff was hospitalized on January 13 2012, he sought help from the Dartmouth Ethics Policy authored by Jim Yong Kim. Kim ignored at least three emails (Exhibit F). Kim formed an Ivy League Concussion Initiative to address the vacuum of knowledge pertaining to head injuries – which Plaintiff's disability claims center upon. In short, Kim is uniquely knowledgeable pertaining to many key subject areas of this lawsuit.

For all the above reasons, Plaintiff requests the Court deny Defendants motion to quash.

Respectfully submitted, this 9th day of September, 2013.

/s/ J. D. Isaacs

J. D. ISAACS

3553 West Chester Pike Unit 177

Newtown Square, PA 19073

Plaintiff, *pro se*

## CERTIFICATE OF SERVICE

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing **OPPOSITION TO PROTECTIVE ORDER** was delivered electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.    Executed on this 9th day of September, 2013.

/s/ J.D. Isaacs

J. D. ISAACS

Plaintiff, *pro se*

JDIsaacs v. Dartmouth
Case No. 12-CV-40-JL