EXHIBIT 5

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Dr. J.D. Isaacs )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>) Case No. 1:12-cv-00040-JL<br>Dartmouth- Hitchcock Medical )<br>Center, Mary Hitchcock Memorial )<br>Hospital, Dr. Christine T. Finn, and the )<br>Trustees of Dartmouth College )<br>)<br>    Defendants. )<br>) | |

**DEFENDANTS DARTMOUTH-HITCHCOCK MEDICAL CENTER and
MARY HITCHCOCK MEMORIAL HOSPITAL'S RESPONSE TO
PLAINTIFF'S REQUEST FOR ADMISSIONS**

Defendants Dartmouth-Hitchcock Medical Center ("DHMC") and Mary Hitchcock Memorial Hospital ("MHMH") by and through its counsel, Sulloway & Hollis, P.L.L.C., hereby respond to Plaintiff's Request for Admissions ("Requests") as follows:

**PRELIMINARY STATEMENT**

DHMC and MHMH (collectively "Defendants") have responded to the Request for Admissions as they interpret and understand such Requests. If Plaintiff subsequently asserts an interpretation of any Request that differs from Defendants' interpretation or understanding, Defendants reserve the right to supplement their objections and/or responses.

**GENERAL OBJECTIONS**

The following General Objections are made to each request in Plaintiff's Request for Admissions in addition to any objections addressed to particular requests:

    1.    Defendants object to the Requests to the extent that they are overly broad and unduly burdensome.

{012085-0628 C1069985.1 }

2. Defendants object to the Requests to the extent that they seek information or documents that are not relevant to any claim or defense in this action and are not reasonably calculated to lead to the discovery of admissible evidence.

3. Defendants object to the Requests to the extent that they seek information or documents pertaining to persons who are not parties to this action and which are protected from disclosure by their rights of privacy, whether arising under common law, statute, Defendants' policies and procedures, ACGME requirements, or otherwise.

4. Defendants object to the Requests to the extent that they seek information or documents which are protected from disclosure by the statutory or common law of the State of New Hampshire (including, but not limited to, New Hampshire RSA 151:13(a) and 329:29(a)).

5. Defendants object to the Requests to the extent that they seek information or documents protected by the attorney-client privilege or attorney-work product doctrine.

6. Defendants object to the Requests to the extent they are vague and ambiguous, unreasonably cumulative or duplicative, or request information that is equally available to Plaintiff.

7. The objections and responses herein are made without waiver of and with specific preservation of: (a) all objections as to competency, relevancy, materiality, privilege and admissibility of the information or the subject matter thereof, as evidence for any purpose and any proceeding in this action (including trial) and in other actions; (b) the right to object on any grounds at anytime to a demand for further responses to these or any other discovery requests or other discovery proceedings involved in or related to the subject matter of the discovery to which information or documents are provided; and, (c) the right at any time to review, correct, add to, supplement or clarify any of these responses. All requests should be deemed denied unless

expressly admitted, or to the extent Defendants specifically state that they are without knowledge.

8. Defendants object to the Requests to the extent that they exceed the total number of requests (35) as agreed to by the parties in the Discovery Plan.

9. Defendants object to the Requests to the extent they are propounded upon or sent to the attention of Dr. Marc Bertrand, who is not a party to the case. Pursuant to Fed. R. Civ. P. 36(a)(1) a party may serve on any other party such written discovery, but there is no provision for propounding interrogatories on a non-party.

## RESPONSES TO REQUEST FOR ADMISSIONS

1. On May 10, 2011 you certified the correctness of Plaintiff's Application for Training License to the New Hampshire Board of Medicine.

**RESPONSE:** Admitted. On May 10, 2011, Dr. Bertrand "signed" the "Verification by Accredited Program" for Plaintiff's Application for Training License.

2. No later than May 10, 2011, you were noticed, on Page 3 of the aforementioned document, about Isaacs' resignation from a preliminary surgery internship at University of Arizona Health Sciences Center in Tucson (hereafter "Arizona Surgery Internship").

**RESPONSE:** Denied. Dr. Bertrand was not aware of Plaintiff's resignation from the University of Arizona at that time.

3. Pursuant to the NH Board Training License application instructions, Isaacs appended an entire page (hereafter "Page 5") to the document detailing his resignation from the Arizona Surgery Internship.

**RESPONSE:** Admitted. Plaintiff attached supplemental information about his resignation from the University of Arizona to the reverse side of one of the pages to his Application for Training License. Dr. Bertrand was not aware of Plaintiff's resignation from the University of Arizona at that time.

4. No later than May 10, 2011, you noticed Page 5 mentioned Plaintiff's concern that the Arizona Surgery Internship was on ACGME probation.

**RESPONSE:** Denied.

5. No later than May 20, 2011, you possessed knowledge that Isaacs had not mentioned the Arizona Surgery Internship on his ERAS application.

