1

DR JEFFREY DAVID ISAACS

2

3553 W Chester Pike Unit 177

Newtown Square, PA 19073

3

Telephone: (610) 202-1460

jeffrey.isaacs.wg03@wharton.upenn.edu

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

10

11

12

13

14

DR JEFFREY DAVID ISAACS

15

       Plaintiff, *pro se*,

16

17

       -V-

18

TRUSTEES OF DARTMOUTH COLLEGE;

ARIZONA BOARD OF REGENTS;

19

DR MARC BERTRAND;

20

DR JIM YONG KIM;

EDWARD KAPLAN;

21

KATHLEEN PEAHL;

DR AMY WAER;

22

MARY HITCHCOCK MEMORIAL HOSPITAL;

23

UNIV.ARIZONA HEALTH SCIENCES CENTER;

and JOHN DOE #1 & #2,

24

       Defendants.

25

26

27

28

     )
     )
     )
     )
     )

**VERIFIED COMPLAINT**

Case No. CV-13-5708-PBT

**COMPLAINT FOR DAMAGES
& PERMANENT INJUNCTION**

**DEMAND FOR JURY TRIAL**

## I.  STATEMENT OF THE CLAIM

In 2005, the Plaintiff had a minor dispute with a medical school classmate, the child of a prominent National Institutes of Health (NIH) executive director. The classmate, scorned, invoked the father's communication with the Dean of the medical school. The Plaintiff inadvertently obtained evidence of the NIH communication with the Dean using "ReadNotify" email tracking software, which lead to an unintentional legal threat against the Dean. As a result, despite achieving US Medical Board scores higher than the average neurosurgeon, the Plaintiff has been wrongly vilified as a 'dangerous litigant' and effectively barred from U.S. medical training for the past decade. In particular, the Plaintiff has been deprived matriculation in a federally funded M.D. program, a federally-funded surgical residency in Arizona, and deprived of a federally-funded psychiatry residency and M.P.H. degree program with Defendant Trustees of Dartmouth College.

This case, in summary, asserts claims of civil obstruction of justice and conspiracy. These actions left Plaintiff without a career, and with serious neuropsychiatric and cardiovascular findings during medical studies conducted at the University of Pennsylvania. Despite the fact that Plaintiff's California medical school records were sealed, acquitted, and discharged, Defendants sought to "break" Plaintiff and get him to speak about records they knew were sealed. Defendants, from 2010-2012, feigned ignorance to the aforementioned California litigation, and abused Plaintiff (see related lawsuit CV-12-40-JL NH). Plaintiff recently confirmed that the Administrative Office of US Courts' PACER Service Center maintains audit records of all access to old lawsuits. Plaintiff expects to amend this complaint in the near future, upon receipt of the PACER audit records proving beyond reasonable doubt the conspiracy detailed herein. Plaintiff and his family have twice this year gone to the Philadelphia FBI bureau office, seeking criminal charges against the individuals behind the conspiracy, fraud, assault, and evidence destruction.

## II. JURISDICTION AND VENUE

1.      Jurisdiction is invoked pursuant to 28 U.S.C. § 1332 (diversity of parties in PA/AZ/NH), 28 U.S.C. § 1331 (Plaintiff's right of participation in a federally funded medical training after suing an US federal employee / NIH director),   and 28 U.S.C. § 1343(a)(3) (civil rights, specifically, right to not be retaliated against for engaging in federal litigation against an NIH director and medical school receiving federal funds). This case assigns John Doe #1 and #2 as defendants. It is unknown to Plaintiff who initiated the alleged conspiracy. All named defendants, nonetheless, had minimum contacts with Plaintiff in Pennsylvania.

2.      Venue is proper in the Eastern District of Pennsylvania according to 28 U.S.C. § 1391(b)(2) and  28 U.S.C. § 1391(b)(3). Pursuant to 28 U.S.C. § 1391(b)(2), a substantial part of this case concerns retaliation against protected activity Plaintiff engaged in from Eastern Pennsylvania, namely filing civil process 06-CV-3338 in the California central district (a diversity case involving PA/DC/CA districts).  Pursuant to  28 U.S.C. § 1391(b)(3), venue in Eastern Pennsylvania is appropriate because Defendants have purposefully engaged in fraudulent and or oppressive contacts with Plaintiff while he was resident in Eastern Pennsylvania.

