Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DOCTOR J. D. ISAACS | )<br>) |
| Plaintiff, *pro se*, | ) Case No. CV-12-40-JL<br>) |
| -V- | )<br>) |
| DARTMOUTH HITCHCOCK MEDICAL CENTER;<br>DOCTOR CHRISTINE FINN;<br>MARY HITCHCOCK MEMORIAL HOSPITAL;<br>TRUSTEES OF DARTMOUTH COLLEGE;<br>and JOHN DOE,<br>Defendants. | ) **RESPONSE TO**<br>) **MOTION TO COMPEL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.  RESPONSE TO MOTION TO COMPEL

Defendants move to compel four broad interrogatory responses, which Plaintiff will address individually herein. Of note, Defendants have objected to nearly every one of Plaintiff's discovery requests. Defendants have not produced redacted patient records for an alleged sexual assault in 2011, yet seek Plaintiff's 2002 psychotherapy notes. Likewise, Defendants have sent a keyword list containing fifty keywords for Plaintiff to search his ESI, but Defendants have refused to search for 2 keywords - "Isaacs" and "Baughman". Moreover, in all probability, Defendants have deleted more emails than they have already admitted to.

Plaintiff has complied with most of Defendants' burdensome discovery requests and, in one example, searched and produced all relevant personal communication records from 8 years of gmail, Facebook, and other ESI.

**<u>Interrogatory #11 – The ReadNotify record request – is unlikely to lead to admissible evidence.</u>**

 Defendants seek Plaintiff's ReadNotify records for one reason, which Plaintiff has already asserted in various pleadings: *to assess risk whether or not to proceed with perjured testimony and evidence destruction.* Again, Plaintiff submits that interrogatory #11 is evidence of *mens rea* to obstruct justice (in addition to an entire deleted hospital email account). In their Motion to Compel, Opposing Counsel struggles to provide any explanation of how this information is going to lead to admissible evidence:

> "It will also show if he was tracking communications to any defendants and/or their lawyers, which is relevant given his history of doing so in other situations…. Such tracking and e- mail information is relevant here to identify who the Plaintiff may claim is "working on the case against" him, what e-mails he has, where they were sent, and what they say."

Opposing Counsel's rationalization is rather hard to follow, and as such, Plaintiff is unable to ascertain or critique exactly how they purport this evidence will be useful. Of note, it is

believed that there exists no case where "ReadNotify" tracking information was ordered to be produced as evidence. That said, Plaintiff agrees that ReadNotify provided compelling evidence in his 2006 lawsuit against USC that an NIH director inappropriately influenced a decision to destroy Plaintiff's career. Unfortunately, USC never produced the corresponding emails from the NIH to USC; in general, Plaintiff's observation is that *pro se* litigants tend to not be taken seriously by university counsel, as they rarely win their cases.

**Interrogatories #17 & #18 are Irrelevant and Non-Admissible under FRE 412(a)**

Plaintiff has provided the USC settlement agreements to the Defendants. It appears the Defendants wish to unnecessarily complicate this case by admitting evidence from an employment dispute Plaintiff had in 2002. Despite asking for minimally relevant evidence from 2002, Defendants are unwilling to produce critical evidence from 2011 (eg emails containing the term "Isaacs") but are attempting to compel production of a minor dispute from 12 years ago.

The Plaintiff hopes the Court will curtail Defendants attempts to 'blame the victim' and unfairly attack his reputation by bringing up matters settled 12 years ago. This is a case that alleges inappropriate sexual assault as part of the IIED claim. At a deposition last week, the deponent "could not recall" the reasons for ordering Plaintiff to conduct a prostate exam on an elderly patient with terminal cancer. The deponent nervously added "At the very least, you learned something" – which , at a minimum, would suggest violation of consent rules for experimental or training procedures.  FRE 412(a) is clear that the documents being sought by Defendants would be inadmissible at trial. If the Court grants leave to submit the 2002 documents under *ex-parte* seal to the Court, the FRE 412 applicability should be straightforward.

The Defendants are aware the Plaintiff was diagnosed with PTSD in 2002 , and in fact, Plaintiff alleges the Defendants (trained psychiatrists) harassed him in order to "experiment" and determine Plaintiff's diagnosis for themselves. Now, Defendants seek

all of Plaintiff's psychotherapy notes dating back to 2002 (which are referenced in the 2002 settlement), which is inappropriate in cases where a victim alleges any form of assault.

