Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DOCTOR J. D. ISAACS | |
| Plaintiff, *pro se*, | Case No. CV-12-40-JL |
| -V- | |
| DARTMOUTH HITCHCOCK MEDICAL CENTER; DOCTOR CHRISTINE FINN; MARY HITCHCOCK MEMORIAL HOSPITAL; TRUSTEES OF DARTMOUTH COLLEGE; and JOHN DOE, Defendants. | **MOTION TO RECONSIDER MAGISTRATE ORDER OR STAY LITIGATION PENDING APPEAL** |

# MOTION TO RECONSIDER MAGISTRATE ORDER OR STAY LITIGATION PENDING APPEAL

Plaintiff hereby motions for reconsideration of the Magistrate Judge's November 4th order, in light of anticipated appeal to the First Circuit. Plaintiff seeks reconsideration of select portions of the Magistrate's order: Section #6(Docket 89), Section #2(Docket 76), Section #7(Docket 71), and Section #8(Docket 93). Section 7 , denying sanctions & injunction , will be immediately appealed should reconsideration be denied. Plaintiff seeks reconsideration by Chief Judge Laplante for this motion and future matters in this case, for case continuity in anticipation of the Magistrates' appointment as a District Judge.

**Review of Docket No 89 for PACER Subpoena**

After Docket No 89 was filed, Plaintiff became aware of regulations regarding "ancillary" out-of-district subpoenas (Exhibit A). It is admittedly difficult for Plaintiff to find authoritative or clear sources on *pro se* issuance of out-of-district subpoenas, but now believes he filed Motion/Docket No 89 erroneously in this Court. As a matter of law, Plaintiff now believes this Court does not have jurisdiction over the PACER subpoena Plaintiff seeks for records located in San Antonio. Plaintiff will be filing ancillary motions in the USDC Western Texas to obtain the PACER records.

Furthermore, Plaintiff reasserts and references all arguments made in Docket No 89 as to the critical nature of the PACER meta-data. The PACER meta-data is not in any way privileged, and even if it were, Plaintiff has shown good cause for the issuance and enforcement of a subpoena . A simple PACER search (which the US Court Administrator in San Antonio has already performed) has the possibility to significantly simplify this litigation and provide "smoking gun" evidence of Plaintiff's claims.

Considering Plaintiff's entire lifetime of privileged medical and psychotherapy notes were granted by the Magistrate, it appears reasonable that easily obtainable, non-privileged, and critical meta-data from PACER should be discovered.

In light of this, Plaintiff asks this Court to declare whether or not it has jurisdiction over the PACER records in San Antonio, and if so, reconsider the enforcement of the PACER records production.

### Review of Docket No 93 to quash Florida & California Subpoena

As stated above, Plaintiff recently became aware of regulations regarding "ancillary" out-of-district subpoenas. It appears Plaintiff filed a timely motion to quash these subpoenas, but did so in the wrong district, as the motion should have been filed in the South Florida and Central California districts.

Plaintiff asserts that the California USC subpoena is a critical issue in this lawsuit, that deserves scrutinized review. An ancillary denial of this motion to quash may be immediately appealed, and Plaintiff intends to exhaust all federal judiciary appeals (if necessary) on this matter that effectively determines his future employability in America. Furthermore, Plaintiff does not believe the Defendants have shown good cause to "break" the seal USC entered into agreement with Plaintiff concerning his academic records. <u>The mere fact that the settlement agreement mentioned subpoena compliance does not establish good cause to issue *any* subpoena.</u>

As a matter of law, Plaintiff now is concerned that this Court never had jurisdiction to quash the subpoenas. Because the Plaintiff was confused where to file an out-of-district ancillary motion to quash, this Court should declare whether or not it ever had jurisdiction over the USC records sought, and if not, refer Plaintiff's motion to the proper district so that Plaintiff's timeliness to quash the subpoenas is maintained. If this Court does have jurisdiction, Plaintiff seeks scrutinized reconsideration of the motion.

### Review of Docket No 76 to quash Jim Yong Kim's Subpoena

With two weeks left in scheduled discovery, there has been no explanation of how Plaintiff's emails disappeared, two days after Jim Yong Kim received a Rule 34 notice to

preserve the emails. A 30(b)(6) deposition on Dartmouth College yielded a completely unprepared designee, with no information about Kim or the disappearing emails. Since other attempts of discovery have failed, with two weeks left in scheduled discovery, the Court must grant a deposition of Dr Kim. Furthermore, it is believed Jim Yong Kim knows about the alleged fraud, assented to Plaintiff's termination, and Plaintiff was suspiciously terminated without a fair hearing, two days prior to Kim's appointment to the World Bank.

