Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DOCTOR J. D. ISAACS ) | |
| ) | |
| Plaintiff, *pro se*, ) | Case No. CV-12-40-LM |
| ) | |
| -V- ) | |
| ) | **PLAINTIFF'S OBJECTION** |
| DARTMOUTH HITCHCOCK MEDICAL CENTER; ) | **TO MOTION FOR PROTECTIVE** |
| DOCTOR CHRISTINE FINN; ) | **ORDER FOR USDC DC SUBPOENA** |
| MARY HITCHCOCK MEMORIAL HOSPITAL; ) | |
| TRUSTEES OF DARTMOUTH COLLEGE; ) | |
| ) | |
| ) | |
| and JOHN DOE, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

JDIsaacs v. DHMC
Case No. 12-CV-40-LM

# I. OBJECTION TO MOTION FOR PROTECTIVE ORDER ON SUBPOENA ISSUED BY DISTRICT OF COLUMBIA USDC

The United States District Court for the District of Columbia received the Plaintiff's unsigned subpoena for Jim Yong Kim on November 26th, 2013. This was several days prior to the discovery deadline set by District Judge McCafferty in the scheduling conference. The Plaintiff had previously noticed a FRCP Rule 30 Deposition upon Dr Kim. Amongst other objections, the Defendants stated that they "had no obligation" to produce a former employee such as Dr Jim Yong Kim, and that his attendance at a Rule 30 Deposition "would be purely voluntary." *As such, with several days left in discovery, but before depositions could be completed, the Plaintiff believed his only option under the FRCP to maintain Dr Kim as a potential witness was to request a subpoena from the DC district*. At that time, the NHD did not have authority / jurisdiction under the FRCP to issue a subpoena for Dr Kim.

The FRCP were amended several weeks before the Clerk for the USDC / DC issued the subpoena in December 2013, but after Plaintiff's submission of the document. The relevant amended rule to quash a subpoena follows:

> (3) *Quashing or Modifying a Subpoena.*
> (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

The protective order filed by Attorney Chabot is not an appropriate measure to quash a subpoena from another compliance district, and it appears Dartmouth believes "special rules," instead of the FRCP, apply to them. As Your Honor will learn, Dartmouth consistently claimed "special rule" objections by directing numerous witnesses not to answer unprivileged deposition questions about directly relevant sources of evidence. In short, an effort to bully the Plaintiff for six months at DHMC has extended into two years of litigation. It seems the Defendants have concluded that they might as well obstruct justice for three years through 2014, rather than admit to wrongdoing for six months in 2011. Dartmouth's attorneys yell profanities at the Plaintiff on telephone calls (which they know he legally cannot record). They appear to have intimidated at least one witness – a scrupulously honest and well-intended physician, to "not remember" testimony. The Defendants and their counsel laugh at plaintiff during the breaks at depositions. One witness smirked during testimony itself when asked if the Defendants conspired to "stonewall litigation and deny everything." Defendant Finn completely disowned the reason for termination she testified to the NHES Hearing last year. These are just several examples from what is now ten thousand pages of evidence and 20-30 hours of video testimony.

The Plaintiff informed Attorney Chabot that this filing was against FRCP Rule 11 (Exhibit A). Any motion pertaining to this subpoena must be first filed with the compliance district, the District of Columbia. Furthermore, any request to move the motion to the issuing district (NHD) requires Dr Jim Yong King's consent. **At the time of filing, Wadleigh could not confirm that they represent Dr Kim or had any authority to accept service of this subpoena (Exhibit A).** As such, Plaintiff asserts their motion violates Rule 11 on numerous levels.

The committee notes on the December 2013 changes to FRCP 45 state:

JDIsaacs v. DHMC
Case No. 12-CV-40-LM

> *"In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and **it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions**."*

No consent has been proven, nor have exceptional circumstances of why the compliance court is less convenient to Dr Kim (who works in Washington DC as President of the World Bank) been presented. This is not the venue to seek transfer nor is such transfer permitted by the FRCP without first notifying the compliance district.

