Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DOCTOR J. D. ISAACS<br><br>    Plaintiff, *pro se*,<br><br>-V-<br><br>DARTMOUTH HITCHCOCK MEDICAL CENTER;<br>DOCTOR CHRISTINE FINN;<br>MARY HITCHCOCK MEMORIAL HOSPITAL;<br>TRUSTEES OF DARTMOUTH COLLEGE;<br><br>and JOHN DOE,<br><br>    Defendants. | Case No. CV-12-40-LM<br><br>**PLAINTIFF'S OBJECTION<br>TO MOTION TO COMPEL<br>AND REQUEST FOR RELIEF** |

## I. OBJECTION TO MOTION FOR TO COMPEL AND REQUEST FOR RELIEF

As far as Plaintiff understands, the Defendants moved to compel a) information about a settlement with Merrill Lynch, and b) his signing of a 'waiver' allowing defendants to redistribute his medical records without regard to his HIPAA rights.

### A: MERRILL LYNCH CLAIMS/SETTLEMENT

The Defendants issued a subpoena to Merrill Lynch for all documents pertaining to Plaintiff's employment there in 2000-2002. Notably, the Plaintiff did not object or motion to quash the subpoena to Merrill Lynch. As far as Plaintiff believes, the Merrill Lynch documents would be helpful to Plaintiff in this case because they would show that Plaintiff was subject to widespread teasing at Merrill Lynch, which was supported by email evidence. The fact that Plaintiff is teased and harassed at every employer, with substantiated email evidence in the case of Merrill Lynch, seems itself to support a diagnosis of Asperger's or Traumatic Brain Injury that impedes one's ability to work in group environments.

The Plaintiff admits he was unable to comply with the November 14th deadline set by Your Honor. Plaintiff was attempting to locate the Merrill Lynch settlement, which would have been at his mother's house which he knew was going to visit on Thanksgiving weekend. Furthermore, he thought Merrill Lynch would provide the "best evidence" so Plaintiff admittedly did not prioritize this search, over attending his own deposition, eight other depositions, and responding to 400 pages of motions to dismiss a related case in Philadelphia. In short, Plaintiff is short on time, facing literally EIGHT law firms fighting one disabled *pro se* Plaintiff.

The Plaintiff did locate Exhibit A – a fax cover letter for the settlement agreement with Merrill Lynch, from his attorney in 2002. Exhibit A instructs Plaintiff to return the

original fax to Mr Scott Grubin, and fax the original to two locations before sending it. Plaintiff did so, and the next day, apparently annotated the FedEx receipt time of the original. Plaintiff found this cover letter (Exhibit A), but nothing attached behind it. As such, Plaintiff believes he either never retained a copy of the settlement, or it was lost years ago. In any event, the settlement was (as best as Plaintiff remembers) a boiler-plate settlement agreement, which did not describe any details of the case. As such, it would not be remotely helpful to this case. For what it's worth, the settlement amount paid for 1-2 years of Plaintiff's 10 years of graduate school. In other words, without the settlement, Plaintiff's student loan debt might be $480,000 instead of $380,000.

The settlement was reached during mediation with the JAMS arbitration group in New York City. Although Plaintiff no longer has the JAMS arbitration rules, he believes he signed agreements that the claims and settlements were privileged and confidential. Plaintiff has always erred on the side of caution before disclosing a settled or confidential matter – which, actually, is what this entire litigation is about. **Defendants insistence to torment Plaintiff on his settled past adversity.** As such, Plaintiff a) no longer has the settlement, and b) believes it is privileged, and c) didn't object to Merrill Lynch producing it. Surprisingly, Merrill Lynch no longer had any documents pertaining to Plaintiff. So , while Plaintiff was expecting "best evidence" would arrive from Merrill Lynch, it did not, and now opposing counsel is trying to make this look like Plaintiff's fault.

Nonetheless, the Plaintiff did describe the nature of the Merrill Lynch claims in his interrogatory response:

> *"A Harvard attorney who 'wrote the book' on disability law filed a claim on my behalf against a former employer. The matter is resolved and all parties agreed to keep the matter confidential. Of relevance to this case, the nature of the claims were performance & concentration issues, and bullying evidenced by obtained derogatory*

JDIsaacs v. DHMC
Case No. 12-CV-40-LM

1  *emails against me, referencing perceived national origin "Frenchie," fatigue from*
2  *working beyond the "French work week" and other protected classes."*
3   The Plaintiff believes he answered the Interrogatory question to the best of his ability
4  and recollection. The claim was about ridicule of Plaintiff as "Frenchie." The settlement
5  agreement does not likely have (as far as Plaintiff remembers) any further information on
6  the claims. Whether JAMS, Merrill Lynch, or Plaintiff's former counsel have additional
7  documents is beyond Plaintiff's custody or control, and hence, it is unclear why
8  Defendants are filing a motion to compel against Plaintiff, when Plaintiff already
9  explained the general nature of the case to the best of his recollection.
10   Despite describing the claim in the interrogatory response, Plaintiff did invoke a
11  privilege in the deposition, believing he had a duty to cite the confidentiality agreement he
12  swore to at JAMS. If he had testified on the subject in the deposition, the Plaintiff would
13  have had little, if anything, to add to his interrogatory response. These events occurred
14  twelve years ago, and as far as Plaintiff recalls, concerned a hoax organized by Merrill
15  Lynch email concerning "Frenchie." The JAMS confidentiality was appropriate to uphold
16  in the deposition, Plaintiff asserts, but nonetheless Plaintiff has disclosed to the
17  Defendants what they asked for in the interrogatory. If Defendants are able to clarify to
18  the Court what Plaintiff hasn't answered, this would be helpful to all parties, as Plaintiff is
19  confused at this point what is being 'compelled' by this motion.

