UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| J.D. Isaacs,<br>   *Plaintiff*,<br><br>   v.<br><br>Dartmouth Hitchcock Medical Center, et al.<br>   *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:12-cv-00040-LM |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

  Dartmouth Hitchcock Medical Center ("DHMC") and Mary Hitchcock Memorial Hospital ("MHMH") move for summary judgment, through counsel, on all claims asserted against them in the Plaintiff's Complaint. The Defendants are entitled to judgment on all counts as a matter of law pursuant to Fed. R. Civ. P. 56, as set forth below and as discussed in the supporting Memorandum of Law. The undisputed facts establish that the Plaintiff was terminated from a residency program for performance deficiencies and behavior incompatible with the role of a physician. The Plaintiff makes a wide range of unsupported accusations, while the Defendants produce evidence, from many people and over the entire course of the Plaintiff's residency, to establish that there were legitimate and non-discriminatory reasons for his dismissal.

  1.  On September 1, 2010, the Plaintiff submitted an Electronic Residency Application Service ("ERAS," or residency application) form to the Defendants. He certified that his information was "complete and accurate" but he did not disclose facts about his prior medical education, earlier state licensure, or interruptions to his medical training, although all of that information was specifically requested on the ERAS form.

2. The Plaintiff had, for example, resigned from a medical program at the University of Arizona on August 13, 2010, just weeks before submitting the ERAS application to the Defendants. His enrollment at the University of Arizona, state training license, and interruption to his training through his resignation (which he tendered rather than be placed on probation) were not identified anywhere on his September 1, 2010 application.

3. Based on the ERAS application, MHMH hired the Plaintiff. His residency began in June 2011, on an internal medicine rotation.

4. Almost immediately, the Plaintiff's performance was unacceptable, as illustrated by incomplete notes, deficient knowledge, tardiness, unavailability and a propensity for leaving his pager behind or not responding to calls, being unprepared for rounds, and not collecting or conveying critical patient information.

5. The Plaintiff's performance did not improve and he was removed from the internal medicine rotation in early July 2011.

6. The Plaintiff was transferred to a psychiatry rotation, but continued to struggle. Although his overall performance was somewhat better, he still failed to finish summaries on time, failed repeatedly to sign out as required, showed a continuing disregard for responsiveness, and otherwise failed to meet established competency levels.

7. These problems continued in August and September 2011, leading to the Plaintiff being put on a Performance Improvement Plan in September 2011.

8. The Plaintiff failed to meet improvement goals in October or November 2011.

9. As the psychiatry rotation ended in December 2011, the program director expressed concerns about the Plaintiff's ability to successfully return to the internal medicine

rotation given his failure to meet improvement goals, and deficiencies in skills, knowledge and effort.

10. The Plaintiff began his next rotation in January 2012, and it quickly became clear that he had failed to resolve his performance problems. He was late, unprepared, and on one occasion reported conducting an examination of a patient that he had not done.

11. In an effort to identify and address the performance issues, the program director reviewed the Plaintiff's ERAS application with a colleague. The colleague noted some significant gaps in time that were unexplained on the application. They discovered that the Plaintiff had "matched" at the University of Arizona before, but that "match" was not included in the ERAS application.

12. As noted above, the Plaintiff had submitted an application purporting to be complete and accurate, but it was not.

13. Given the performance deficiencies and the misrepresentation on his application, the Plaintiff was placed on administrative leave effective January 13, 2011.

14. It was later discovered that the Plaintiff had also attended the University of Southern California Keck School of Medicine.

15. The Plaintiff had not disclosed his attendance at USC on his ERAS application, or his New Hampshire Board of Medicine training license application.

16. On March 19, 2012, the Plaintiff was given written notice that his employment was terminated, and given copies of the grievance procedure.

17. As stated in the termination letter, his dismissal was based on performance deficiencies, false reporting of activities, and for misrepresentations on his ERAS residency application.

18. The Plaintiff initiated the grievance procedure, then asked for a stay, and ultimately, in May 2012, notified the Dean overseeing the process that he did not want to be contacted again.

19. Per that request, the Defendants did not otherwise engage in the grievance process.

20. The Plaintiff filed various law suits, administrative complaints, and criminal charges, while making other allegations, eventually leading to the Amended Complaint at issue in this case.

21. The Amended Complaint contains ten causes of action: violations of the Americans with Disabilities Act ("ADA"), wrongful termination, violations of NH RSA 354-A, breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentations, violations of the Rehabilitation Act, fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress.

22. The parties engaged in extensive discovery, and discovery has now closed.

23. The Plaintiff's expert disclosure deadline expired on December 13, 2013; he did not identify or disclose any experts, and does not offer any expert opinions on liability or damages issues.

24. The Defendants have set forth undisputed and material facts supporting judgment in their favor as a matter of law on all counts.

25. The Plaintiff cannot produce evidence or identify any genuine issues of material fact to defeat summary judgment, and he has further failed to provide expert testimony to support his different liability claims, or establish any claim for damages.

26. The ADA claims and other employment allegations against DHMC fail because MHMH, not DHMC, was the Plaintiff's employer. DHMC is therefore entitled to judgment on claims against it, since it does not have any employees.

27. The Defendants should also be awarded judgment because the Plaintiff has otherwise failed to exhaust administrative remedies that were available to him.

WHEREFORE, for the reasons set forth above and as contained in the Defendants' accompanying Memorandum of Law, DHMC and MHMH respectfully request that they be granted summary judgment on all counts, and that all of the Plaintiff's claims against them be dismissed with prejudice.

**DARTMOUTH HITCHCOCK MEDICAL CENTER and MARY HITCHCOCK MEMORIAL HOSPITAL**

By Their Attorneys,
SULLOWAY & HOLLIS, P.L.L.C.

Dated: February 18, 2014     By:     /s/ Christopher J. Pyles
Edward M. Kaplan (#1307)
Christopher J. Pyles, Esq. (#15165)
Sulloway & Hollis, P.L.L.C.
9 Capitol Street
Concord, NH 03301
(603)223-2863

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served via ECF on the following persons on this date:

**Jeffrey David Isaacs**
**3553 West Chester Pike Unit 177**
**Newtown Square, PA 19073**

**Kathleen Peahl, Esq.**
**Wadleigh Starr & Peters, PLLC**
**95 Market Street**
**Manchester, NH 03101**

**Pierre Chabot, Esq.**
**Wadleigh Starr & Peters, PLLC**
**95 Market Street**
**Manchester, NH 03101**


Dated:  February 18, 2014        By:    /s/ Christopher J. Pyles
                                         Christopher J. Pyles