
THE UNIVERSITY OF ARIZONA.

Department of Surgery
General Surgery
Residency Office

1501 N. Campbell Ave.
P.O. Box 245058
Tucson, AZ 85724-5058
Tel: (520) 626-7747
Fax: (520) 626-4334

October 6, 2010



**SENT VIA ELECTRONIC MAIL ONLY**

Regarding: Program # 4400321027
University of Arizona

Dear Ms. Miller:

This is in response to your letter dated September 7, 2010 regarding Jeffrey Isaacs, M.D., and his complaint alleging violation of ACGME requirements by our general surgery residency program. Please find below our program's and institution's perspective regarding Dr. Isaacs' complaint. We respond specifically to the issues outlined in your letter, as follows:

    Policy, procedures, and requirements alleged to have been violated:

    II. F. Resident Educational and Work Environment

    II. F. 1 The Sponsoring Institution and its programs must provide an educational and work environment in which residents may raise and resolve issues without fear or intimidation of retaliation.

    IV.A. The curriculum must contain the following educational components:

    IV.A.1. Overall educational goals for the program, which the program must distribute to residents and faculty annually;

    IV.A.2. Competency-based goals and objectives for each assignment at each educational level, which the program must distribute to residents and faculty annually, in either written or electronic form. These should be reviewed by the resident at the start of each rotation.

    VI. Resident Duty Hours in the Learning and Working Environment

    VI.A.1 The program must be committed to and be responsible for promoting patient safety and resident well-being and to providing a supportive educational environment.

October 6, 2010
Letter regarding Jeffrey Isaacs
Page | 2

>VI.D.1. Duty hours must be limited to 80 hours per week average over a four-week period, inclusive of all in-house call activities.
>
>VI.E.2. Continuous on-site duty, including in-house call, must not exceed 24 consecutive hours. Residents may remain on duty for up to six additional hours to participate in didactic activities, transfer care of patients, conduct outpatient clinics, and maintain continuity of medical and surgical care.

The following is a timeline regarding Dr. Isaacs' tenure in our program:

| Date | Event |
|---|---|
| Fall 2009 | Dr. Isaacs interviewed with our program. |
| February 22, 2010 | Dr. Amy Waer directed that the program send an e-mail to all intern candidates notifying them of the program's probationary status (See Attachment A). |
| March 2010 | Dr. Isaacs matched through ERAS as a preliminary PGY 1 general surgery resident in the General Surgery Residency Program. |
| June 21, 2010 | Dr. Isaacs started orientation to our program. Each new resident was shown and given access to the program's Housestaff Manual 2010/2011 online. (See Attachment B). The goals and objectives for each rotation site and each level of residency are clearly defined with the expectations listed. |
| June 23, 2010 | General Surgery Welcome, Administrative Chiefs, and Lunch. |
| | Our two administrative chiefs and Dr. Waer gave an overview of the program. Dr. Waer specifically discussed the probation status of the General Surgery Residency Program and listed the four citations that the RRC upheld with regard to the probation. Dr. Waer discussed the two citations as they applied to duty hours in terms of the eighty hours and the thirty consecutive hours requirements. Dr. Waer discussed all the duty hour safeguards that are in place to assure that violations do not occur. Dr. Waer also discussed the citation regarding raising and resolving issues without fear and intimidation and described what the program has done to resolve this, including: assigning each resident a faculty mentor; assigning each resident a research preceptor; assigning each resident a senior resident liaison; providing an anonymous suggestion box in the residency office; and reminding residents that Dr. Becky Potter, DIO, is another resource at the College of Medicine with whom they may raise issues of concern at any time. |

October 6, 2010
Letter regarding Jeffrey Isaacs
P a g e | 3

During this orientation, our administrative chiefs clearly set forth the expectations the program had for the interns. This included the details of rounding, seeing patients, and writing notes in patients' charts.

| | |
|---|---|
| July 1, 2010 | Dr. Isaacs started in our program on the VA general surgery service, which includes one other intern, a PGY 3, and a PGY 5. The intern call schedule is in-house every fifth night, which responsibility they share with the four other interns at the VA. |