**RESPONSE:** Denied.

6. Having been noticed of Isaacs' entire ERAS and NH Board Application, by May 20 2011 both you and Christine Finn waived any objection to the purported ERAS omission of the Arizona Surgery Internship.

**RESPONSE:** Defendants object to Request 6 as misstating facts and calling for legal conclusions. Without waiving said objections, denied.

7. You completed Anesthesiology residency training at the University of Arizona Health Sciences Center in Tucson, for a period of approximately three years.

**RESPONSE:** Admitted, but Dr. Bertrand's residency program was two years.

8. You completed Cardiac Anesthesiology fellowship training at the University of Arizona Health Sciences Center in Tucson, for a period of approximately one year.

**RESPONSE:** Admitted, but Dr. Bertrand's fellowship was six months.

9. You completed Neuroanesthesia fellowship training in Arizona, for a period of approximately one year.

**RESPONSE:** Admitted, but Dr. Bertrand's fellowship was six months.

10. You worked with numerous surgeons in Arizona during the course of your graduate medical education.

**RESPONSE:** Admitted.

11. As of May 10, 2011, you maintained personal and/or professional relationships with surgical staff and/or GME teaching affiliates at the University of Arizona Health Sciences Center in Tucson.

**RESPONSE:** Defendants object to Request 11 to the extent that "relationship" is vague or undefined. Without waiving said objection, admitted to the extent that that Dr. Bertrand has maintained some minimal contacts with faculty in Arizona.

12. No later than September 30, 2011, you had communicated or discussed Isaacs' residency in Arizona with past colleagues in Arizona.

**RESPONSE:** Denied.

13. You, or any other agent of the Defendants, made medical education records requests to the Arizona Surgery Internship concerning Isaacs.

**RESPONSE:** Denied.

14. You, or any other agent of the Defendants, received knowledge of Isaacs' medical education in a fashion, method, or mechanism that was not compliant with FERPA and/or HIPAA regulations.

**RESPONSE:** Denied.

15. Page 5 no longer exists in Plaintiff's GME "Training License" portfolio.

**RESPONSE:** Defendants object to Request 15 to the extent that "Training License" portfolio is undefined. Without waiving said objection, and assuming Plaintiff refers to his GME personnel file, denied.

16. Page 5 was intentionally removed from Isaacs' GME "Training License" portfolio.

**RESPONSE:** Defendants object to Request 16 to the extent that "Training License" portfolio is undefined. Without waiving said objection, and assuming Plaintiff refers to his GME personnel file, denied.

17. Isaacs DHMC Outlook email account was terminated at least 1 month prior to his dismissal from Dartmouth.

**RESPONSE:** Denied as stated. When Plaintiff was placed on leave, his access to e-mails was stopped because he no longer had patient duties. Later, Defendants learned that a litigation hold had not been timely implemented and the account had not been preserved. Please refer to Defendants Responses to Plaintiff's Second Set of Requests for Production of Documents, at #8.

18. You discussed Isaacs' Arizona Surgery Residency with Finn and or other colleagues prior to commencement of Isaacs' Dartmouth Psychiatry residency training.

**RESPONSE:** Denied.

19. You have knowledge or belief that other Dartmouth / DHMC staff knew about Isaacs' Arizona Surgery Residency program enrollment, throughout the course of his training at DHMC.

**RESPONSE:** Denied.

20. During Isaacs' first week of residency at Dartmouth, at least some of his M2 colleagues and instructors had either vague or precise knowledge of Isaacs' Arizona Surgery Internship.

**RESPONSE:** Dr. Bertrand is without knowledge of this matter and therefore it cannot be admitted or denied.

21. During Isaacs' first week of residency at Dartmouth, Isaacs was effectively hazed and or punished, including but not limited to being ordered to conduct inappropriate rectal examination on an elderly patient with terminal metastatic cancer.

**RESPONSE:** Dr. Bertrand is without knowledge of this matter and therefore it cannot be admitted or denied.

22. You have viewed portions of Isaacs' ACGME complaint against the Arizona Surgery Internship.

**RESPONSE:** Denied.

23. The ACGME complaint, on its first page, details a failure to inspect a "wound bandage" allegation Arizona made against Isaacs.

**RESPONSE:** Dr. Bertrand is without knowledge of this matter and therefore it cannot be admitted or denied.

24. On Isaacs' last day at DHMC, Harley Friedman alleged Isaacs failed to inspect a "wound bandage" and therefore committed Medicare fraud.

**RESPONSE:** Denied. Dr. Bertrand was aware, however, that Dr. Friedman had reported that Plaintiff failed to conduct an examination.

25. The "wound bandage" criticism and similar allegations against Isaacs were generally made in bad faith and resulted in his medical deterioration.