## III.  THE PARTIES

### A.      Plaintiff

3.      Plaintiff DR JEFFREY DAVID ISAACS is a citizen of the Commonwealth of Pennsylvania.

### B.      Defendants

4.      TRUSTEES OF DARTMOUTH COLLEGE, MARY HITCHCOCK MEMORIAL HOSPITAL are organizations in New Hampshire. EDWARD KAPLAN, MARC BERTRAND and KATHLEEN PEAHL are individuals resident in New Hampshire. Defendant JIM YONG KIM was resident in New Hampshire as president of Dartmouth College at the time of the alleged facts, but is now resident in Washington DC as president of the World Bank.

1    5.    ARIZONA BOARD OF REGENTS and UNIVERSITY OF ARIZONA HEALTH

2    SCIENCES CENTER  are organizations located in the State of Arizona. Dr AMY WAER is an

3    individual resident in the State of Arizona.

4        6.    Plaintiff is not aware of the true names and/or capacities sued herein as JOHN DOE #1

5    and #2, and therefore sues said defendants by such fictitious names.  Plaintiff will amend this

6    complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and

7    believes and therefore alleges that each of the Doe defendants is legally responsible and liable for the

8    injuries and damages hereinafter set forth. Plaintiff will ask leave to amend this complaint to insert

9    further charging allegations when such facts are ascertained.

10        7.    Each of the defendants, including defendants JOHN DOE #1 & #2, caused and is

11    responsible for the below-described unlawful conduct and resulting injuries by, among other things,

12    personally participating in the unlawful conduct or acting jointly or conspiring with others who did

13    so; by authorizing, acquiescing in or setting in motion policies, plans or actions that led to the

14    unlawful conduct.

15

16        **IV.    FACTS APPLICABLE TO ALL CAUSES OF ACTION**

17        8.    Plaintiff commenced federal litigation in 2006 against a California medical school, its

18    Dean, Assistant Dean of Student Affairs, a university general counsel, and an NIH director (the

19    "individual defendants"). Plaintiff alleged he was inappropriately disciplined as a result of favoritism

20    by the deans towards his classmate, the daughter of an NIH director oversaw disbursement of $1

21    billion annually in tax payer funds, some of which were directed to the California university. Both

22    Deans and the NIH director resigned their respective positions within a year of the 2006 lawsuit

23    filing.

24        9.    In 2007, in exchange for dismissal of claims against the individual defendants, the

25    California school agreed to seal any and all disciplinary records pertaining to Plaintiff. In 2008, the

26    entire lawsuit was settled in exchange for the California school issuing a broad acquittal of Plaintiff

27    and discharging prior enrollment matriculation contracts.

28

10.     Plaintiff graduated from a foreign medical school in 2010. His basic sciences studies in the Caribbean lead to him receiving, in 2008, a US Medical Licensing board score (USMLE 1) three points higher than the average neurosurgeon.  In 2009-2010, he completed clerkships in neurosurgery at Mount Sinai (NY), ER and orthopedic surgery clerkships at the Cleveland Clinic, and core medical rotations at the largest medical school in London (SGUL). Plaintiff received above average or superior reviews and graduated without incident in four years time.

11.     Upon graduating, Plaintiff enrolled in a preliminary surgery residency at the University of Arizona.

12.     It is alleged that John Doe #1 stalked Plaintiff, most likely since the 2006 California incident, and did not want Plaintiff to become a doctor in America. John Doe #1 communicated with the University of Arizona about Plaintiff's prior disciplinary allegations, in violation of two settlement agreements and/or FERPA.

13.     Plaintiff was told on his second day at Arizona that he was not qualified for the residency. Plaintiff, based upon his anecdotal knowledge of approximately 300 members of his graduating medical school class, never heard of an intern being told on day #2 that he was not qualified to remain in the program.

14.     Within six weeks, Plaintiff resigned, suspecting that Arizona had communicated with John Doe #1 and that Arizona dissented against his prior litigation but understood they could not legally discuss the issue with Plaintiff, without revealing John Doe #1 actions. Plaintiff noticed Arizona of a lawsuit, but without evidence, attempted to put the matter behind him and enrolled in another residency at Dartmouth College.