**Interrogatory #21 is Overly Broad, Burdensome, and Seeks Privileged Medical Records**

Interrogatory #21 seeks Plaintiff's education, disability, and income tax records, with no limitation for time:

> "Every health care provider identified in these interrogatories, your education records, your employment records for every employer identified in these interrogatories, your disability records, your worker's compensation records and your income tax returns."

**Medical Records:**

By putting certain disabilities at issue, a plaintiff does not automatically waive their entire lifetime of medical records and only the records pertaining to the physical and mental conditions related to the incident are discoverable. (*Britt v. Sup. Ct.* (*San Diego Unified Port Dist.*) (1978) 20 Cal.3rd 844, 864.) Plaintiff has provided all of his medical records since 2010 to the Defendants, with the exception of psychotherapy notes, which again, are privileged and inadmissible. Plaintiff's ADA claims against Dartmouth are related to 1) a sleep disorder, which was actually diagnosed by Dartmouth, and 2) Frontal Brain impairment(whether due to brain injury or asperger's), diagnosed in 2012. Defendants are in possession of all documents pertaining to Plaintiff's sleep disorder and frontal brain impairment. *Of note, Defendant Dartmouth College possesses undergraduate records from 1997 pertaining to Plaintiff's head injury, but they have been unwilling to produce them!*

The Plaintiff, to assist the Court, will detail what Dartmouth seeks with this motion for medical records. The Plaintiff was subject to an unusual Tarasoff hold in 2006, which in this case means Plaintiff's doctors were concerned that he was so angry about being wrongfully expelled from USC, that he could present a danger to someone. Essentially,

Dartmouth is and has been (for six months of Plaintiff's work at DHMC) unfairly discriminating about Plaintiff's 2006 involuntary psychiatric hold. As Plaintiff has alleged, Dartmouth knew about this psychiatric hospitalization and tormented him over six months of employment. It is unclear how psychotherapy notes from Plaintiff's 2006 hospitalization – for the distress of being wrongly expelled from a medical school – will be applicable. A Tarasoff hold is not a legal verdict, it is simply a civil duty of a psychiatrist to hold any patient who is unstable for any reason – through fault of the patient's own or fault of another. These psychotherapy notes will merely provide what we already know – Plaintiff was acutely distressed in 2006, after being wrongly dismissed from medical school. Dartmouth's attorneys are simply fishing to find something to use against Plaintiff from his psychotherapy notes. As Harvard-trained psychiatrists, they know that psych hospitalizations carry great stigma. This is not a valid reason to void FRE 412, and other rules prohibiting psychotherapy note admission.

**Tax Records:**

Plaintiff has about $350,000 in student loan debt and no significant assets (other than his medical diploma). His income from 2008-2012 was limited to intern salary of $48,000 p.a. from Dartmouth and Arizona, for a total of seven months. In short, there is no good cause to order production of tax returns, other than to intimidate and harass the Plaintiff.

**Workers Comp:**

Plaintiff has never filed for Workers Compensation.

**Educational Records:**

Defendants are already in possession of Plaintiff's educational credentials, and he was additionally credentialed by the ECFMG (Educational Commission for Foreign Medical Graduates). Simply put, Plaintiff's educational credentials are not in question in this lawsuit.

Furthermore, Plaintiff never had any educational disciplinary records, with the exception of those that were sealed and acquitted at USC. To avoid duplicity, Plaintiff incorporates his arguments for the pending "Motion to Quash USC and AUC Subpoenas" into this

section. For the reasons stated in the Motion to Quash, Defendants should not be entitled to a subpoena for Plaintiff's USC academic records, and likewise, this Motion to Compel should be denied.

Respectfully submitted, this 27th day of October, 2013.

/s/ JD ISAACS

J. D. ISAACS

3553 West Chester Pike Unit 177

Newtown Square, PA 19073

Plaintiff, *pro se*

JDIsaacs v. DHMC
Case No. 12-CV-40-JL

**CERTIFICATE OF SERVICE**

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing REPLY TO MOTION TO COMPEL was delivered via USPS & electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

Executed on this 27th day of October, 2013.

/s/ J. D. Isaacs

J. D. ISAACS

Plaintiff, *pro se*