**Review of Docket No 71 to for Sanctions & Injunction**

Plaintiff seeks review of the Motion for Sanctions & Injunctive Relief by Your Honor. Plaintiff asserts that all cases cited in the Memorandum of Law mandate sanctions against Dartmouth. At a minimum, forensic assessment by an *independent, nationally recognized e-Discovery firm* determining how and why emails pertaining to Plaintiff were deleted should be conducted, and adverse jury instructions issued. It is noted that the Magistrate's hearing and order discussed *forensic recovery* of the DHMC Outlook, but Plaintiff's Motion for Sanctions Proposed Injunction clearly requests *forensic investigation*:

> "An independent e-Discovery forensics firm to assess, report, and convey to the Court (with email archives under seal, and for Plaintiff's inspection) the following:
> a) Defendants email and backup archival system technical overview
> b) All email (Dartmouth and DHMC) archives containing the search term "Isaacs" for the years spanning 2011-2012
> **c) Any evidence (physical loss, meta data, etc) the independent firm possesses to implicate or exonerate Defendants' of willful and/or negligent records loss."**

The Magistrate permanently exonerated the Defendants for an email account that disappeared three months early, and refused to even allow a forensic eDiscovery team to

assess how (and how much other) evidence was destroyed. Of all the authority and cases cited by Plaintiff in his *Memorandum of Law*, it is unclear how the Court may allow Dartmouth to go scot-free for intentional destruction of evidence pertaining to federal litigation.

At the hearing conducted by the Magistrate, Dartmouth's attorneys could not even accurately describe the date Plaintiff's DHMC Outlook account was deleted, let alone, explain how or why it occurred. Attorney Kaplan mentioned a deletion in March/April 2012, when in fact, Plaintiff has evidence the account was deleted in January 2012. Likewise, in a 30(b)(6) Deposition on Dartmouth College (Exhibit B), the designee was unable to explain how or why a Dartmouth College employee (Christine Fitts) deleted the account. The fact is that Dartmouth intentionally and willfully deleted evidence.

The Plaintiff asserts that if the Defendants scrambled to delete his Outlook account, in all likelihood they also deleted more damaging email evidence (referred to as "smoking gun" evidence in the hearing). The Magistrate seems to misinterpret the Plaintiff's assertion that more damaging evidence existed (and should be assessed forensically), to mean that Plaintiff's DHMC Outlook emails were unimportant. To be clear, Plaintiff's emails would show a systematic pattern of criticizing the Plaintiff from Day 1. They would evidence of his worsening mental and physical condition, and disregard of this condition by Defendants. They would show sarcastic comments from Dr Guez that Plaintiff's last week at DHMC would be "a good week." They would lead to further discovery questioning and document production. In short, the emails are 'highly important' and could help a jury decide 'more likely than not.' The emails are not "smoking gun" (as far as Plaintiff ever observed) evidence of how and when Dartmouth learned about USC and Arizona. Nonetheless, important evidence was deleted, and Plaintiff suggests 'smoking gun' evidence was also deleted if important evidence was deleted. To clarify these matters is precisely why Plaintiff seeks a forensic investigation.

The federal rules do not allow intentional destruction of known relevant evidence. Plaintiff was abused over six months. He issued criminal allegations in the DHMC ED on January 13th 2012, and several days later, after asking Jim Yong Kim to preserve ESI, the ESI was scoured.

Additionally, the "Addendum" requests production of important patient records, in light of the fact all "smoking gun" emails were probably deleted. The Court should be particularly liberal in granting discovery, since evidence had been destroyed. Plaintiff attaches Exhibit B, his affidavit, to support production of the patient records sought in the Addendum.

To allow Dartmouth's intentional email destruction to go unsanctioned creates precedent that damages the integrity of the Federal justice system. Without clear penalties for ESI destruction, all a defendant needs to do to subvert a claim is merely destroy evidence and discredit the victim (i.e. terminate his employment) – which is what happened in this instance. Plaintiff will exhaust all possible appeals on this matter, and respectfully asks Your Honor to reconsider the subject with full scrutiny.

**Conclusion**

The Plaintiff respectfully requests the Court rule on this motion by December 2nd, so that he may file a timely appeal in the event the motion is denied. In the alternative, pursuant to Federal Rules of Appellate Procedure 4(a)(5), Your Honor may extend the deadline for a Notice of Appeal to allow consideration of this motion.

It is noted that the Magistrate ordered that discovery requests shall be completed also by December 2nd. This deadline is no longer feasible for the Plaintiff in light of the destroyed evidence. Discovery which would have been straightforward , had evidence been

preserved, now requires expansion to seek additional witnesses and records . Plaintiff now intends to obtain out-of-district subpoenas in Texas, Arizona, DC, and California. He is not able to arrange all this, and manage the other aspects of pending litigation, in the next two weeks.

If this Court affirms the Magistrate's denial of the Motion for Sanctions & Injunction, Plaintiff requests a stay on all litigation pending appeal. At a minimum, sanctions should be entered for an adverse jury instruction against the Defendants. To move forward with summary judgment deliberations, or a jury trial, while Plaintiff is appealing the adverse jury instruction , might necessitate a second trial. To avoid unnecessary efforts by all parties involved, a stay is reasonable.

No further Memorandum of Law is required as Plaintiff relies on the previously submitted memorandum for sanctions.

The Defendants did not assent to this motion.

Submitted on this 12th day of November, 2013.


/s/ J.D. Isaacs

J. D. ISAACS

Plaintiff, *pro se*

**CERTIFICATE OF SERVICE**

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing **MOTION TO RECONSIDER MAGISTRATE ORDER OR STAY LITIGATION PENDING APPEAL** was delivered electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

Executed on this 12th day of November, 2013.

/s/ J.D. Isaacs
J. D. ISAACS
Plaintiff, *pro se*