The committee notes also declare *"Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions."* As such, contrary to Attorney Chabot's assertion of "the Plaintiff's attempt to evade or disobey the Court", the Plaintiff did not disobey any orders or intent of this Court. The DC District Judge assigned to this matter shall be able to confer with Your Honor regarding any concerns about deposing Dr Kim. The Plaintiff has conducted the eight depositions thus far professionally , and is unaware of any reason at this point why Dr Kim couldn't answer a couple hours of questions in Washington DC to help move this litigation along.

As discovery was slated to end on December 2nd, the Plaintiff had no choice but to seek a subpoena of Dr Kim from the DC district, or lose him as a potential witness. The Plaintiff has diligently conducted eight depositions over the past two months of the Dartmouth witnesses. Plaintiff has used every free minute to research the law and defend his rights, between 400 pages of motion to dismiss documents filed in the PAED, a First Circuit appeal, and the eight depositions. Plaintiff's ability to perform normal, daily life activities has worsened as a result of Defendants' stonewalling.

1  Currently being compiled are the video deposition and text transcripts, for submission
2  to Your Honor and to the FBI , for what Plaintiff alleges is 'grossly excessive, obvious
3  perjury.' With regards to Dr Kim, the eight witnesses did not answer any of Plaintiff's
4  questions relevant to this Kim's involvement with this case. Specifically, they did not
5  know if Dr Kim knew Dr Baughman (the former USC defendant who worked with Dr
6  Kim at Harvard Medical School), they did not know why emails disappeared after Dr Kim
7  received a Rule 34 request, and they did not know if Dr Kim ever investigated Plaintiff's
8  claims – forming , at minimum, questions of Dr Kim's negligence which he must testify
9  about.

10  Your Honor ordered "Once all of the other depositions are complete in this matter,
11  plaintiff may renew his request for Dr. Kim's deposition, if he can demonstrate that Dr.
12  Kim possesses discoverable information not obtained or obtainable from any other
13  source." The Plaintiff noticed the subpoena yesterday, after all other Dartmouth
14  depositions were complete. Dr Kim possesses knowledge of what he did or did not
15  investigate within Plaintiff's ethics complaint, and he possesses knowledge of the
16  relationship with individuals from Harvard Medical School who Plaintiff sued in 2006. He
17  also possesses knowledge of his World Bank nomination timing, in relation to Plaintiff's
18  termination – which depositions have established occurred without any written record of
19  due process of administrative leave or fair hearing. There are roughly twenty – five hours
20  of deeply concerning testimony by Dartmouth's witnesses. Plaintiff asserts that review of
21  these depositions will leave little doubt in the Court's mind that it is appropriate to
22  subpoena Dr Kim at this time.  Similarly, the Plaintiff believes that several sources of
23  electronic discovery may be crucial to help clarify/discover evidence, and after this, the
24  case may proceed to summary judgment and/or jury trial.

25  In conclusion, a protective order against a subpoena from the District of Columbia is
26  simply not correct procedure, and the Defendants have provided no evidence that Dr Kim
27  authorized them to submit their motion. A subpoena must be quashed by the compliance
28  district. Should the DC USDC transfer the matter back to this issuing court, or confer with

JDIsaacs v. DHMC
Case No. 12-CV-40-LM

this Court, Plaintiff will have the videos and transcripts ready (they have not been finalized yet) to demonstrate good cause to proceed with the testimony of Dr Kim.

*Respectfully submitted, this 24th day of January*, 2014.

/s/ JD ISAACS

J. D. ISAACS

3553 West Chester Pike Unit 177

Newtown Square, PA 19073

Plaintiff, *pro se*

JDIsaacs v. DHMC
Case No. 12-CV-40-LM

**CERTIFICATE OF SERVICE**

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing OBJECTION TO MOTION FOR PROTECTIVE ORDER was delivered via USPS & electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

Executed on this 24th day of January, 2014.

/s/ J. D. Isaacs

J. D. ISAACS

Plaintiff, *pro se*

JDIsaacs v. DHMC
Case No. 12-CV-40-LM