22  **B: MEDICAL WAIVERS WITHIN INTERROGATORY**

24   The waiver proposed by Sulloway and Hollis violated the protective order issued by
25  this Honorable Court. Plaintiff responded to this issue in a timely manner. On November
26  5th, the Plaintiff contacted Opposing Counsel, and offered to sign a medical release form
27  that would comply with Your Honor's protective order (Exhibit B). The Plaintiff made
28  every effort to comply with the intent of Your Honor's order, despite the fact he disagreed

about the relevance of ten year old medical records related to the California litigation. Plaintiff sent similar emails five times to Opposing Counsel, and also mentioned this in his deposition. Opposing Counsel seems to enjoy harassing the Plaintiff and his detail oriented commitment to justice. Your Honor issued a protective order that expires upon the closure of this lawsuit. During the hearing held by Your Honor, Plaintiff expressed concern that the 'waiver' improperly buried inside an interrogatory granted Defendants unrestrained access to redistribute his medical records. Once the protective order expires, and perhaps before, the Defendants' waiver grants them ownership and/or privity to distribute Plaintiff's medical records. This is an improper use of an interrogatory, and would be better suited to an injunction demand. Plaintiff was and continues to object to Defendants gaining such control to his medical records. Although he does not have a transcript of the hearing, the Plaintiff believes Your Honor responded to his concern "let the Court know if that becomes an issue." It is believed Your Honor never saw the waiver, which is now attached as Exhibit B. It plainly grants Defendants unlimited control over Plaintiff's records in perpetuity.

The FRCP offer powerful subpoena tools for the Defendants to properly obtain Plaintiff's medical records that are not in his custody and control. A 'waiver' granting them HIPAA exemption, buried inside an interrogatory, essentially amounts to an injunction, if ordered to be signed by the Plaintiff. As best as Plaintiff has researched this matter, there is no precedent for this sort of waiver, and the subpoena would be the simple tool of choice for out of state medical records.

The proposed waiver also has a revocation clause. The Plaintiff has in fact executed the waiver (Exhibit C), and the revocation clause, so he does not believe there is anything for Defendants to compel. Their bizarre waiver, not appropriate under FRCP, was in fact worthless (in addition to being an improper HIPAA circumvention) as it had a revocation clause.

Of note, Attorney Pyles took out of context the following:

"Q. In my Interrogatory I asked you to sign authorizations which you have not done.

A. That's right

Q. Despite the Court Order that you do so.

A. That's – - I disagree with that."

**Plaintiff was open and candid during his deposition (Full Context as Exhibit D). The full response, in context, is:**

"A. I have notified you that the authorizations are in violation of the court's protective order. You asked me to waive my HIPAA rights and allow you to disclose to third parties, my medical knowledge to insurance companies, to institutions, to other third parties. That is not in the court -- in fact, that's against the court order. I also told you that if you want to rewrite those -- can I finish my answer?

Q. Yeah. Yeah.

A. If you want to rewrite those waivers, I'd consider signing them even after these deadlines to not include those breaches of HIPAA. I think I also offered to write up those waivers myself, ones that would -- you know, I'd feel comfortable with that were in the spirit of the protective order. And I think I also told you I wouldn't oppose subpoenas, even though I think they are objectionable. For instance, that you could subpoena UCLA and California, even though California has strict psychotherapy notes that I am almost positive would not be produced by any judge in California. I think I even said I would waive that if you wanted to subpoena them. So I think I gave you three options to get my medical records even though I don't think you have a right to them.

Q. You haven't signed the authorizations, right?

A. I believe the authorizations are not in the spirit of the protective order and they would violate my HIPAA rights."

JDIsaacs v. DHMC
Case No. 12-CV-40-LM

1   Plaintiff believes the Defendants' motion is simply an out-of-context effort to cast the
2   Plaintiff in a negative light to the Court, in anticipation of Plaintiff's efforts to compile
3   10,000 pages of questionable, conflicting perjured evidence and video testimony.

7   *Respectfully submitted, this 24th day of January*, 2014.

10                          /s/ JD ISAACS

12                          J. D. ISAACS
13                          3553 West Chester Pike Unit 177
14                          Newtown Square, PA 19073

16                          Plaintiff, *pro se*

JDIsaacs v. DHMC
Case No. 12-CV-40-LM

**CERTIFICATE OF SERVICE**

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing OBJECTION **TO MOTION FOR TO COMPEL AND REQUEST FOR RELIEF** was delivered via ECF electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

Executed on this 24th day of January, 2014.

/s/ J. D. Isaacs

J. D. ISAACS

Plaintiff, *pro se*