With respect to the specific examples outlined in your letter related to allegations that faculty engaged in intimidation, Dr. Waer conducted an investigation and obtained the following information:

| | |
|---|---|
| July 4, 2010 | Dr. Levine denied that he asked Dr. Isaacs "what he want[ed] to be when he [grew] up. . . . a doctor? A surgeon." Dr. Levine stated that he provided constructive criticism to Dr. Isaacs regarding his performance and set expectations for him for being a surgical intern. |
| July 5, 2010 | The complaint makes no reference to a specific attending physician; therefore, Dr. Waer was unable to determine the source or validity of this allegation. |
| | After inquiring of Dr. Krouse about the concerns he raised about Dr. Isaacs' failure to appropriately make clinic notes following patient visits, Dr. Krouse reports that he did inform Dr. Issacs that he was expected to write notes on the patients he saw in clinic. He does not recall making these alleged statements contained in the complaint to Dr. Isaacs. Dr. Krouse reiterated the expectations the interns had received during orientation related to patient care. Dr. Krouse denied that he made the remarks Dr. Isaacs attributed to him. |
| July 6, 2010 | Dr. Waer received an email from Dr. Ira Levine, general surgery faculty member at the VA, stating that Dr. Isaacs failed to do physical examinations of the patients he was assigned to present at rounds and was unable to give a presentation on his patients. That same day, Dr. Robert Krouse, another one of the general surgery faculty at the VA, emailed Dr. Waer to say that Dr. Isaacs came to his clinic and failed to write notes on the two to three patients whom he saw. (See Attachment C). |
| July 7, 2010 | Dr. Waer met with Dr. Isaacs and Dr. Julie Wynne, Associate Program Director, in Dr. Waer's residency office to discuss the |

October 6, 2010
Letter regarding Jeffrey Isaacs
P a g e | 4

                              issues that Drs. Levine and Krouse had brought to their attention, because it was quite early in Dr. Isaacs' training, and somewhat unusual that the program would be receiving the number of complaints and concerns about a new resident at this early stage of his training. Drs. Wynne and Waer wanted to assess how Dr. Isaacs thought he was doing and to determine if he needed any further support to assist him. He admitted that he had a rough start and stated that he did not know, despite the direction residents were given during orientation and thereafter, about what was expected of him of him during his first week. He said that he did not know that he was supposed to do a physical examination on patients he saw and he did not know that he was expected to write notes while he was in the clinic. He said he now knew what was expected and that he felt things were getting better. Dr. Wynne and Dr. Waer recommended that he speak with his senior residents to get better clarification of the expectations and to let them know if he had any further questions or problems.

                              Dr. Isaacs never raised any issues related to duty hours. Dr. Waer closely monitors duty hours on a weekly basis. At the end of July, Dr. Isaacs logged a total of 290.50 hours for the month in the New Innovations recording system, recording the maximum consecutive hours as 30, which were reflected in his duty hour report for the July 23-24, 2010 shift. These hours were printed out early in August for the monthly GME surgery duty hour report.[1]

July 15, 2010        Dr. Waer received another e-mail from Dr. Krouse stating that Dr. Isaacs was not keeping himself sterile in the OR and kept contaminating himself. He questioned the sufficiency of Dr. Isaacs' medical training. (See Attachment E).

July 21, 2010        Dr. Waer received notice from Felipe Maegawa, a PGY 5 resident, that Dr. Isaacs did not report to work that day to do rounds on his patients at the VA with the general surgery team. He did not answer his pager, either, despite multiple attempts to reach him that morning on his pager. Dr. Waer then tried to reach Dr. Isaacs on both his service pager and his personal pager, but received no

---

[1] Of note, when preparing to respond to this complaint, Drs. Waer and Wynne checked Dr. Isaacs' duty hours in the New Innovations system to print out a copy of Dr. Isaacs' July 2010 and August 2010 reports, but were surprised to find that Dr. Isaacs' log reflected no hours for either month. The New Innovations information technology specialists were required to investigate this anomaly and determined that Dr. Isaacs deleted all of his duty hour reports on the afternoon of Friday, August 13, 2010, after he tendered his resignation from the General Surgery Residency Program. Because the program retains a paper copy of the duty hours reports for its own records, we attach a copy of that document for your review (See Attachment D).