**RESPONSE:** Dr. Bertrand is without knowledge of this matter and therefore it cannot be admitted or denied.

26. In May 2012 Isaacs requested that you arrange a videoconference "fair hearing," because he felt "unsafe" on DHMC premises.

**RESPONSE:** Admitted.

27. You responded by emailing 4 (four) denials of Isaacs' requests to his various email accounts.

**RESPONSE:** Denied. Dr. Bertrand sent one reply, using the multiple e-mail addresses Plaintiff had been using, in an effort to make sure he received the reply.

28. Such activity was done with the intentional desire to ridicule, poke fun at, or intimidate Isaacs.

**RESPONSE:** Denied.

29. At the time of sending the four emails, you had knowledge of Isaacs' PTSD diagnosis and other serious medical conditions.

**RESPONSE:** Denied.

30. You typically do not email four copies of the same email to individuals you communicate with.

**RESPONSE:** Admitted. Dr. Bertrand may, however, use multiple e-mail addresses that the sender had been using, in an effort to make sure he or she received the reply.

31. In fact, you have never emailed four copies of the same email to an individual during the course of usual business correspondence.

**RESPONSE:** Admitted. Dr. Bertrand may, however, use multiple e-mail addresses that the sender had been using, in an effort to make sure he or she received the reply.

32. At the time of sending the four emails, you possessed knowledge of Isaacs' use of the ReadNotify email tracking utility.

**RESPONSE:** Admitted, to the extent that Dr. Bertrand was aware Plaintiff used tracking software or something similar.

33. You were aware, by May 2012, that Isaacs invoked ReadNotify on emails he sent to USC and / or to Arizona.

**RESPONSE:** Denied.

34. In fact, your four duplicative emails regarding the "fair hearing" were ridiculing Isaacs' particular methods and styles of email communication.

**RESPONSE:** Denied.

35. You issued a termination letter to Isaacs in March 2012, alleging he failed to disclose the Arizona Surgery Internship on ERAS.

**RESPONSE:** Admitted. By way of further answer, that letter speaks for itself.

36. The termination letter referenced in #35 thereby materially omits your May 2011 waiver to any objection on the purported ERAS omission.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

37. Such a material omission mentioned in #36 constitutes fraud and unfair business practices and ethics violations.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

38. You conveyed a termination letter containing material omission or fraud to the NH Board of Medicine.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

39. As Dean of GME and Director of GME, you have close working relationships and responsibilities with the NH Board of Medicine.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement

between the parties and as set forth in the Discovery Plan.

40. Conveying the aforementioned false termination letter to Isaacs via email and post constituted federal wire and mail fraud.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

41. The termination letter you issued in March 2012 alleged Isaacs' failed to notify you of a purported enrollment at USC.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

42. At the time of issuing the letter, you possessed no legally valid evidence of Isaacs' enrollment at USC.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

43. You terminated Isaacs' GME enrollment at Dartmouth Psychiatry, without giving him a prior fair hearing.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

44. The DHMC bylaws promise or suggest the requirement of a fair hearing before termination of a resident physician.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

45. Historically and or typically, you offered resident physicians a fair hearing prior to terminating them.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

46. With the exception of Isaacs, you have never personally terminated a resident without either a) their consent, or b) a "fair hearing"

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

47. You possess knowledge or belief that during the course of Isaacs' Arizona Surgery Internship, his program directors has knowledge of Isaacs' 2006 federal litigation.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

48. You have ever engaged in direct communications with Dr Jim Yong Kim.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

49. You have ever engaged in direct communications with Dr Jim Yong Kim concerning Isaacs.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

50. At the time of terminating Isaacs, Dr Kim had conveyed to you, either directly or through any third party, including attorneys, knowledge of an approaching important event.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

51. At the time of terminating Isaacs, Dr Kim had conveyed to you, either directly or through any third party, including attorneys, knowledge that he would be nominated by the Executive Branch of the United States to serve as the next President of the World Bank.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

52. At the time of terminating Isaacs, you were in receipt of an email criticizing Dr Kim for inaction on Isaacs' criminal and ethics complaints.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

53. Isaacs was terminated, at least in part, to discredit him before an upcoming important event.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

54. Based on your knowledge and or belief, Isaacs was terminated with Dr Kim's assent.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

55. Isaacs was terminated, at least in part, to discredit his claims prior to Kim's political appointment or nomination for appointment to the World Bank.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

56. As a Dean of Dartmouth Medical School, a resident physician such as Isaacs was one of your students.

**RESPONSE:** Objection. This Request exceeds the number allowed by agreement between the parties and as set forth in the Discovery Plan.

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August 2013, Defendants Dartmouth Hitchcock Medical Center and Mary Hitchcock Memorial Hospital's Answers to Plaintiff's Request for Admissions were forwarded, via e-mail, to Plaintiff and all counsel of record.

_____
Christopher J. Pyles