15.     During his first week at Dartmouth, Plaintiff was witnessed to have "nervous breakdown" characteristics and "incapacitating anxiety," necessitating his removal as a doctor on the inpatient medical M2 ward. Plaintiff believes, on his first two days of work on M2, he was asked to perform two unnecessary prostate exams, and was generally hazed for the next six months. Plaintiff filed lawsuit (cv-12-40-JL USDC-NH) against Dartmouth in January 2012 for hazing , fraud, and medical injuries caused by abuse. Several weeks later, Defendant Kaplan informed Plaintiff that he would be dismissed from Dartmouth, because of his California dispute – despite the fact it was

sealed, annulled/discharged, and acquitted. Nonetheless, Plaintiff finally had some evidence that after almost 7 years, someone was leaking information about California to his residency programs, in violation of settlement agreements.

16.    On January 16, 2012, Plaintiff noticed Defendant Kim of intent to file lawsuit 12-40-JL USDC NH. Plaintiff requested Kim order all emails to be preserved, pursuant to FRCP 34.

17.    On January 19, 2012, to spite Plaintiff and to cover assault and abuse charges, Plaintiff's email account was deleted, in violation of Dartmouth email policy and FRCP 34 & 37.

18.    The deleted emails contained evidence of abuse and fraud.

19.    Two months later, Plaintiff accused Defendant Kim of inaction regarding his request for investigation of abuse and fraud. A week later, and two days prior to Kim's nomination to President of the World Bank, Plaintiff was terminated from Dartmouth's residency.

20.    It is believed Jim Yong Kim previously worked with and knew one of the individual defendants from the California litigation, the NIH director, as the two had ten to fifteen years of overlapping employment within Harvard Medical School's international health faculty.

21.    In 2012, Plaintiff offered Kim's counsel the opportunity for him to not be named in this lawsuit, if he could provide an affidavit that he does not know any of the individual defendants. Kim declined.

22.    It is alleged John Doe #2 did not want Plaintiff to become a licensed doctor, and communicated with Dartmouth about his prior litigation in California. Plaintiff's program director, Christine Finn, has testified that she learned about the California litigation from her attorney, Defendant Kaplan. As such, John Doe #2 and Defendant Kaplan improperly communicated about the Plaintiff's sealed/discharged educational records, in violation of FERPA and two federal court settlement agreements.

23.    Plaintiff had three attorneys representing him in CV-12-40-JL. Defendant Peahl sent them a baseless threat for Rule 11 sanctions, ordering them to drop fraud claims against Dartmouth. Peahl knew a *prima facie* case of fraud existed, but proceeded to intimidate Plaintiff's attorneys despite her knowledge of her client's fraud.

24.    In general, Defendants Peahl and Kaplan have engaged in improper and unethical litigation practices seeking to subvert justice. Of note, Defendant Kaplan was president of the Federation of Defense and Corporate Counsel at the time he participated in the alleged civil obstruction of justice against a *pro se* Plaintiff. While not exhaustive, the following list constitutes Plaintiff's claim for civil obstruction of justice:

a) Defendant Kim told a process server he was not home, but the process server testified he believed Kim was in fact home, and evaded the summons for cv-12-40.

b) Peahl threatened Rule 11 sanctions against three newly graduated attorneys if they continued to state a claim of fraud against Dartmouth, despite *res ipsa loquitor* evidence in her possession that Defendant Bertrand terminated Plaintiff for false and fraudulent reasons.

c) Plaintiff has been denied discovery requests for even the most basic evidence, such as the medical records of the two patients who received unnecessary prostate exams.

d) Peahl and Kaplan have raised over 100 frivolous objections, intended to obstruct justice. For example, no deposition has occurred despite three months of scheduling efforts by Plaintiff; Peahl and Kaplan have objected to 15-45 minute commutes to the NH US District Court as "oppressive." They have objected to email keyword searches for "Isaacs" as irrelevant. In short, Defendants Kaplan and Peahl litigated with constant disregard for the Federal Rules.

e) Although an entire academic medical center email account was intentionally destroyed, Defendants Peahl and Kaplan have falsely testified that a negligent "failed litigation hold" lead to the accidental deletion of the emails. In fact, the emails normally wouldn't have been deleted under Dartmouth's own email policy, but for intentional subversive action. In other words, Defendant Peahl and Kaplan have falsely certified felonious destruction of federal court evidence as accidental, when they know that no accident occurred.

f) When Plaintiff telephoned Defendant Kim, his attorney answered and ridiculed, taunted, and harassed plaintiff, including statements such as "I'm sure you do wish you knew what happened."