October 6, 2010
Letter regarding Jeffrey Isaacs
P a g e | 5

|  |  |
|---|---|
|  | response. Dr. Isaacs was already scheduled to meet that same morning with Drs. Wynne, Cueto and Waer at 11:30 in Dr. Waer's residency office. The purpose of this meeting was so that Dr. Cueto, a PGY 4 resident who would be Dr. Isaac's senior resident on Dr. Isaacs' upcoming pediatric surgery rotation, which Dr. Isaacs would start on August 1, 2010, could give him some advice and recommendations on how to do well on this typically very busy service. Dr. Isaacs reported to this meeting. Dr. Waer excused Dr. Cueto so that Drs. Wynne and Waer could speak with him about his unexcused absence from work and why he did not answer his multiple pages. Dr. Isaacs responded that the reason he did not report to work was that he was at home calling his former medical student friends to see how other residency programs compared to the University of Arizona. Upon further inquiry about his absence, Dr. Isaacs changed his answer to say he had not been feeling good and then changed his answer again to say that he we was having car problems. Dr. Waer reminded Dr. Isaacs of University and program-specific policies related to calling in if an employee is unable to come to work, even if he was sick, and reminded him that it is not appropriate and below standards to not call in and notify his team of his whereabouts. Dr. Waer informed Dr. Isaacs that this conduct was inexcusable and that he would be given a Notice of Deficiency (non-disciplinary written action) based upon his failure to report to work and not responding to multiple pages (See Attachment F). Dr. Waer also informed Dr. Isaacs that Dr. Wynne and she would work with him to help in whatever manner they could and that they would be meeting with him on a weekly basis to see how he is progressing as a resident. They also asked that he meet with his faculty mentor, Dr. James Warneke, a former Program Director, every two weeks. Dr. Waer informed Dr. Isaacs that she would be letting Dr. Warneke know about the Notice of Deficiency and why it was given prior to their next meeting. |
| July 23, 2010 | Dr. Isaacs met with Dr. Rebecca Potter, Associate Dean for GME and DIO. Dr. Isaacs reported to Dr. Potter that he wanted to file a complaint due to the receipt of a Notice of Deficiency from the program. Dr. Isaacs claimed that the Notice of Deficiency was due to the fact that he had reported a 92 hour work week at the VA and was then accused by Dr. Waer of lying about his duty hours. Dr. Potter called Dr. Julie Wynne, Associate Program Director, into the meeting and asked her to investigate Dr. Isaacs' complaint regarding the reported duty hours at the VA. Dr. Wynne also asked Dr. Isaacs about his absence from the VA the day before; his VA duty pager was found by another resident. Dr. Isaacs stated |

5

AZ 11

October 6, 2010
Letter regarding Jeffrey Isaacs
P a g e | 6

                              that he turned the duty pager over to Dr. ▇▇▇ and had notified Dr. Waer by e-mail that he was leaving his shift. Dr. Wynne stated that this is not appropriate protocol when leaving one's duty assignment.

                              Dr. Isaacs also reported to Dr. Potter that he was unaware of the reasons why the program was on probation. He stated that Dr. Waer told him that the program was placed on probation due to duty hour violations, but that he was not informed about the citation for intimidation and retaliation. Dr. Potter reminded Dr. Isaacs that Dr. Waer had notified all program applicants of the program's status (prior to the NRMP deadline for certification of the rank order lists) and that the program's Letter of Report is available in the Surgery Residency Program Office and can be reviewed at any time. Dr. Potter also reviewed with Dr. Isaacs the protocol for residents to file a complaint with the ACGME. Dr. Isaacs stated that he was going to put his complaints in writing to submit to Dr. Potter, but he never did so. Dr. Potter observed during their meeting that Dr. Isaacs lacked insight and accountability for his actions.

July 21-30, 2010      Dr. Isaacs was closely monitored by the VA general surgery faculty and the senior residents on the service. He was given minimal patient and operating room assignments because he had demonstrated an inability to adequately maintain patient safety. He did routinely show up for work and perform the duties assigned to him during those dates.

August 1, 2010       Dr. Isaacs started on Pediatric Surgery at the University Medical Center and the Tucson Medical Center along with a PGY 2 and a PGY 4. The call on this rotation is every third night home call.

August 10, 2010     The Surgery Residency Executive Committee called an emergency meeting to discuss Dr. Isaacs' performance because of the number of complaints and negative evaluations Dr. Waer had received to date. His evaluations were reviewed and the committee voted unanimously to place Dr. Isaacs on probation pursuant to the *Due Process Guidelines for Residents and Fellows*, see http://www.gme.medicine.arizona.edu/dueprocess/2007_Due_Proc ess_Guidelines1.pdf, upon the following deficiencies:

                              1.     Demonstrated incompetence in professional activities related to the fulfillment of assigned duties and responsibilities