25.    Plaintiff asserted in CV-12-40 that he was the first resident ever to be dismissed from Dartmouth without a fair hearing, and that this was done to discredit the Plaintiff before Defendant Kim's World Bank nomination. After Plaintiff was dismissed,  and after CV-12-40-JL was filed, Plaintiff was offered a "late" post-dismissal fair hearing. For medical reasons, Plaintiff did not feel safe attending the late fair hearing on Dartmouth premises, because he had alleged felony level crimes (evidence destruction, fraud, and unnecessary "hazing" prostate exams) against individuals who would be present in the hearing. Plaintiff was denied his request for a fair hearing via video conference, despite the fact Defendants routinely request video conference for depositions and other similar matters.

26.    Plaintiff recently learned that Defendant Bertrand , a Dean of Dartmouth College, trained with Arizona surgery for approximately 5 years. Bertrand verified Plaintiff's application to Dartmouth, including his disclosure of training at Arizona surgery. It is alleged Bertrand conspired with individuals at Arizona surgery. Specifically, Plaintiff was subject to  "coordinated" criticisms from both Dartmouth and Arizona , such as a specific "wound bandage inspection" criticism. Plaintiff's criticisms were not coincidental, and were, in fact, meant to build a case for terminating Plaintiff's US medical training without raising the California issue. As a result, Plaintiff's federal training subsidy has been exhausted by the defendants, and he is left without possibility of becoming a licensed physician in the United States.

## V.  CAUSES OF ACTION

## CONSPIRACY

### (AGAINST ALL DEFENDANTS)

27.    Plaintiff realleges and incorporates by reference the allegations of the paragraphs 1 through 26 of this complaint as though fully set forth herein.

28.    Plaintiff had a right to pursue his chosen career in medicine and participate in Medicare/Medicaid funded US medical training.

29.     Defendants , through John Doe #1 and #2,  Kaplan, Bertrand and Waer, transmitted knowledge of acquitted and sealed disciplinary actions, and coordinated false performance criticisms against the Plaintiff, with the intent to cause embarrassment, reputational and career loss to Plaintiff.

30.     Defendants knew that retaliating against Plaintiff for a 2006 lawsuit, and/or a 2010 notice of intent to sue Arizona, was illegal. Defendants knew that Plaintiff could rightfully disavow knowledge of the sealed , acquitted disciplinary actions, but nonetheless abused him and terminated him from medical training for withholding sealed records.

31.     Defendants conspired to "break" Plaintiff and get him to speak about the prior California litigation.

32.     Plaintiff has suffered severe medical consequences and career loss as a result of Defendants conspiracy.

### SECOND CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(AGAINST ALL DEFENDANTS)

33.     Plaintiff realleges and incorporates by reference the allegations of the paragraphs 1 through 26 of this complaint as though fully set forth herein.

34.     The conduct set forth above was extreme and outrageous and an abuse of the position of Defendants.  Said conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress.

35.     The foregoing conduct did, in fact, cause Plaintiff to suffer extreme emotional distress. As a proximate result of said conduct, Plaintiff suffered embarrassment, humiliation and severe emotional distress.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

(AGAINST DEFENDANT MHMH/DARTMOUTH)

36.    Plaintiff realleges and incorporates by reference paragraphs 1 through 26 of this complaint as though fully set forth herein.

37.    Defendant Mary Hitchcock Memorial Hospital and Trustees of Dartmouth College offered Plaintiff a "late Fair Hearing."

38.    Defendant Mary Hitchcock Memorial Hospital and Trustees of Dartmouth College denied Plaintiff reasonable accommodation of a teleconferenced fair hearing, in light of Plaintiff's medical condition, and general fear, of being in a room with individuals who committed felonious sexual assault, fraud, evidence destruction, and conspiracy against him.

39.    Defendants routinely use teleconferencing and denied this communications medicum only to intimidate or inconvenience Plaintiff. As such, the contractual offer for a late fair hearing was not honored in a reasonable fashion.