October 6, 2010
Letter regarding Jeffrey Isaacs
Page | 7

|  |  |
|---|---|
|  | 2. Inability to perform satisfactorily functions essential to rendering proper medical care to patients and otherwise required of physicians providing direct patient care |
|  | 3. Inability or failure to perform the essential functions of the job or tasks assigned.[2] |
| August 11, 2010 | Dr. Gruessner and Dr. Waer met with the faculty and the residents to advise them that there were more than two duty hour violations that occurred on the VA vascular surgery service for July 2010 and that, pursuant to the program's response to the RRC related to that citation, the program would be reassigning the three residents on that service for at least two months, awaiting a satisfactory action plan from the faculty at the VA regarding the duty hours violations. As the program director, Dr. Waer informed the residents that they are required under program policy to log their duty hours in a timely fashion in order for the program to be aware of any issues; they were further told that if they failed to timely log their weekly hours more than once in a timely fashion, they would receive Notices of Deficiency (non-disciplinary written action). Dr. Waer confirmed with the two administrative chief residents that, after that meeting, the residents stayed and spoke amongst themselves. The administrative chiefs reported they reinforced the fact that all residents need to complete their duty hour logs in a timely fashion and that, if there were any issues related to duty hours, the residents must notify the chiefs, Dr. Waer, or Dr. Wynne, so the program could take the necessary steps immediately to correct any problems. The chief resident denies that anyone encouraged residents to misstate their duty hours or falsify documents. |
| August 12, 2010 | Drs. Wynne and Waer met with Dr. Isaacs at 1:30 p.m. in Dr. Waer's residency office. They showed Dr. Isaacs the pediatric surgery group evaluation comments they received from Dr. Ann O'Connor, summarizing the comments of the other evaluators for August 10, 2010 (See Attachment G), as well as the evaluations by his senior surgical residents, Dr. Felipe Maegawa reflecting his performance (See Attachment H), and the written summary by Drs. Felipe Maegawa, Erica Salinas, and Aparna Vijayasekaran (See Attachment I). |

---

[2] A formal letter of probation was never issued to Dr. Isaacs, because after Dr. Waer met with Dr. Isaacs to discuss his choices, he tendered his resignation. Therefore, no formal disciplinary action appears in his file.

October 6, 2010
Letter regarding Jeffrey Isaacs
P a g e | 8

                              Drs. Waer and Wynne informed Dr. Isaacs that the program intended to place him on probation based upon his performance and his poor evaluations. They explained to him that the intent of the probation was to give him time to improve his performance. Dr. Waer explained the long-term consequences of being placed on probation. When Dr. Isaacs asked about other options, Dr. Waer indicated that Dr. Isaacs could resign in lieu of being placed on probation. Dr. Isaacs asked Dr. Wynne and Dr. Waer: "If I resign, can we say I was never here?" Dr. Waer informed Dr. Isaacs that that would be impermissible, but gave Dr. Isaacs the opportunity to consider whether to resign voluntarily from the program or to be placed on probation. He was given the weekend over which to consider his options, and made an appointment to meet with Dr. Waer the following Monday to discuss them. Dr. Isaacs also requested to meet with the Department Head, Dr. Rainer Gruessner, which request Dr. Gruessner granted. That meeting was scheduled for the following day. (Attachment J contains notes of the meeting on August 12, 2010.)

                              Dr. Isaacs' allegation that the evaluations were fabricated is unfounded. The VA general surgery faculty and pediatric surgery private practice surgeons are both groups of long-standing faculty members with solid reputations and no reasons to misrepresent their evaluations of Dr. Isaacs.

August 13, 2010    Dr. Gruessner met with Dr. Isaacs at 1:00 p.m. and discussed Dr. Isaacs' options with him. Dr. Gruessner reiterated the options Dr. Isaacs had at this point – voluntarily resigning or being placed on probation [subject to his rights to challenge this decision under the Due Process Guidelines for Residents and Fellows]. Dr. Gruessner reiterated the options of going on probation versus resignation and the pros and cons of each option.

                              Dr. Isaacs' submitted his letter of resignation at 3:35 p.m. that day. (See Attachment K).

August 16, 2010    Dr. Isaacs did not appear for the 10:00 a.m. meeting he scheduled with Drs. Wynne and Waer and therefore was not given the letter of probation that had been prepared in draft prior to thereto. Dr. Isaacs did not return to work after tendering his resignation.

| | |
|---|---|
| August 16, 2010 | Dr. Waer received Dr. Christina Cueto's (PGY 4) evaluation of Dr. Isaacs while he was on the pediatric surgery service. In her summary, Dr. Cueto describes Dr. Isaacs' performance as being far below average. She raised the same issues of his inability to complete his patient notes and perform the expected functions of a PGY 1. (See Attachment L). |

In summary, Dr. Isaacs demonstrated difficulties in the first week of his internship with the General Surgery Residency Program and was unable to competently perform his duties as a surgical resident. Drs. Wynne and Waer provided Dr. Isaacs with the support and feedback necessary to help him succeed in our program and when he failed to do so, we followed proper procedures under our Due Process Guidelines for Residents and Fellows.

Please contact Dr. Waer should you have any further questions.

Sincerely,

*[signature]*

Amy L. Waer, M.D., F.A.C.S.
Program Director
General Surgery Residency Program

*[signature]*

Rebecca L. Potter, M.D.
Associate Dean for Graduate Medical Education
University of Arizona


Cc: Rainer Gruessner, M.D.
    Chair, Department of Surgery