## FOURTH CAUSE OF ACTION

## CIVIL OBSTRUCTION OF JUSTICE

### (AGAINST ALL NON-ARIZONA RESIDENT DEFENDANTS )

40.    Plaintiff realleges and incorporates by reference paragraphs 1 through 22 of this complaint as though fully set forth herein.

41.    Defendants intentionally deleted an entire resident physician email account, several days after a Rule 34 issuance.

42.    Defendants raised countless inappropriate objections intended to stall or obstruct or intimidate Plaintiff's prosection in 12-cv-40.

43.    Defendants deleted other critical emails, beyond Plaintiff's own account, which they already admitted to accidentally deleting.

44.    Defendants made false claims of Jim Yong Kim's whereabouts with regards to Summons delivery.

45.    Defendants filed for an "Apex doctrine protective order" for Jim Yong Kim, despite their knowledge that Kim was relevant involvement and/or negligence in 12-cv-40.

46.    Defendants made dishonest Rule 11 threats against three attorneys, new to the NH Bar. Defendants intend to use their stature as New Hampshire's leading educational instutuion to cover up abuse , fraud, and sexual assault that Plaintiff suffered. Moreover, Defendants acted with willful disregard of the FRCP in expectation that law enforcement officials in New Hampshire would not equally apply laws to them, given their stature.

## FIFTH CAUSE OF ACTION

### FOR INJUNCTIVE RELIEF

(AGAINST DEFENDANT TRUSTEES OF DARTMOUTH COLLEGE AND MARY HITCHCOCK MEMORIAL HOSPITAL)

47.    Plaintiff realleges and incorporates by reference paragraphs 1 through 26 of this complaint as though fully set forth herein.

48.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to plaintiff as it will seriously jeopardize his chance to become a physician.

49.    Plaintiff is therefore entitled to permanent injunction ordering Defendants to cease any conspiracy or to deny Plaintiff medical training on retaliatory basis for acquitted allegations.

50.    Plaintiff has no plain, speedy or adequate remedy at law other then injunctive relief so as to prevent further damage to Plaintiff's medical career.

## VI.  STATEMENT OF DAMAGES

51.    As a direct and proximate result of the wrongful acts and/or omissions of the Defendants, as set forth above, Plaintiff has sustained the following injuries and damages:

a.    Severe emotional distress, humiliation, fear, and embarrassment;

b.    Loss of career opportunity; and

c.    Past and future medical expenses;

WHEREFORE, the Plaintiff prays for damages as follows:

a.    That this Court declare the rights of all parties;

b.    Compensatory damages, including, but not limited to general and special damages, amounting to $6,900,000 representing no less than four years of lost livelihood, medical damages, and long term or permanent destruction of medical career, and inability to pay $300,000 in student loan debt;

c.    Exemplary and punitive damages of $6,000,000;

d.    Costs of suit incurred herein;

e.    That this Court issue a permanent injunction, all enjoining and restraining Defendants, and each of them, retracting and or mitigating all damages caused by the aforementioned conspiracy

f.    All other compensatory, equitable and declaratory relief as this Court deems just.

Respectfully submitted, this 30th day of September, 2013.

_____

JEFFREY DAVID ISAACS

Plaintiff, *pro se*

3553 W Chester Pike Unit 177
Newtown Square, PA 19073
Telephone: (610) 202-1460
jeffrey.isaacs.wg03@wharton.upenn.edu

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of this action.

DATED:

_____

JEFFREY DAVID ISAACS

Plaintiff, *pro se*

1

**VERIFICATION**

2

3       I, Jeffrey David Isaacs, do declare as follows:

4

5       That I am the Plaintiff in the above-entitled action.  I have read the foregoing Complaint for

6   Damages, Injunctive Relief; Demand for Jury Trial, and I know its contents.

7       I declare, therefore, that the matters stated in the foregoing document are true of my own

8   knowledge, except as to matters which are stated on information and belief, and as to those matters, I

9   believe them to be true.  Those matters I aver are what I know to be true.

10      I declare under penalty of perjury under the law of the United States that the foregoing is true

11  and correct.

12      Executed on this 30th day of September, 2013.

13

14                                          _____

15                                          JEFFREY DAVID ISAACS

16                                          Plaintiff, *pro se*

17

18

19

20

21

22

23

24

25

26

27

28